CLYDE & CO US LLP
200 Campus Drive
Suite 300
Florham Park, N.J. 07932-0950
(973) 210-6700
Attorneys for Plaintiff, Days Inns Worldwide, Inc.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAYS INNS WORLDWIDE, INC., a Delaware Corporation, | : |
| Plaintiff, | : Civil Action No. 13- |
| v. | : |
| OCALA INN KASH, INC., a Florida Corporation; and HARISH PATTNI, an individual, | : **VERIFIED COMPLAINT** |
| Defendants. | : |
| | : |

Plaintiff Days Inns Worldwide, Inc., formerly known as Days Inn of America, Inc., by its attorneys, Clyde & Co US LLP, complaining of defendants Ocala Inn Kash, Inc., and Harish Pattni, says:

### PARTIES, JURISDICTION AND VENUE

1.    Plaintiff Days Inns Worldwide, Inc. ("DIW"), is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Parsippany, New Jersey.

2.     Defendant Ocala Inn Kash, Inc. ("Ocala"), on information and belief, is a corporation organized and existing under the laws of the State of Florida, with its principal place of business at 3620 W. Silversprings Blvd., Ocala, Florida 34475.

3.     Defendant Harish Pattni ("Pattni"), on information and belief, is a principal of Ocala and a citizen of the State of Georgia, residing at 1447 NE Expressway, Atlanta, Georgia 30329.

4.     The amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of $75,000.

5.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 & 1338, 15 U.S.C. § 1121 and, with respect to certain claims, 28 U.S.C. § 1367.

6.     This Court has personal jurisdiction over Pattni by virtue of, among other things, section 17.6.3 of the November 1, 2009 franchise agreement by and between Ocala and DIW (the "Franchise Agreement"), described in more detail below, pursuant to which Ocala has consented "to the non-exclusive personal jurisdiction of and venue in the New Jersey state courts situated in Morris County, New Jersey and the United States District Court for the District of New Jersey . . . ."

7.     This Court has personal jurisdiction over Pattni by virtue of, among other things, the terms of a guaranty (the "Guaranty"), described in more detail below, pursuant to which Pattni acknowledged that he was personally bound by section 17 of the Franchise Agreement.

8.     Venue is proper in this District pursuant to section 17.6.3 of the Franchise Agreement, inasmuch as that provision contains an express waiver by Ocala of any objection to venue in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

### The Days Inn® Marks

9.     DIW is one of the largest guest lodging facility franchise systems in the United States, and is widely known as a provider of guest lodging facility services.

10.     DIW owns and has the exclusive right to license the use of the service mark DAYS INN and various related trade names, trademarks and service marks (certain of which are on the principal register of the United States Patent and Trademark Office), logos, and derivations thereof (the "Days Inn® Marks"), as well as the distinctive Days Inn® System, which provides guest lodging services to the public under the Days Inn® name and certain services to its licensees, including a centralized reservation system, advertising, publicity, and training services.

11.     DIW or its predecessors first used the DAYS INN mark in 1970 and the Days Inn® Marks are in full force and effect.  Certain of the registered Days Inn® Marks are incontestable pursuant to 15 U.S.C. § 1065.

12.     DIW has given notice to the public of the registration of the Days Inn® Marks as provided in 15 U.S.C. § 1111.

13.     DIW uses or has used the words "Days Inn," among others, as abbreviations of its brand name.

-3-

14.     Through its franchise system, DIW markets, promotes, and provides services to its guest lodging licensees throughout the United States.   In order to identify the origin of their guest lodging services, DIW allows its licensees to utilize the Days Inn® Marks and to promote the Days Inn® brand name.

15.     DIW has invested substantial effort over a long period of time, including the expenditure of millions of dollars, to develop goodwill in its trade names and service marks to cause consumers throughout the United States to recognize the Days Inn® Marks as distinctly designating DIW guest lodging services as originating with DIW.

16.     The value of the goodwill developed in the Days Inn® Marks does not admit of precise monetary calculation, but because DIW is one of the largest guest lodging facility franchise systems in the United States and is widely known as a provider of guest lodging facility services, the value of DIW's goodwill exceeds hundreds of millions of dollars.

17.     The Days Inn® Marks are indisputably among the most famous in the United States.

<u>The Agreements Between The Parties</u>

18.     On or about November 1, 2009, DIW entered into the Franchise Agreement  with Ocala for the operation of a 100-room guest lodging facility located at 3620 W. Silversprings Blvd., Ocala, FL 34475, Site No. 5311-88499-02 (the "Facility").   A true copy of the Franchise Agreement is attached hereto as <u>Exhibit A</u>.

19.     Pursuant to Section 5 of the Franchise Agreement, Ocala was obligated to operate a Days Inn® guest lodging facility for a fifteen (15) year term during which time Ocala

was permitted to use the Days Inn® Marks in association with the operation and use of the Facility as part of DIW's franchise system.

20.     Pursuant to section 7, section 18.2 and Schedule C of the Franchise Agreement, Ocala was required to make certain periodic payments to DIW for royalties, system assessments, taxes, interest, reservation system user fees, and other fees (collectively, "Recurring Fees").

21.     Pursuant to section 7.3 of the Franchise Agreement, Ocala agreed that interest is payable "on any past due amount payable to [DIW] under this Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid."

22.     Pursuant to section 3.6.4 of the Franchise Agreement, Ocala was required to prepare and submit monthly reports to DIW disclosing, among other things, the amount of gross room revenue earned by Ocala at the Facility in the preceding month for purposes of establishing the amount of royalties and other Recurring Fees due to DIW.

23.     Pursuant to section 3.6.1 of the Franchise Agreement, Ocala agreed to maintain at the Facility accurate financial information, including books, records, and accounts, relating to the gross room revenue of the Facility and, pursuant to sections 3.6.2 and 4.8 of the Franchise Agreement, Ocala agreed to allow DIW to examine, audit, and make copies of the entries in these books, records, and accounts.

24.     Pursuant to section 11.2 of the Franchise Agreement, DIW could terminate the Franchise Agreement, with notice to Ocala, for various reasons, including Ocala's (a) failure

to pay any amount due DIW under the Franchise Agreement, (b) failure to remedy any other default of its obligations or warranties under the Franchise Agreement within 30 days after receipt of written notice from DIW specifying one or more defaults under the Franchise Agreement, and/or (c) receipt of two or more notices of default under the Franchise Agreement in any one year period, whether or not the defaults were cured.

25.     Pursuant to section 12.1 of the Franchise Agreement, Ocala agreed that, in the event of a termination of the Franchise Agreement pursuant to section 11.2, it would pay liquidated damages to DIW in accordance with a formula specified in the Franchise Agreement.

26.     Section 13 of the Franchise Agreement specified Ocala's obligations in the event of a termination of the Franchise Agreement, including its obligation to immediately cease using all of the Days Inn® Marks.

27.     Pursuant to section 17.4 of the Franchise Agreement, Ocala agreed that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this Franchise Agreement or collect amounts owed under this Franchise Agreement."

28.     On or about November 1, 2009, DIW entered into a Connectivity Equipment Lease and Services Addendum (the "Connectivity Addendum") with Ocala.  A true copy of the Connectivity Addendum is attached hereto as Exhibit B.

29.     Pursuant to section 12(c) of the Connectivity Addendum, Ocala agreed that, in the event of a termination of the Connectivity Addendum, including by virtue of

termination of the Franchisee Agreement, it would pay Connectivity Addendum Liquidated Damages to DIW in the amount of $2,500.00.

30.     Effective as of the date of the Franchise Agreement, Pattni provided DIW with a Guaranty of Ocala's obligations under the Franchise Agreement.   A true copy of the Guaranty is attached hereto as Exhibit C.

31.     Pursuant to the terms of the Guaranty, Pattni agreed, among other things, that upon a default under the Franchise Agreement, he would "immediately make each payment and perform or cause Franchisee to perform, each unpaid or unperformed obligation of Franchisee under the Agreement."

32.     Pursuant to the terms of the Guaranty, Pattni agreed to pay the costs, including reasonable attorneys' fees, incurred by DIW in enforcing its rights or remedies under the Guaranty or the Franchise Agreement.

### The Defendants' Defaults and Termination

33.     By letter dated May 23, 2011, a true copy of which is attached hereto as Exhibit D, DIW advised Ocala that (a) it was in breach of the Franchise Agreement because it owed DIW approximately $130,304.57 in outstanding Recurring Fees, (b) it had 10 days within which to cure this monetary default, and (c) if the default was not cured, then the Franchise Agreement might be subject to termination.

34.     By letter dated October 24, 2011, a true copy of which is attached hereto as Exhibit E, DIW advised Ocala that (a) it was in breach of the Franchise Agreement because it owed DIW approximately $175,493.58 in outstanding Recurring Fees, (b) it had 10 days within

which to cure this monetary default, and (c) if the default was not cured, then the Franchise Agreement might be subject to termination.

35.   By letter dated March 15, 2012, a true copy of which is attached hereto as Exhibit F, DIW advised Ocala that (a) it was in breach of the Franchise Agreement because it owed DIW approximately $201,592.79 in outstanding Recurring Fees, (b) it had 10 days within which to cure this monetary default, and (c) if the default was not cured, then the Franchisee Agreement might be subject to termination.

36.   By letter dated March 28, 2012, a true copy of which is attached as Exhibit G, DIW terminated the Franchise Agreement and advised Ocala that (a) it was to immediately discontinue the use of all trade names, service marks, signs, and other forms of advertising, and other indicia of operation as a Days Inn® Facility, and to discontinue the use of other materials on the premises effectively to distinguish the same from its former appearance as a Days Inn® System facility, (b) all items bearing the Days Inn® Marks had to be removed, (c) all signs and any listings in directories and similar guides in which the Facility was identified as a Days Inn® had to be changed, (d) it was required to pay to DIW as liquidated damages for premature termination the sum of $202,500.00 as required under the Franchise Agreement and Connectivity Addendum, (e) it had to de-identify the Facility within 10 days from the receipt of the notice, and (f) demand was made for all outstanding Recurring Fees through the date of termination.

37.   The termination of the Franchise Agreement precludes Ocala from any further use of the Days Inn® Marks in or around the Facility.

38.    The termination of the Franchise Agreement precludes Ocala from any further use of the Days Inn® Marks to induce the traveling public to use the Facility in any way.

39.    Since the termination of the Franchise Agreement, Ocala has continued to use the Days Inn® Marks to induce the traveling public to rent guest rooms at the Facility.

40.    Since the termination of the Franchise Agreement, Ocala has used the Days Inn® Marks without authorization to rent rooms through, among other things, failure to remove Days Inn® signage and continuing to identify the Facility as a Days Inn® guest lodging facility in response to telephone inquiries as to whether or not the Facility is a Days Inn®.

41.    By letter dated May 9, 2012, a true copy of which is attached as <u>Exhibit H</u>, DIW reiterated Ocala's post-termination obligations under the Franchise Agreement, including the requirement that, upon termination, Ocala completely "de-identify" the Facility as a Days Inn®.

42.    Ocala has continued to misuse the Days Inn® Marks despite receiving notification from DIW to cease and desist from the misuse of the Days Inn® Marks.

### FIRST COUNT

43.    DIW repeats and makes a part hereof each and every allegation set forth in paragraphs 1 through 42 of the Verified Complaint.

44.    Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a), provides in pertinent part that "[a]ny person who shall, without the consent of the registrant — use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in

connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant . . . ."

45.     Ocala marketed, promoted, and rented, and continues to market, promote, and rent rooms at the Facility through the unauthorized use of the Days Inn® Marks, and such use caused and is likely to continue to cause confusion or mistake among prospective or actual customers, in violation of Section 32 of the Lanham Act.

46.     Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides in pertinent part that "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to affiliation . . . or as to the origin, sponsorship, or approval of . . . goods and/or services . . . shall be liable in a civil action . . . ."

47.     The acts of Ocala in marketing, promoting, and renting rooms at the Facility, through and with the Days Inn® Marks, constitute:

        (a)     a false designation of origin;

        (b)     a false and misleading description of fact; and

        (c)     a false and misleading representation of fact;

that caused and are likely to continue to cause confusion, or to cause mistake, or deception, as to the affiliation of Ocala's Facility with DIW, and to cause confusion, or to cause mistake, or deception,

to the effect that DIW sponsors or approves of the guest lodging services that Ocala provides at the Facility, all in violation of Section 43(a) of the Lanham Act.

48.     Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), provides in pertinent part that "[t]he owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection."

49.     Ocala's use of the Days Inn® Marks in connection with goods and services at the Facility, after the Days Inn® Marks became famous, caused and will continue to cause dilution and disparagement of the distinctive quality of the Days Inn® Marks, and lessened and will continue to lessen the capacity of the Days Inn® Marks to identify and distinguish the goods and services of DIW, all in violation of Section 43(c) of the Lanham Act.

50.     Ocala's on-going acts of infringement in violation of Sections 32, 43(a), and 43(c) of the Lanham Act are malicious, fraudulent, willful, and deliberate.

51.     Ocala's on-going acts of infringement in violation of Sections 32, 43(a), and 43(c) of the Lanham Act have inflicted and continue to inflict irreparable harm on DIW.

52.     DIW has no adequate remedy at law.

53.     No previous injunctive relief has been awarded with respect to this matter in this case or any other case.

WHEREFORE, pursuant to 15 U.S.C. §§ 1114, and 1125(a) & (c), DIW demands judgment against Ocala:

       (a)     Preliminarily and permanently restraining and enjoining Ocala, its affiliates, subsidiaries, officers, agents, servants, employees and attorneys, and all those who act in concert or participation with them, from marketing, promoting, or selling guest lodging services at the Facility through and with the Days Inn® Marks; and

       (b)     Granting compensatory damages, treble damages, attorneys' fees, prejudgment interest, costs of suit, and such other and further relief as this Court shall deem just and proper.

## SECOND COUNT

54.     DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 53 of the Verified Complaint.

55.     Pursuant to sections 3.6 and 4.8 of the Franchise Agreement, Ocala agreed to allow DIW to examine, audit, and make copies of Ocala's financial information, including books, records, and accounts, relating to the gross room revenue earned at the Facility.

56.     Ocala has engaged in acts and practices, as described, which amount to infringement of the Days Inn® Marks in an unlawful, unfair, and fraudulent manner which is likely to confuse the public.

57.     As a result, Ocala owes restitution and the disgorgement of profits, in an amount unknown to DIW, and which amount cannot be ascertained without an accounting of the

receipts and disbursements, profit and loss statements, and other financial materials, statements and books from Ocala.

WHEREFORE, DIW demands judgment ordering that Ocala account to DIW for any and all revenue derived as a result of marketing, promoting, or selling guest lodging services at the Facility through and with the Days Inn® Marks.

### THIRD COUNT

58.    DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 57 of the Verified Complaint.

59.    On March 28, 2012 DIW terminated the Franchise Agreement due to Ocala's failure to cure persistent monetary defaults.

60.    Section 12.1 of the Franchise Agreement provides that, in the event of termination of the Franchise Agreement due to action of the Franchisee, Ocala shall pay liquidated damages to DIW within 30 days of termination.

61.    Section 12(c) of the Connectivity Addendum provides that, in the event of a termination of the Connectivity Addendum, including by virtue of termination of the Franchise Agreement, Ocala shall pay Satellite Addendum Liquidated Damages to DIW in the amount of $2,500.00 within 10 days following the date of termination.

62.    As a result of the termination of the Franchise Agreement, Ocala is obligated to pay DIW liquidated damages in the amount of $202,500.00, as calculated pursuant to section 12.1 of the Franchise Agreement and section 12(c) of the Connectivity Addendum.

63.    Notwithstanding DIW's demand for payment, Ocala has failed to pay DIW the liquidated damages as required in section 12.1 of the Franchise Agreement and section 12(c) of the Connectivity Addendum.

64.    DIW has been damaged by Ocala's failure to pay liquidated damages.

**WHEREFORE**, DIW demands judgment against Ocala for liquidated damages in the amount of $202,500.00 together with interest, attorneys' fees and costs of suit.

## FOURTH COUNT

65.    DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 64 of the Verified Complaint.

66.    By virtue of the premature termination of the Franchise Agreement, DIW sustained a loss of future revenue over the remainder of the fifteen (15) year term of the Franchise Agreement.

67.    If the Court determines that Ocala is not liable to pay DIW liquidated damages as required by section 12.1 of the Franchise Agreement then, in the alternative, Ocala is liable to DIW for actual damages for the premature termination of the Franchise Agreement and Connectivity Addendum.

68.    DIW has been damaged by Ocala's breach of its obligation to operate a Days Inn® guest lodging facility for the remaining term of the Franchise Agreement.

**WHEREFORE**, DIW demands judgment against Ocala for actual damages in an amount to be determined at trial, together with interest, attorneys' fees and costs of suit.

## FIFTH COUNT

69.     DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 68 of the Verified Complaint.

70.     Pursuant to section 7, section 18 and Schedule C of the Franchise Agreement, Ocala was obligated to remit Recurring Fees to DIW.

71.     Despite its obligation to do so, Ocala failed to remit certain of the Recurring Fees due and owing under the Franchise Agreement in the current amount of $223,163.22.

72.     Ocala's failure to remit the agreed Recurring Fees constitutes a breach of the Franchise Agreement and has damaged DIW.

**WHEREFORE**, DIW demands judgment against Ocala for the Recurring Fees due and owing under the Franchise Agreement, in the current amount of $223,163.22, together with interest, attorneys' fees and costs of suit.

## SIXTH COUNT

73.     DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 72 of the Verified Complaint.

74.     At the time of the termination of the Franchise Agreement, Ocala was obligated to pay DIW Recurring Fees.

75.     Despite its obligation to do so, Ocala failed to pay certain of the Recurring Fees due and owing under the Franchise Agreement in the current amount of $223,163.22.

76.     In addition, Ocala benefited from its wrongful use of the Days Inn® Marks after termination of the Franchise Agreement and paid no royalty or other Recurring Fees to DIW in return for that benefit.

77.     Ocala's failure to compensate DIW constitutes unjust enrichment and has damaged DIW.

**WHEREFORE**, DIW demands judgment against Ocala for the Recurring Fees due and owing under the Franchise Agreement, in the current amount of $223,163.22, together with interest, attorneys' fees and costs of suit and all royalties and Recurring Fees that should be paid to compensate DIW for the period during which Ocala misused the Days Inn® Marks and was thereby unjustly enriched, together with interest and costs of suit.

## SEVENTH COUNT

78.     DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 77 of the Verified Complaint.

79.     Pursuant to the terms of the Guaranty, Pattni agreed, among other things, that upon a default under the Franchise Agreement, he would immediately make each payment and perform each obligation required of Ocala under the Franchise Agreement.

80.     Despite his obligation to do so, Pattni has failed to make any payments or perform or cause Ocala to perform each obligation required under the Franchise Agreement.

81.     Pursuant to the Guaranty, Pattni is liable to DIW for Ocala's liquidated damages in the amount of $202,500.00, or actual damages in an amount to be determined at trial,

and Ocala's Recurring Fees due and owing under the Franchise Agreement, in the current amount of $223,163.22, and for those additional Recurring Fees attributable to the period during which Ocala has misused the Days Inn® Marks.

**WHEREFORE**, DIW demands judgment against Pattni for damages in the amount of:

(a)   All liquidated damages or actual damages and Recurring Fees due and owing under the Franchise Agreement, together with interest, attorneys' fees and costs of suit; and

(b)   All profits, royalties, and other Recurring Fees that should be paid to compensate DIW for the period during which Ocala misused the Days Inn® Marks and was thereby unjustly enriched, together with interest, attorneys' fees and costs of suit.

## EIGHTH COUNT

82. DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 81 of the Verified Complaint.

83. On March 28, 2012 DIW terminated the Franchise Agreement due to Ocala's failure to cure persistent monetary defaults.

84. Section 13.2 of the Franchise Agreement provides that, when the Franchise Agreement is terminated, DIW has the right to "without prior notice enter the Facility, and any other parcels, . . . and paint over or remove and purchase for $10.00, all or part of any interior or exterior Mark-bearing signage (or signage face plates), including billboards, whether or not

located at the Facility, that [Ocala did] not remove[] or obliterate[] within five days after termination."

85. Ocala continues to market, promote, and rent rooms at the Facility through the unauthorized use of the Days Inn® Marks, and such use caused and is likely to continue to cause confusion or mistake among prospective or actual customers.

86. Ocala's unauthorized use of the Days Inn® Marks has inflicted and continues to inflict irreparable harm on DIW.

**WHEREFORE**, DIW demands judgment declaring that DIW, or its authorized agent, has the right, without prior notice to Defendants, to enter the property at the Facility and remove any and all exterior signage, exterior items and other exterior materials displaying the Days Inn® Marks.

> **CLYDE & CO US LLP**
> Attorneys for Plaintiff
> Days Inns Worldwide, Inc.
>
> By: _____
> **BRYAN P. COUCH**

Dated: 5|8|13

- 18 -

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

CLYDE & CO US LLP
Attorneys for Plaintiff
Days Inns Worldwide, Inc.

By: _____

BRYAN P. COUCH

Dated: 5|8|13

## VERIFICATION

STATE OF NEW JERSEY    )
                          ) ss:
COUNTY OF MORRIS       )

        Suzanne Fenimore, of full age, being duly sworn according to law, upon her oath, deposes and says:

        I am Senior Director of Contracts Compliance for Days Inns Worldwide, Inc., which is plaintiff in this action.

        I have read the foregoing Verified Complaint and all the allegations contained therein. Except as to allegations alleged upon information and belief, which allegations I believe to be true, all the allegations in the Verified Complaint are true based on my personal knowledge, the records of DIW, and/or information available through employees of DIW.

                                                        _____
                                                      /SUZANNE FENIMORE

Sworn and subscribed to before
me this 7th day of May , 2013



_____
NOTARY PUBLIC

- 20 -

EXHIBIT "A"

Location:      Ocala, FL
Entity No.:    88499-02
Unit No.:      5311

## DAYS INNS WORLDWIDE, INC.
## FRANCHISE AGREEMENT

THIS FRANCHISE AGREEMENT ("Agreement"), dated NOV 1 , 2009 is between DAYS INNS WORLDWIDE, INC., a Delaware corporation ("we", "our", or "us"), and OCALA INN KASH, INC., a Florida Corporation ("you"). The definitions of capitalized terms are found in Appendix A. In consideration of the following mutual promises, the parties agree as follows:

1. **Franchise**. We have the exclusive right to franchise to you the distinctive "Days Inn" System for providing transient guest lodging services. We grant to you and you accept the Franchise, effective and commencing on the Opening Date and ending on the earliest to occur of the Term's expiration or a Termination. The Franchise is effective only at the Location and may not be transferred or relocated. You will call the Facility a "Days Inn." You may adopt additional or secondary designations for the Facility with our prior written consent, which we may withhold, condition, or withdraw on written notice in our sole discretion. You shall not affiliate or identify the Facility with another franchise system, reservation system, brand, cooperative or registered mark during the Term.

2. **Days Inns Franchisee Advisory Association**. You will be eligible to participate in the Days Inn Franchisee Advisory Association, a Delaware corporation that is the organization of Days Inn System franchisees, in accordance with the Bylaws and Certificate of Incorporation of the Association, as amended, so long as you are not in default under this Agreement.

3. **Your Improvement and Operating Obligations**.

3.1 **Pre-Opening Improvements**. You must select, acquire, construct and/or renovate the Facility as provided in Schedule D.

3.2 **Operation**. You will operate and maintain the Facility continuously after the Opening Date on a year-round basis as required by System Standards and offer transient guest lodging and other related services of the Facility (including those specified on Schedule B) to the public in compliance with all federal, state, and local laws, regulations and ordinances as well as System Standards. You will keep the Facility in a clean, neat, and sanitary condition. You will clean, repair, replace, renovate, refurbish, paint, and redecorate the Facility and its FF&E as and when needed to comply with System Standards. The Facility will be managed by either a management company or an individual manager with significant training and experience in general management of similar lodging facilities. The Facility will accept payment from guests by all credit and debit cards we designate in the System Standards Manual. The Facility will follow standard industry practices for safeguarding cardholder information, applicable laws and regulations, and such other requirements as we may include in the System Standards Manual or as we may otherwise communicate from time to time for such purpose. You may add to or

1

discontinue the amenities, services and facilities described in Schedule B, or lease or subcontract any service or portion of the Facility, only with our prior written consent which we will not unreasonably withhold or delay. Your front desk operation, telephone system, parking lot, swimming pool and other guest service facilities may not be shared with or used by guests of another lodging or housing facility. You acknowledge that any breach of System Standards for the Facility, its guest amenities, and your guest service performance is a material breach of this Agreement.

3.3  **Training.** You (or a person with executive authority if you are an entity) and the Facility's general manager (or other representative who exercises day to day operational authority) will attend the training programs described in Section 4.1 we designate as mandatory for franchisees and general managers, respectively. You will train or cause the training of all Facility personnel as and when required by System Standards and this Agreement. You will pay for all travel, lodging, meals and compensation expenses of the people you send for training programs, the cost of training materials and other reasonable charges we may impose for training under Section 4.1, and all travel, lodging, meal and facility and equipment rental expenses of our representatives if training is provided at the Facility.

3.4  **Marketing.**

3.4.1  You will participate in System marketing programs, including the Directory, if any, the Reservation System, and guest loyalty programs. You will obtain and maintain the computer and communications service and equipment we specify to participate in the Reservation System. You will comply with our rules and standards for participation, and will honor reservations and commitments to guests and travel industry participants. You authorize us to offer and sell reservations for rooms and services at the Facility according to the rules of participation and System Standards. You may implement, at your option and expense, your own local advertising. Your advertising materials must use the Marks correctly, and must comply with System Standards or be approved in writing by us prior to publication. You will stop using any non-conforming, out-dated or misleading advertising materials if we so request.

3.4.2  You may participate in any regional marketing, training or management alliance or cooperative of Chain franchisees formed to serve the Chain Facilities in your area. We may assist the cooperative collect contributions. You may be excluded from cooperative programs and benefits if you do not participate in all cooperative programs according to their terms, including making payments and contributions when due.

3.4.3  The Facility must participate in our Chain-wide Internet marketing activities like other marketing programs including any arrangements we make with third party distribution channels that are mandated in the System Standards Manual. You shall provide us with information about the Facility and utilize our approved photographer for taking photographs of the Facility for posting on the Chain website. The content you provide us or use yourself for any Internet marketing must be true, correct and accurate, and you will notify us in writing promptly when any correction to the content becomes necessary. You shall promptly modify at our request the content of any Internet marketing material for the Facility you use, authorize, display or provide to conform to System Standards. You will discontinue any Internet marketing that conflicts, in

2

our reasonable discretion, with Chain-wide Internet marketing activities. You must honor the terms of any participation agreement you sign for Internet marketing. You shall pay when due any fees, commissions, charges and reimbursements relating to Internet marketing activities (i) in which you agree to participate, or (ii) that we designate as mandatory on a Chain-wide basis. We may suspend the Facility's participation in Internet marketing activity if you default under this Agreement.

3.4.4 You will participate in any guest rewards or loyalty program we determine is appropriate and pay the Loyalty Program Charge associated with the program as set forth in Schedule C.

3.5 **Governmental Matters.** You will obtain as and when needed all governmental permits, licenses and consents required by law to construct, acquire, renovate, operate and maintain the Facility and to offer all services you advertise or promote. You will pay when due or properly contest all federal, state and local payroll, withholding, unemployment, beverage, permit, license, property, ad valorem and other taxes, assessments, fees, charges, penalties and interest, and will file when due all governmental returns, notices and other filings. You will comply with all applicable federal, state and local laws, regulations and orders applicable to you and/or the Facility, including those combating terrorism such as the USA Patriot Act and Executive Order 13224.

3.6 **Financial Books & Records; Audits.**

3.6.1 The Facility's transactions must be timely and accurately recorded in accounting books and records prepared on an accrual basis compliant with generally accepted accounting principles of the United States ("GAAP") and consistent with the most recent edition of the Uniform System of Accounts for the Lodging Industry published by the American Hotel & Motel Association, as modified by this Agreement and System Standards. You acknowledge that your accurate accounting for and reporting of Gross Room Revenues is a material obligation you accept under this Agreement.

3.6.2 Upon our request, you will send to us copies of financial statements, tax returns, and other records relating to the Facility for the applicable accounting period that we require under this Agreement and System Standards. We may notify you of a date on which we propose to audit the Facility's books and records at the Facility. You will be deemed to confirm our proposed date unless you follow the instructions with the audit notice for changing the date. You need to inform us where the books and records will be produced. You need to produce for our auditors at the confirmed time and place for the audit the books, records, tax returns and financial statements for the Facility. We may also perform an audit of the Facility's books and records without advance notice. Your staff must cooperate with and assist our auditors to perform any audit we conduct.

3.6.3 We will notify you in writing if you default under this Agreement because (i) you do not cure a violation of Section 3.6.2 within 30 days after the date of the initial audit, (ii) you cancel two or more previously scheduled audits, (iii) you refuse to admit our auditors during normal business hours at the place where you maintain the Facility's books and records, or refuse to produce the books and records at the audit or send them to us as required under this Agreement and System Standards for the applicable accounting periods, (iv) our audit determines that the books and records

3

you produced are incomplete or show evidence of tampering or violation of generally accepted internal control procedures, or (v) our audit determines that that you have reported to us less than 97% of the Facility's Gross Room Revenues for any fiscal year preceding the audit. Our notice of default may include, in our sole discretion and as part of your performance needed to cure the default under this Section 3.6, an "Accounting Procedure Notice." You must also pay any deficiency in Recurring Fees, any Audit Fee we assess you for your default of Section 3.6 as described in Section 4.8, and/or other charges we identify and invoice as a result of the audit. The Accounting Procedure Notice requires that you obtain and deliver to us, within 90 days after the end of each of your next three fiscal years ending after the Accounting Procedure Notice, an audit opinion signed by an independent certified public accountant who is a member of the American Institute of Certified Public Accountants addressed to us that the Facility's Gross Room Revenues you reported to us during the fiscal year fairly present the Gross Room Revenues of the Facility computed in accordance with this Agreement for the fiscal year.

3.6.4  You shall, at your expense, prepare and submit to us by the tenth day of each month, a statement in the form prescribed by us, accurately reflecting for the immediately preceding month all Gross Room Revenues and such other data or information as we may require. You must submit your statements to us using our on-line reporting and payment tool or through such other technology or means as we may establish from time to time.

3.7  **Inspections.**  You acknowledge that the Facility's participation in our quality assurance inspection program (including unannounced inspections) is a material obligation you accept under this Agreement. You will permit our representatives to perform quality assurance inspections of the Facility at any time with or without advance notice. The inspections will commence during normal business hours although we may observe Facility operation at any time. You and the Facility staff will cooperate with the inspector performing the inspection. If the Facility fails an inspection, you refuse to cooperate with our inspector, or you refuse to comply with our published inspection System Standards, then you will pay us when invoiced for any Reinspection Fee specified in System Standards Manuals plus the reasonable travel, lodging and meal costs our inspector incurs for a reinspection. You will also be charged the Reinspection Fee if we must return to the Facility to inspect it as a result of your failure to complete any Improvement Obligation by the deadline established in the Punch List, as set forth in Schedule D. We may also conduct paper and electronic customer satisfaction surveys of your guests and include the results in your final quality assurance score. We may publish and disclose the results of quality assurance inspections and guest surveys. We may, at our discretion, implement a chain-wide quality assurance/mystery shopper inspection program to be performed by a reputable third party. You will pay the cost of the third party inspection when invoiced for no more than two inspections in any calendar year.

3.8  **Insurance.**  You will obtain and maintain during the Term of this Agreement the insurance coverage required under the System Standards Manual from insurers meeting the standards established in the Manual. Unless we instruct you otherwise, your liability insurance policies will name Days Inns Worldwide, Inc., Wyndham Worldwide Corporation, Wyndham Hotel Group, LLC, their current and former affiliates, successors and assigns as additional insureds.

3.9  **Conferences.**  You (or your representative with executive authority if you are an entity) will

4

attend each annual Chain conference and pay the Conference Fee we set for the Chain franchisees, if and when we determine to hold an annual Chain conference. Mandatory recurrent training for franchisees and managers described in Section 4.1.4 may be held at a conference. The Fee will be the same for all Chain Facilities that we franchise in the United States. You will receive reasonable notice of a Chain conference.

3.10  **Purchasing and Other Services.**  You will purchase or obtain certain items we designate as proprietary or that bear or depict the Marks, such as signage, only from suppliers we approve. You may purchase other items for the Facility from any competent source you select, so long as the items meet or exceed System Standards.

3.11  **Good Will.**  You will use reasonable efforts to protect, maintain and promote the name "Days Inn" and its distinguishing characteristics, and the other Marks. You will not permit or allow your officers, directors, principals, employees, representatives, or guests of the Facility to engage in conduct which is unlawful or damaging to the good will or public image of the Chain or System. You will participate in Chain-wide guest service and satisfaction guaranty programs we require in good faith for all Chain Facilities. You will follow System Standards for identification of the Facility and for you to avoid confusion on the part of guests, creditors, lenders, investors and the public as to your ownership and operation of the Facility, and the identity of your owners. You shall use your best efforts to promote usage of other Chain Facilities by members of the public. Except as provided in the System Standards Manual or if you obtain our prior written consent, which we may withhold in our sole discretion, neither your nor the Facility shall promote or advertise any competing business at the Facility including, but not limited to, any other guest lodging facility, time share resort, vacation club, residence club, fractional ownership residence, condominium/apartment leasing or rental business, or the like, unless we or one of our affiliates franchise, manage or own that business.

3.12  **Facility Modifications.**  You may materially modify, diminish or expand the Facility (or change its interior design, layout, FF&E, or facilities) only after you receive our prior written consent, which we will not unreasonably withhold or delay. You will pay our Rooms Addition Fee then in effect for each guest room you add to the Facility. If we so request, you will obtain our prior written approval of the plans and specifications for any material modification, which we will not unreasonably withhold or delay. You will not open to the public any material modification until we inspect it for compliance with the Approved Plans and System Standards.

3.13  **Courtesy Lodging.**  You will provide lodging at the "Employee Rate" established in the System Standards Manual from time to time (but only to the extent that adequate room vacancies exist) to our representatives traveling on business, but not more than three standard guest rooms at the same time.

3.14  **Minor Renovations.**  Beginning three years after the Opening Date, we may issue a "Minor Renovation Notice" to you that will specify reasonable Facility upgrading and renovation requirements (a "Minor Renovation") to be commenced no sooner than 90 days after the notice is issued, having an aggregate cost for labor, FF&E and materials estimated by us to be not more than the Minor Renovation Ceiling Amount. You will perform the Minor Renovations as and when the Minor Renovation Notice requires. We will not issue a Minor Renovation Notice within three years

5

after the date of a prior Minor Renovation Notice, or if the three most recent quality assurance inspection scores of the Facility averaged no more than 200 points and the most recent quality assurance inspection score for the Facility was no more than 225 points (or equivalent scores under a successor quality assurance scoring system we employ), when the Facility is otherwise eligible for a Minor Renovation.

3.15 **Technology Standards & Communications.** You recognize that the System requires you to acquire, operate and maintain a computer-based property management system and provide guests with innovative technology for communications and entertainment. You must purchase the computer system and other equipment and software that we specify. We may modify System Standards to require new technology at all Chain Facilities. At our request, you shall participate in any intranet or extranet system developed for use in connection with the System. Such intranet or extranet system may be combined with that of our affiliates. You shall agree to such terms and conditions for the use of such intranet or extranet system as we may prescribe, which may include, among other things: (a) confidentiality requirements for materials transmitted via such system; (b) password protocols and other security precautions; (c) grounds and procedures for our suspension or revocation of access to the system by you and others; and (d) a privacy policy governing the parties' access to and use of electronic communications posted on electronic bulletin boards or transmitted via the system. You shall pay any fee imposed from time to time by us or a third party service provider in connection with hosting such system.

4. **Our Operating and Service Obligations.** We will provide you with the following services and assistance:

4.1 **Training.** We may offer (directly or indirectly by subcontracting with an affiliate or a third party) general manager and owner orientation training, remedial training and supplemental training.

4.1.1 **General Manager Orientation Training.** We will offer at a location in the United States we designate a general manager orientation training program. The program will not exceed two weeks in duration and will cover such topics as System Standards, services available from us, and operating a Chain Facility. We may also offer certain Internet-based training as a supplement to the classroom training experience. Your initial general manager (or other representative who exercises day to day operational authority) for the Facility must complete this program to our satisfaction no later than 90 days after the Opening Date. Any replacement general manager must complete general manager orientation to our satisfaction within 90 days after he/she assumes the position. If we do not offer a place in general manager orientation within the above time frame, your replacement general manager must attend the next program held at which we offer a place. Your general manager for the Facility must complete general manager orientation even if you employ managers at other Chain Facilities who have already received this training. We charge you tuition for general manager orientation which is payable before the scheduled date of the program. The tuition for your first general manager is $1,250 if he/she attends orientation within the time period required under this section. For any replacement general manager, you must pay the tuition in effect for the program when your manager attends the program. You must also pay for your manager's travel, lodging, meals, incidental expenses, compensation and benefits. We may, at our option, automatically schedule your initial or replacement general manager for a class to be held within the

6

required time period (an "auto-assigned class") and invoice you when we notify you about the date of the class. If your general manager is unable to attend that class, you must notify us at least 15 days before the training start date and re-schedule the general manager for another class to be held within the 90 day period. We may charge you "No-Show Fees" or "Cancellation Fees" if your general manager fails to attend orientation within the required time period or fails to attend a program we have scheduled for him or her without giving us at least 15 days notice of cancellation. This is in addition to the tuition you must pay us for your general manager at the then in effect rate when he/she attends orientation. See Section 4.1.5.

**4.1.2  Owner Training.** We will offer an owner orientation training program to familiarize you with the System, the Chain, and our services. If this is your first System franchise, you (or a person with executive authority if you are an entity) must attend owner orientation preferably within 60 days before, but no later than 60 days after, the Opening Date. If we do not offer a place in owner orientation within this time period, you must attend the next program held at which we offer a place. Financial institutions and real estate mortgage investment conduits are exempt from the obligation to attend owner orientation, but may choose to do so at their option. We charge you tuition of $825 which is payable before the scheduled date for the program. You must also pay for your travel, lodging, meal and incidental expenses. If you are unable to attend an orientation program that you have scheduled with us, you must notify us at least 15 days before the start date and schedule attendance at another class to be held within the 60 day period. We may charge you No-Show or Cancellation Fees if you fail to attend any mandatory orientation program within the required time period or fail to attend a program we have scheduled for you without giving us at least 15 days notice of cancellation. See Section 4.1.5. In addition to owner orientation, we may require first time owners to attend up to four additional courses within six months of the Opening Date. These courses will typically not exceed one day in length. Tuition for these courses is currently $250, but is subject to increase in the future.

**4.1.3  Remedial Training.** We may require you, your general manager and/or your staff to participate in remedial training if the Facility receives a D or F (or equivalent score) on a quality assurance inspection, a D or F +GX score on Medallia electronic guest survey (or equivalent evaluation system), or experiences significant complaints to our guest services department, as determined by us in our sole discretion. This training may be offered at our corporate offices, at a regional location, on-line or at the Facility. The training may be in the form of one or more classes held at different times and locations as we may require. You must pay the tuition in effect for this program when it is offered to you. If the training is provided at the Facility, you must provide lodging for our trainers.

**4.1.4  Supplemental Training.** All general managers must complete recertification training every three years. You must pay us the tuition then in effect for the program. You must subscribe to our e-learning training program which offers a variety of hospitality courses and videos for general managers and line level staff. We charge you an annual training resource access fee based on the amount our third party content provider charges us, plus a reasonable service fee for administering and marketing the program. The annual training resource fee is currently $60, but is subject to increase in the future. We may offer other mandatory or optional training programs for reasonable tuition or without charge. Recertification and other supplemental training may be offered in our U.S. training center or other locations or held in conjunction with a Chain lodging conference. You

7

must pay the then current tuition for the training as well as for your representative's travel, lodging, meals, incidental expenses, compensation and benefits while attending the training. We may offer, rent or sell to you video tapes, computer discs or other on-site training aids and materials, or require you to buy them at reasonable prices. We may also offer Internet-based training via the Chain's intranet website.

**4.1.5  No Show and Cancellation Fees.**  If you or your general manager fails to attend orientation within the required time period, or fails to attend a training program as scheduled (including any auto-assigned class) without notifying us in advance, we may charge you a No-Show Fee of up to 100% of the tuition for the program.  If you or any member of your staff cancels participation in any training program less than 15 days before it is scheduled to be held, we may charge you a Cancellation Fee of up to 50% of the tuition for the program. No-Show and Cancellation Fees are in addition to the tuition you will have to pay at the then offered rate when you or your general manager attends the program. We may assess you additional No-Show or Cancellation Fees for continued failures by you under Section 4.1.

**4.2  Reservation System.**  We will operate and maintain (directly or by subcontracting with an affiliate or one or more third parties) a computerized Reservation System or such technological substitute(s) as we determine, in our discretion.  We will use the System Assessment Fee for the acquisition, development, support, equipping, maintenance, improvement and operation of the Reservation System.  We will provide software maintenance and support for any software we license to you to connect to the Reservation System if you are up to date in your payment of Recurring Fees and all other fees you must pay under any other agreement with us or our affiliate.  During the Term, the Facility will participate in the Reservation System on an exclusive basis, including entering into all related technology agreements and complying with all terms and conditions which we establish from time to time for participation.   The Facility may not book any reservations through any other electronic reservation system, booking engine or other technology. All information you collect or capture through your property management system shall be jointly owned by you and us.  We have the right to provide reservation services to lodging facilities other than Chain Facilities or to other parties.

**4.3  Marketing.**

**4.3.1**  We will promote public awareness and usage of Chain Facilities by implementing advertising, promotion, publicity, market research, loyalty marketing and other marketing programs, training programs and related activities, and the production and distribution of Chain publications and directories of hotels.   We will determine in our discretion: (i) The nature and type of media placement; (ii) The allocation (if any) among international, national, regional and local markets; and (iii) The nature and type of advertising copy, other materials and programs.  We or an affiliate may be reimbursed for the reasonable direct and indirect costs, overhead or other expenses of providing marketing services.  We are not obligated to supplement or advance funds available from System franchisees to pay for marketing activities.  We do not promise that the Facility or you will benefit directly or proportionately from marketing activities.

**4.3.2**  We may, at our discretion, implement special international, national, regional or local promotional programs (which may or may not include the Facility) and may make available to you

8

(to use at your option) media advertising copy and other marketing materials for prices which reasonably cover the materials' direct and indirect costs.

4.3.3 We may issue a Chain Directory in paper, electronic or other format. We will include the Facility in this Chain Directory if (i) you submit the information we request on time, and (ii) you are not in default under this Agreement at the time we must compile the information for the Directory. If the Directory is issued in paper form, we may supply Directories to you for display at locations specified in the System Standards Manual or policy statements. We may assess you a reasonable charge for the direct and indirect expenses (including overhead) of producing and delivering the Directories.

4.3.4 We may, at our discretion, implement "group booking" programs created to encourage use of Chain Facilities for tours, conventions and the like, possibly for an additional fee.

**4.4 Purchasing and Other Services.** We may offer optional assistance to you with purchasing items used at or in the Facility. Our affiliates may offer this service on our behalf. We may restrict the vendors authorized to sell proprietary or Mark-bearing items in order to control quality, provide for consistent service or obtain volume discounts. We will maintain and provide to you lists of suppliers approved to furnish Mark-bearing items, or whose products conform to System Standards.

**4.5 The System.** We will control and establish requirements for all aspects of the System. We may, in our discretion, change, delete from or add to the System, including any of the Marks or System Standards, in response to changing market conditions. We may, in our discretion, permit deviations from System Standards, based on local conditions and our assessment of the circumstances. We may, in our discretion, change the designation standards for the Chain and then require that you change the designation of the Facility and related presentation of that designation where it appears.

**4.6 Consultations and Standards Compliance.** We will assist you to understand your obligations under System Standards by telephone, mail, during quality assurance inspections, through the System Standards Manual, at training sessions and during conferences and meetings we conduct. We will provide telephone and mail consultation on Facility operation and marketing through our representatives. We will offer you access to any Internet website we may maintain to provide Chain franchisees with information and services, subject to any rules, policies and procedures we establish for its use and access and to this Agreement. We may limit or deny access to any such website while you are in default under this Agreement.

**4.7 System Standards Manual and Other Publications.** We will specify System Standards in the System Standards Manual, policy statements or other publications which we may make available to you via our Chain intranet, in paper copies or through another medium. We will provide you with access to the System Standards Manual promptly after we sign this Agreement. We will notify you via our Chain intranet or another medium of any System Standards Manual revisions and/or supplements as and when issued as well as any other publications and policy statements in effect for Chain franchisees from time to time.

**4.8 Inspections and Audits.** We have the unlimited right to conduct unannounced quality

9

assurance inspections of the Facility and its operations, records and Mark usage to test the Facility's compliance with System Standards and this Agreement, and the audits described in Section 3.6. We have the unlimited right to reinspect if the Facility does not achieve the score required on an inspection. We may impose a reinspection fee and will charge you for our costs as provided in Section 3.7. You will pay us an "Audit Fee" of $1,000 when we invoice you for an Audit Fee under Section 3.6. We may increase the Audit Fee on a Chain-wide basis to cover any increases in our audit costs, but not more than 5% per year on a cumulative basis. Our inspections are solely for the purposes of checking compliance with System Standards.

5. **Term**. The Term begins on the date that we insert in the preamble of this Agreement after we sign it (the "Effective Date") and expires at the end of the fifteenth (15th) Franchise Year. ~~However, each of us has the right to terminate this Agreement, without cause, and as a matter of right, on the 5th or 10th anniversary of the Opening Date, by giving prior written notice to the other, provided, that if you decide to exercise your right to terminate this Agreement, you must have paid all fees and charges due under this Agreement (and all related agreements, including any promissory notes or other incentive agreements, and any agreements relating to the use of a property management system or Reservation System) as of the date you provide notice of termination and as of the effective date of the termination. The written notice required by this Section 5 shall be given at least 6 months, but not more than twelve (12) months, before the date of the proposed termination. You will pay no Liquidated Damages if you comply with the terms of this Section and you perform the post termination obligations specified in this Agreement.~~ NEITHER PARTY HAS RENEWAL RIGHTS OR OPTIONS.

6. **Initial Fees**.

6.1 **Application and Initial Fees.** You must pay us a non-refundable Application Fee of **$1,000**. If your franchise is for a new construction or conversion Facility, you must pay us an Initial Fee. If you are a transferee of an existing Facility or are renewing an existing franchise, you will pay us a Relicense Fee in the amount of THIRTY FIVE THOUSAND DOLLARS ($35,000.00), as follows: (i) you will pay us SEVENTEEN THOUSAND FIVE HUNDRED DOLLARS ($17,500.00) when you sign this Agreement; (ii) you will execute and deliver the attached Initial Fee Note in the amount of SEVENTEEN THOUSAND FIVE HUNDRED DOLLARS ($17,500.00) pursuant to the terms of the initial fee note.

7. **Recurring Fees, Taxes and Interest**.

7.1 You will pay us certain "Recurring Fees" each month of the Term payable in U.S. dollars (or such other currency as we may direct if the Facility is outside the United States). The Royalty and System Assessment Fees described in Section 7.1 are payable ten days after the month in which they accrue, without billing or demand. Other Recurring Fees are payable at the times set forth in the System Standards. Recurring Fees include the following:

7.1.1 A "Royalty" equal to five and five-tenths percent (5.5%) of Gross Room Revenues of the Facility accruing during the calendar month, accrues from the earlier of the Opening Date or the date you identify the Facility as a Chain Facility or operate it under a Mark until the end of the Term.

7.1.2 A "System Assessment Fee" as set forth in Schedule C for advertising, marketing, training, the Reservation System and other related services and programs, accrues from the Opening Date until the end of the Term, including during reservation suspension periods. We will allocate at least 39% of the system assessment fee to advertising, marketing and related services and programs. We may use the System Assessment Fees we collect, in whole or in part, to reimburse our reasonable direct and indirect costs, overhead or other expenses of providing marketing, training and reservation services. You will also pay or reimburse us as described in Schedule C "Additional Fees" such as commissions we pay to travel and other agents for certain reservations at the Facility plus a reasonable service fee, fees levied to pay for reservations for the Facility originated or processed through the Global Distribution System, the Internet and other reservation systems and networks, and fees for additional services and programs. We may charge Facilities using the Reservation System outside the United States for reservation service using a different formula. We may change, modify, add or delete the System Assessment Fee and/or Additional Fees in accordance with Schedule C.

7.2 You will pay to us "Taxes" equal to any federal, state or local sales, gross receipts, use, value added, excise or similar taxes assessed against us on the Recurring Fees by the jurisdictions where the Facility is located, but not including any income tax, franchise or other tax for the privilege of doing business by us in your State. You will pay Taxes to us when due.

7.3 "Interest" is payable when you receive our invoice on any past due amount payable to us under this Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid.

7.4 If a transfer occurs, your transferee or you will pay us our then current Application Fee and a "Relicense Fee" equal to the Initial Fee we would then charge a new franchisee for the Facility.

7.5 We reserve the right to require you to pay all Recurring Fees and other fees and charges by electronic funds transfer (ACH) or credit card via our on-line reporting and payment tool, by direct debit of your bank account, or through such other technologies or other means as we may establish from time to time.

## 8. Indemnifications.

8.1 Independent of your obligation to procure and maintain insurance, you will indemnify, defend and hold the Indemnitees harmless, to the fullest extent permitted by law, from and against all Losses and Expenses, incurred by any Indemnitee for any investigation, claim, action, suit, demand, administrative or alternative dispute resolution proceeding, relating to or arising out of any transaction, occurrence or service at, or involving the operation of, the Facility, any payment you make or fail to make to us, any breach or violation of any contract or any law, regulation or ruling by, or any act, error or omission (active or passive) of, you, any party associated or affiliated with you or any of the owners, officers, directors, employees, agents or contractors of you or your affiliates, including when you are alleged or held to be the actual, apparent or ostensible agent of the Indemnitee, or the active or passive negligence of any Indemnitee is alleged or proven. You have no obligation to indemnify an Indemnitee for damages to compensate for property damage or personal injury if a court of competent jurisdiction makes a final decision not subject to further appeal that the

11

Indemnitee engaged in willful misconduct or intentionally caused such property damage or bodily injury. This exclusion from the obligation to indemnify shall not, however, apply if the property damage or bodily injury resulted from the use of reasonable force by the Indemnitee to protect persons or property.

8.2 You will respond promptly to any matter described in the preceding paragraph, and defend the Indemnitee. You will reimburse the Indemnitee for all costs of defending the matter, including reasonable attorneys' fees, incurred by the Indemnitee if your insurer or you do not assume defense of the Indemnitee promptly when requested, or separate counsel is appropriate, in our discretion, because of actual or potential conflicts of interest. We must approve any resolution or course of action in a matter that could directly or indirectly have any adverse effect on us or the Chain, or could serve as a precedent for other matters.

8.3 We will indemnify, defend and hold you harmless, to the fullest extent permitted by law, from and against all Losses and Expenses incurred by you in any action or claim arising from your proper use of the System alleging that your use of the System and any property we license to you is an infringement of a third party's rights to any trade secret, patent, copyright, trademark, service mark or trade name. You will promptly notify us in writing when you become aware of any alleged infringement or an action is filed against you. You will cooperate with our defense and resolution of the claim. We may resolve the matter by obtaining a license of the property for you at our expense, or by requiring that you discontinue using the infringing property or modify your use to avoid infringing the rights of others.

## 9. Your Assignments, Transfers and Conveyances.

9.1 **Transfer of the Facility.** This Agreement is personal to you (and your owners if you are an entity). We are relying on your experience, skill and financial resources (and that of your owners and the guarantors, if any) to sign this Agreement with you. You may finance the Facility and grant a lien, security interest or encumbrance on it without notice to us or our consent. If a Transfer is to occur, the transferee or you must comply with Section 9.3. Your Franchise is subject to termination when the Transfer occurs. The Franchise is not transferable to your transferee, who has no right or authorization to use the System and the Marks when you transfer ownership or possession of the Facility. The transferee may not operate the Facility under the System, and you are responsible for performing the post-termination obligations in Section 13. You and your owners may, only with our prior written consent and after you comply with Sections 9.3 and 9.6, assign, pledge, transfer, delegate or grant a security interest in all or any of your rights, benefits and obligations under this Agreement, as security or otherwise. Transactions involving Equity Interests that are not Equity Transfers do not require our consent and are not Transfers.

9.2 **Public Offerings and Registered Securities.** You may engage in the first registered public offering of your Equity Interests only after you pay us a public offering fee equal to $15,000. Your Equity Interests (or those of a person, parent, subsidiary, sibling or affiliate entity, directly or indirectly effectively controlling you), are freely transferable without the application of this Section if they are, on the Effective Date, or after the public offering fee is paid, they become, registered under the federal Securities Act of 1933, as amended, or a class of securities registered under the Securities Exchange Act of 1934, as amended, or listed for trading on a national securities exchange

12

or the automated quotation system of the National Association of Securities Dealers, Inc. (or any successor system), provided that any tender offer for at least a majority of your Equity Interests will be an Equity Transfer subject to Section 9.1.

9.3  **Conditions.** We may, to the extent permitted by applicable law, condition and withhold our consent to a Transfer when required under this Section 9 until the transferee and you meet certain conditions. If a Transfer is to occur, the transferee (or you, if an Equity Transfer is involved) must first complete and submit our Application, qualify to be a franchisee in our sole discretion, given the circumstances of the proposed Transfer, provide the same supporting documents as a new franchise applicant, pay the Application and Relicense Fees then in effect, sign the form of Franchise Agreement we then offer in conversion transactions and agree to renovate the Facility as if it were an existing facility converting to the System, as we reasonably determine. We will provide a Punch List of improvements we will require after the transferee's Application is submitted to us. We may, in our discretion, require the transferee to place funds in escrow, at its expense, in order to complete all necessary improvements. We may require structural changes to the Facility if it no longer meets System Standards for entering conversion facilities, or in the alternative, condition our approval of the Transfer on one or more of the following: limit the transferee's term to the balance of your Term, add a right to terminate without cause exercisable by either party after a period of time has elapsed, or allow you to terminate the Franchise when you sell the Facility and pay us Liquidated Damages under Section 12.1 at the same rate as you would pay if the termination occurred before the Opening Date. Such payment would be due and payable when you transfer possession of the Facility. We must also receive general releases from you and each of your owners, and payment of all amounts then owed to us and our affiliates by you, your owners, your affiliates, the transferee, its owners and affiliates, under this Agreement or otherwise. Our consent to the transaction will not be effective until these conditions are satisfied.

9.4  **Permitted Transferee Transactions.** You may transfer an Equity Interest or effect an Equity Transfer to a Permitted Transferee without obtaining our consent, renovating the Facility or paying a Relicense Fee or Application Fee. No Transfer will be deemed to occur. You also must not be in default and you must comply with the application and notice procedures specified in Sections 9.3 and 9.6. Each Permitted Transferee must first agree in writing to be bound by this Agreement, or at our option, execute the Franchise Agreement form then offered prospective franchisees. No transfer to a Permitted Transferee shall release a living transferor from liability under this Agreement or any guarantor under any Guaranty of this Agreement. You must comply with this Section if you transfer the Facility to a Permitted Transferee. A transfer resulting from a death may occur even if you are in default under this Agreement.

9.5  **Attempted Transfers.** Any transaction requiring our consent under this Section 9 in which our consent is not first obtained shall be void, as between you and us. You will continue to be liable for payment and performance of your obligations under this Agreement until we terminate this Agreement, all your financial obligations to us are paid and all System identification is removed from the Facility.

9.6  **Notice of Transfers.** You will give us at least 30 days prior written notice of any proposed Transfer or Permitted Transferee transaction. You will notify us when you sign a contract to Transfer the Facility and 10 days before you intend to close on the transfer of the Facility. We will

13

respond to all requests for our consent and notices of Permitted Transferee transactions within a reasonable time not to exceed 30 days. You will notify us in writing within 30 days after a change in ownership of 25% or more of your Equity Interests that are not publicly held or that is not an Equity Transfer, or a change in the ownership of the Facility if you are not its owner. You will provide us with lists of the names, addresses, and ownership percentages of your owner(s) at our request.

**10. Our Assignments.** We may assign, delegate or subcontract all or any part of our rights and duties under this Agreement, including by operation of law, without notice and without your consent. We will have no obligations to you after you are notified that our transferee has assumed our obligations under this Agreement except those that arose before we assign this Agreement.

**11. Default and Termination.**

**11.1 Default.** In addition to the matters identified in Sections 3.1 and 3.6, you will be in default under this Agreement if (a) you do not pay us when a payment is due under this Agreement or any other instrument, debt, agreement or account with us related to the Facility, (b) you do not perform any of your other obligations when this Agreement and the System Standards Manual require, or (c) if you otherwise breach this Agreement. If your default is not cured within 10 days after you receive written notice from us that you have not filed your monthly report, paid us any amount that is due or breached your obligations regarding Confidential Information, or within 30 days after you receive written notice from us of any other default (except as noted below), then we may terminate this Agreement by written notice to you under Section 11.2. We will not exercise our right to terminate if you have completely cured your default, or until any waiting period required by law has elapsed. In the case of default resulting from the Facility's failure to meet Quality Standards as measured by a quality assurance inspection, if you have acted diligently to cure the default but cannot do so, and the default does not relate to health or safety, we may, in our discretion, enter into an improvement agreement with you provided you request such an agreement within 30 days after receiving notice of the failing inspection. If we have entered into an improvement agreement, you must cure the default within the time period specified in the improvement agreement which shall not exceed ninety days after the failed inspection. We may terminate this Agreement and any or all rights granted hereunder if you do not perform that improvement agreement.

**11.2 Termination.** We may terminate this Agreement, effective when we send written notice to you or such later date as required by law or as stated in the default notice, when (1) you do not cure a default as provided in Section 11.1 or we are authorized to terminate under Schedule D due to your failure to perform your Improvement Obligation, (2) you discontinue operating the Facility as a "Days Inn", (3) you do or perform, directly or indirectly, any act or failure to act that in our reasonable judgment is or could be injurious or prejudicial to the goodwill associated with the Marks or the System, (4) you lose possession or the right to possession of the Facility, (5) you (or any guarantor) suffer the termination of another license or franchise agreement with us or one of our affiliates, (6) you intentionally maintain false books and records or submit a materially false report to us, (7) you (or any guarantor) generally fail to pay debts as they come due in the ordinary course of business, (8) you, any guarantor or any of your owners or agents misstated to us or omitted to tell us a material fact to obtain or maintain this Agreement with us, (9) you receive two or more notices of default from us in any one year period (whether or not you cure the defaults), (10) a violation of

14

Section 9 occurs, or a Transfer occurs before the relicensing process is completed, (11) you or any of your Equity Interest owners contest in court the ownership or right to franchise or license all or any part of the System or the validity of any of the Marks, (12) you, any guarantor or the Facility is subject to any voluntary or involuntary bankruptcy, liquidation, dissolution, receivership, assignment, reorganization, moratorium, composition or a similar action or proceeding that is not dismissed within 60 days after its filing, or (13) you maintain or operate the Facility in a manner that endangers the health or safety of the Facility's guests.

**11.3  Casualty and Condemnation.**

11.3.1   You will notify us promptly after the Facility suffers a Casualty that prevents you from operating in the normal course of business, with less than 75% of guest rooms available. You will give us information on the availability of guest rooms and the Facility's ability to honor advance reservations. You will tell us in writing within 60 days after the Casualty whether or not you will restore, rebuild and refurbish the Facility to conform to System Standards and its condition prior to the Casualty. This restoration will be completed within 180 days after the Casualty. You may decide within the 60 days after the Casualty, and if we do not hear from you, we will assume that you have decided, to terminate this Agreement, effective as of the date of your notice or 60 days after the Casualty, whichever comes first. If this Agreement so terminates, you will pay all amounts accrued prior to termination and follow the post-termination requirements in Section 13. You will not be obligated to pay Liquidated Damages if the Facility will no longer be used as an extended stay or transient lodging facility after the Casualty.

11.3.2   You will notify us in writing within 10 days after you receive notice of any proposed Condemnation of the Facility, and within 10 days after receiving notice of the Condemnation date. This Agreement will terminate on the date the Facility or a substantial portion is conveyed to or taken over by the condemning authority.

11.3.3   Any protected territory covenants will terminate when you give us notice of any proposed Condemnation or that you will not restore the Facility after a Casualty.

**11.4  Our Other Remedies.** We may suspend the Facility from the Reservation System for any default or failure to pay or perform under this Agreement or any other written agreement with us relating to the Facility, discontinue Reservation System referrals to the Facility for the duration of such suspension, and may divert previously made reservations to other Chain Facilities after giving notice of non-performance, non-payment or default. All System Assessment Fees accrue during the suspension period. We may deduct points under our quality assurance inspection program for your failure to comply with this Agreement or System Standards. Reservation service will be restored after you have fully cured any and all defaults and failures to pay and perform. We may charge you, and you must pay as a condition precedent to restoration of reservation service, a Service Interruption Fee specified on Schedule C to reimburse us for our costs associated with service suspension and restoration. We may omit the Facility from the Directory if you are in default on the date we must determine which Chain Facilities are included in the Directory. You recognize that any use of the System not in accord with this Agreement will cause us irreparable harm for which there is no adequate remedy at law, entitling us to injunctive and other relief. We may litigate to collect amounts due under this Agreement without first issuing a default or termination notice. Our

15

consent or approval may be withheld if needed while you are in default under this Agreement or may be conditioned on the cure of all your defaults.

11.5  **Your Remedies.**  If we fail to issue our approval or consent as and when required under this Agreement within a reasonable time of not less than 30 days after we receive all of the information we request, and you believe our refusal to approve or consent is wrongful, you may bring a legal action against us to compel us to issue our approval or consent to the obligation.  To the extent permitted by applicable law, this action shall be your exclusive remedy.  We shall not be responsible for direct, indirect, special, consequential or exemplary damages, including, but not limited to, lost profits or revenues.

## 12.  Liquidated Damages.

12.1  **Generally.**  If we terminate this Agreement under Section 11.2, or you terminate this Agreement (except under Section 11.3 or as a result of our default which we do not cure within a reasonable time after written notice), you will pay us within 30 days following the date of termination, as Liquidated Damages, an amount equal to the sum of accrued Royalties and System Assessment Fees during the immediately preceding 24 full calendar months (or the number of months remaining in the unexpired Term (the "Ending Period") at the date of termination, whichever is less).  If the Facility has been open for fewer than 24 months, then the amount shall be the average monthly Royalties and System Assessment Fees since the Opening Date multiplied by 24.  You will also pay any applicable Taxes assessed on such payment and Interest calculated under Section 7.3 accruing from 30 days after the date of termination until the amount is paid.  Before the Ending Period, Liquidated Damages will not be less than the product of $2,000 multiplied by the number of guest rooms you are then authorized to operate under Schedule B of this Agreement, as amended.  If we terminate this Agreement under Schedule D before the Opening Date, you will pay us within 10 days after you receive our notice of termination Liquidated Damages equal to one-half the amount payable for termination under Section 11.2.  Liquidated Damages are paid in place of our claims for lost future Recurring Fees under this Agreement.  Our right to receive other amounts due under this Agreement is not affected.

12.2  **Condemnation Payments.**  In the event a Condemnation is to occur, you will pay us the fees set forth in Section 7 for a period of one year after we receive the initial notice of condemnation described in Section 11.3.2, or until the Condemnation occurs, whichever is longer.  You will pay us Liquidated Damages equal to the average daily Royalties and System Assessment Fees for the one year period preceding the date of your condemnation notice to us multiplied by the number of days remaining in the one year notice period if the Condemnation is completed before the one year notice period expires.  This payment will be made within 30 days after Condemnation is completed (when you close the Facility or you deliver it to the condemning authority).  You will pay no Liquidated Damages if the Condemnation is completed after the one year notice period expires, but you must pay the fees set forth in Section 7 when due until Condemnation is completed.

## 13.  Your Duties At and After Termination.  When a Termination occurs for any reason whatsoever:

13.1  **System Usage Ceases.**  You will immediately stop using the System to operate and identify

DAY
235104 Q1/09

the Facility. You will remove all signage and other items bearing any Marks and follow the other steps detailed in the System Standards Manual for changing the identification of the Facility. You will promptly paint over or remove the Facility's distinctive System trade dress, color schemes and architectural features. You shall not identify the Facility with a confusingly similar mark or name, or use the same colors as the System trade dress for signage, printed materials and painted surfaces. You will cease all Internet marketing using any Marks to identify the Facility.

13.2 **Other Duties.** You will pay all amounts owed to us under this Agreement within 10 days after termination. You will owe us Recurring Fees on Gross Room Revenues accruing while the Facility is identified as a "Days Inn", including System Assessment Fees for so long as the Facility receives service from the Reservation System. We may immediately remove the Facility from the Reservation System and divert reservations as authorized in Section 11.4. We may notify third parties that the Facility is no longer associated with the Chain. We may also, to the extent permitted by applicable law, and without prior notice enter the Facility and any other parcels, remove software (including archive and back-up copies) for accessing the Reservation System, all copies of the System Standards Manual, Confidential Information, equipment and all other personal property of ours, and paint over or remove and purchase for $10.00, all or part of any interior or exterior Mark-bearing signage (or signage face plates), including billboards, whether or not located at the Facility, that you have not removed or obliterated within five days after termination. You will promptly pay or reimburse us for our cost of removing such items, net of the $10.00 purchase price for signage. We will exercise reasonable care in removing or painting over signage. We will have no obligation or liability to restore the Facility to its condition prior to removing the signage. We shall have the right, but not the obligation, to purchase some or all of the Facility's Mark-bearing FF&E and supplies at the lower of their cost or net book value, with the right to set off their aggregate purchase price against any sums then owed us by you.

13.3 **Advance Reservations.** The Facility will honor any advance reservations, including group bookings, made for the Facility prior to termination at the rates and on the terms established when the reservations are made and pay when due all related travel agent commissions.

13.4 **Survival of Certain Provisions.** Sections 3.6 (as to audits, for 2 years after termination), 3.11, 7 (as to amounts accruing through termination), 8, 11.4, 12, 13, 15, 16 and 17 survive termination of this Agreement.

14. **Your Representations and Warranties.** You expressly represent and warrant to us as follows:

14.1 **Quiet Enjoyment and Financing.** You own, or will own prior to commencing improvement, or lease, the Location and the Facility. You will be entitled to possession of the Location and the Facility during the entire Term without restrictions that would interfere with your performance under this Agreement, subject to the reasonable requirements of any financing secured by the Facility. You have, when you sign this Agreement, and will maintain during the Term, adequate financial liquidity and financial resources to perform your obligations under this Agreement.

14.2 **This Transaction.** You and the persons signing this Agreement for you have full power and authority and have been duly authorized, to enter into and perform or cause performance of your obligations under this Agreement. You have obtained all necessary approvals of your owners,

17

Board of Directors and lenders. No executory franchise, license or affiliation agreement for the Facility exists other than this Agreement. Your execution, delivery and performance of this Agreement will not violate, create a default under or breach of any charter, bylaws, agreement or other contract, license, permit, indebtedness, certificate, order, decree or security instrument to which you or any of your principal owners is a party or is subject or to which the Facility is subject. Neither you nor the Facility is the subject of any current or pending merger, sale, dissolution, receivership, bankruptcy, foreclosure, reorganization, insolvency, or similar action or proceeding on the date you execute this Agreement and was not within the three years preceding such date, except as disclosed in the Application. You will submit to us the documents about the Facility, you, your owners and your finances that we request in the Franchise Application (or after our review of your initial submissions) before or within 30 days after you sign this Agreement. To the best of your knowledge, neither you, your owners (if you are an entity), your officers, directors or employees or anyone else affiliated or associated with you, whether by common ownership, by contract, or otherwise, has been designated as, or is, a terrorist, a "Specially Designated National" or a "Blocked Person" under U.S. Executive Order 13224, in lists published by the U.S. Department of the Treasury's Office of Foreign Assets Control, or otherwise.

**14.3 No Misrepresentations or Implied Covenants.** All written information you submit to us about the Facility, you, your owners, any guarantor, or the finances of any such person or entity, was or will be at the time delivered and when you sign this Agreement, true, accurate and complete, and such information contains no misrepresentation of a material fact, and does not omit any material fact necessary to make the information disclosed not misleading under the circumstances. There are no express or implied covenants or warranties, oral or written, between we and you except as expressly stated in this Agreement.

### 15. Proprietary Rights.

**15.1 Marks and System.** You will not acquire any interest in or right to use the System or Marks except under this Agreement. You will not apply for governmental registration of the Marks, or use the Marks or our corporate name in your legal name, but you may use a Mark for an assumed business or trade name filing.

**15.2 Inurements.** All present and future distinguishing characteristics, improvements and additions to or associated with the System by us, you or others, and all present and future service marks, trademarks, copyrights, service mark and trademark registrations used and to be used as part of the System, and the associated good will, shall be our property and will inure to our benefit. No good will shall attach to any secondary designator that you use.

**15.3 Other Locations and Systems.** We and our affiliates each reserve the right to own, in whole or in part, and manage, operate, use, lease, finance, sublease, franchise, license (as franchisor or franchisee), provide services to or joint venture (i) distinctive separate lodging or food and beverage marks and other intellectual property which are not part of the System, and to enter into separate agreements with you or others (for separate charges) for use of any such other marks or proprietary rights, (ii) other lodging, food and beverage facilities, or businesses, under the System utilizing modified System Standards, and (iii) a Chain Facility at or for any location outside the Protected Territory. You acknowledge that we are affiliated with or in the future may become affiliated with

18

other lodging providers or franchise systems that operate under names or marks other than the Marks. We and our affiliates may use or benefit from common hardware, software, communications equipment and services and administrative systems for reservations, franchise application procedures or committees, marketing and advertising programs, personnel, central purchasing, approved supplier lists, franchise sales personnel (or independent franchise sales representatives), etc.

15.4   **Confidential Information.**   You will take all appropriate actions to preserve the confidentiality of all Confidential Information.   Access to Confidential Information should be limited to persons who need the Confidential Information to perform their jobs and are subject to your general policy on maintaining confidentiality as a condition of employment or who have first signed a confidentiality agreement.   You will not permit copying of Confidential Information (including, as to computer software, any translation, decompiling, decoding, modification or other alteration of the source code of such software).   You will use Confidential Information only for the Facility and to perform under this Agreement. Upon termination (or earlier, as we may request), you shall return to us all originals and copies of the System Standards Manual, policy statements and Confidential Information "fixed in any tangible medium of expression," within the meaning of the U.S. Copyright Act, as amended.   Your obligations under this subsection commence when you sign this Agreement and continue for trade secrets (including computer software we license to you) as long as they remain secret and for other Confidential Information, for as long as we continue to use the information in confidence, even if edited or revised, plus three years.   We will respond promptly and in good faith to your inquiry about continued protection of any Confidential Information.

15.5   **Litigation.**   You will promptly notify us of (i) any adverse or infringing uses of the Marks (or names or symbols confusingly similar), Confidential Information or other System intellectual property, and (ii) or any threatened or pending litigation related to the System against (or naming as a party) you or us of which you become aware.   We alone handle disputes with third parties concerning use of all or any part of the System.   You will cooperate with our efforts to resolve these disputes.   We need not initiate suit against imitators or infringers who do not have a material adverse impact on the Facility, or any other suit or proceeding to enforce or protect the System in a matter we do not believe to be material.

15.6   **The Internet.**   You may use the Internet to market the Facility subject to this Agreement and System Standards.   You shall not use, license or register any domain name, universal resource locator, or other means of identifying you or the Facility that uses a mark or any image or language confusingly similar to a Mark except as otherwise expressly permitted by the System Standards Manual or with our written consent.   You will assign to us any such identification at our request without compensation or consideration.   You may not purchase any key words for paid search or other electronic marketing that utilizes any Mark without our written consent. You must make available through the Reservation System and the Chain website all rates you offer to the general public via Internet marketing arrangements with third parties.   You agree to participate in our Central Commission Payment Program and to reimburse us for any fees or commissions we pay to intermediaries and retailers on your behalf or for Chain Facilities to participate in their programs.   You must participate in the Chain's best available rate on the Internet guarantee or successor program.   The content you provide us or use yourself for any Internet marketing must be true, correct and accurate, and you will notify us in writing promptly

when any correction to the content becomes necessary.   You shall promptly modify at our request the content of any Internet marketing material for the Facility you use, authorize, display or provide to conform to System Standards.  Any use of the Marks and other elements of the System on the Internet inures to our benefit under Section 15.2.

16. Relationship of Parties.

16.1 **Independence.**  You are an independent contractor.  You are not our legal representative or agent, and you have no power to obligate us for any purpose whatsoever.  We and you have a business relationship based entirely on and circumscribed by this Agreement.  No partnership, joint venture, agency, fiduciary or employment relationship is intended or created by reason of this Agreement.  You will exercise full and complete control over and have full responsibility for your contracts, daily operations, labor relations, employment practices and policies, including, but not limited to, the recruitment, selection, hiring, disciplining, firing, compensation, work rules and schedules of your employees.

16.2 **Joint Status.**  If you comprise two or more persons or entities (notwithstanding any agreement, arrangement or understanding between or among such persons or entities) the rights, privileges and benefits of this Agreement may only be exercised and enjoyed jointly.   The liabilities and responsibilities under this Agreement will be the joint and several obligations of all such persons or entities.

17. Legal Matters.

17.1 **Partial Invalidity.**  If all or any part of a provision of this Agreement violates the law of your state (if it applies), such provision or part will not be given effect.  If all or any part of a provision of this Agreement is declared invalid or unenforceable, for any reason, or is not given effect by reason of the prior sentence, the remainder of the Agreement shall not be affected. However, if in our judgment the invalidity or ineffectiveness of such provision or part substantially impairs the value of this Agreement to us, then we may at any time terminate this Agreement by written notice to you without penalty or compensation owed by either party.

17.2 **Waivers, Modifications and Approvals.**  If we allow you to deviate from this Agreement, we may insist on strict compliance at any time after written notice.  Our silence or inaction will not be or establish a waiver, consent, course of dealing, implied modification or estoppel.  All modifications, waivers, approvals and consents of or under this Agreement by us must be in writing and signed by our authorized representative to be effective.  We may unilaterally revise Schedule C when this Agreement so permits.

17.3 **Notices.**  Notices will be effective if in writing and delivered (i) by facsimile transmission with confirmation original sent by first class mail, postage prepaid, (ii) by delivery service, with proof of delivery, or (iii) by first class, prepaid certified or registered mail, return receipt requested, to the appropriate party (x) at its address stated below or as it may otherwise designate by notice, or (y) by such other means as to result in actual or constructive receipt by the person or office holder designated below.   The parties may also communicate via electronic mail between addresses to be established by notice. You consent to receive electronic mail from us.

Notices shall be deemed given on the date delivered or date of attempted delivery, if refused.

Days Inns Worldwide, Inc.:
Our address: 22 Sylvan Way, P.O. Box 278, Parsippany, New Jersey 07054-0278
Attention: Vice President-Contracts Administration; Fax No. (973) 753-8311

Your name: OCALA INN KASH, INC.,
Your address: 1447 NE Expressway, Atlanta, GA 30329,
Attention: Harish Pattni; Your fax No.: _____.

**17.4 Remedies.** Remedies specified in this Agreement are cumulative and do not exclude any remedies available at law or in equity. The non-prevailing party will pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this Agreement or collect amounts owed under this Agreement.

**17.5 Miscellaneous.** This Agreement is exclusively for the benefit of the parties. There are no third party beneficiaries. No agreement between us and anyone else is for your benefit. The section headings in this Agreement are for convenience of reference only.

**17.6 Choice of Law; Venue; Dispute Resolution.**

**17.6.1** This Agreement will be governed by and construed under the laws of the State of New Jersey, except for its conflicts of law principles. The New Jersey Franchise Practices Act will not apply to any Facility located outside the State of New Jersey.

**17.6.2** The parties shall attempt in good faith to resolve any dispute concerning this Agreement or the parties' relationship promptly through negotiation between authorized representatives. If these efforts are not successful, either party may attempt to resolve the dispute through non-binding mediation. Either party may request mediation through the National Franchise Mediation Program, using the procedures employed by the CPR Institute for Dispute Resolution, Inc. We will provide you with the contact address for that organization. The mediation will be conducted by a mutually acceptable and neutral third party. If the parties cannot resolve the dispute through negotiation or mediation, or choose not to negotiate or mediate, either party may pursue litigation.

**17.6.3** You consent and waive your objection to the non-exclusive personal jurisdiction of and venue in the New Jersey state courts situated in Morris County, New Jersey and the United States District Court for the District of New Jersey for all cases and controversies under this Agreement or between we and you.

**17.6.4 WAIVER OF JURY TRIAL. THE PARTIES WAIVE THE RIGHT TO A JURY TRIAL IN ANY ACTION RELATED TO THIS AGREEMENT OR THE RELATIONSHIP BETWEEN THE FRANCHISOR, THE FRANCHISEE, ANY GUARANTOR, AND THEIR RESPECTIVE SUCCESSORS AND ASSIGNS.**

**17.6.5** Any judicial proceeding directly or indirectly arising from or relating to this Agreement

21

shall be considered unique as to its facts and may not be brought as a class action. You and each of the owners of your Equity Interests waive any right to proceed against us by way of class action.

**17.7 Special Acknowledgments.** You acknowledge the following statements to be true and correct as of the date you sign this Agreement, and to be binding on you.

**17.7.1** You received our Franchise Disclosure Document ("FDD") for prospective franchisees at least 14 days before signing this Agreement or paying any fee to us.

**17.7.2** Neither we nor any person acting on our behalf has made any oral or written representation or promise to you on which you are relying to enter into this Agreement that is not written in this Agreement or in the FDD. You release any claim against us or our agents based on any oral or written representation or promise not stated in this Agreement or in the FDD.

**17.7.3** This Agreement, together with the exhibits and schedules attached, is the entire agreement superseding all previous oral and written representations, agreements and understandings of the parties about the Facility and the Franchise.

**17.7.4** You acknowledge that no salesperson has made any promise or provided any information to you about projected sales, revenues, income, profits or expenses from the Facility except as stated in Item 19 of the FDD or in a writing that is attached to this Agreement.

**17.7.5** You understand that the franchise relationship is an arms' length, commercial business relationship in which each party acts in its own interest.

**17.8 Force Majeure.** Neither you nor we shall be liable for loss or damage or deemed to be in breach of this Agreement if the failure to perform obligations results from: (a) windstorms, rains, floods, earthquakes, typhoons, mudslides or other similar natural causes; (b) fires, strikes, embargoes, war, acts of terrorism or riot; (c) legal restrictions that prohibit or prevent performance; or (d) any other similar event or cause beyond the control of the party affected. Any delay resulting from any of such causes shall extend performance accordingly or excuse performance, in whole or in part, as may be reasonable, so long as a remedy is continuously and diligently sought by the affected party, except that no such cause shall excuse payment of amounts owed at the time of such occurrence or payment of Recurring Fees and other amounts due to us subsequent to such occurrence other than a governmental or judicial order prohibiting such payments.

**17.9 Protected Territory.** We will not own, operate, lease, manage, or license any party but you to operate a Chain Facility in the "Protected Territory", defined below, while this Agreement is in effect. We may own, operate, lease, manage, franchise or license anyone to operate any Chain Facility located anywhere outside the Protected Territory without any restriction or obligation to you. We may grant Protected Territories for other Chain Facilities that overlap your Protected Territory. While this Agreement is in effect, neither you nor your officers, directors, general partners or owners of 25% or more of your Equity Interests, may own, operate, lease, manage or franchise (i) any guest lodging facility other than the Facility in the Protected Territory unless we or

our affiliate franchises the facility, and/or (ii) any time share resort, vacation club, residence club, fractional ownership residence, condominium/apartment leasing or rental business, or the like, for any facility or business that shares directly or indirectly, common areas, amenities, recreation facilities, services, supplies or support activities with the Facility. You will use any information obtained through the Reservation System to refer guests, directly or indirectly, only to Chain Facilities. This Section does not apply to any Chain Facility located in the Protected Territory on the Effective Date, which we may renew, relicense, allow to expand, or replace with a replacement Facility located within the same trading area having not more than 120% of the guest rooms of the replaced Chain Facility if its franchise with us terminates or is not renewed. The Protected Territory fairly represents the Facility's trading area, and you acknowledge that. There are no express or implied territorial rights or agreements between the parties except as stated in this Section. You irrevocably waive any right to seek or obtain the benefits of any policy we now follow or may in the future follow to notify you about proposed Chain Facilities in the general area of the Facility, solicit information about the effect of the proposed Chain Facility on the revenue or occupancy of the Facility or decide whether to add the proposed Chain Facility to the Chain based on the potential effect of the proposed Chain Facility on the Facility or its performance. The covenants in this Section are mutually dependent; if you breach this Section, your Protected Territory will be the Location only. The Protected Territory means **the area one half mile on either side of I-75, commencing at and including the intersection of I-75 and SW College Road (SR 200) (Lat 29.15039N and Long 82.18495W) and proceeding in a northerly direction along the centerline of I-75 up to but not including the intersection of I-75 and NW Blichton Road (SR27) (Lat 29.20721N and Long. 82.18484W).**

18.     **Special Stipulations.** The following special stipulations apply to this Agreement and supersede any inconsistent or conflicting provisions. You acknowledge that these stipulations and any changes made to the body of the Agreement at your request or in response to other changes to our form agreement are the product of arms' length negotiations with us and represent mutually agreed, material inducements to enter into this Agreement, beneficial to you and supported by adequate consideration from both parties. These are personal to you and are not transferable or assignable except to a Permitted Transferee.

18.1    **Termination Right.** Each of us has the right to terminate this Agreement, without cause, and as a matter of right, on Seventh (7th) Anniversary, by giving prior written notice to the other, provided, that if you decide to exercise your right to terminate this Agreement, you must have paid all fees and charges due under this Agreement (and all related agreements, including any promissory notes, or other incentive agreements, and any agreements relating to the use of a property management system or Reservation System) as of the date you provide notice of termination and as of the effective date of the termination. The written notice required by this Section shall be given at least 6 months, but not more than twelve (12) months, before the date of the proposed termination. You will pay no Liquidated Damages if you comply with the terms of this Section and you perform the post termination obligations specified in this Agreement.

18.2.   **Combined Fees.** Notwithstanding Section 7.1, you will pay a Combined Fee consisting of the Royalty and System Assessment Fee at the rates set forth in this Section. The Combined Fee excludes commissions and related service charges, guest complaint assessments, Internet and GDS Fees, the Loyalty Program Charge and other similar fees and charges described on Schedule C

23

which must be paid as stated in this Agreement.  The discount from the Royalty and System Assessment Fees set forth in Section 7 that the Combined Fee represents (the "Discount Amount") shall first be applied to any applicable reservation fee and any remaining Discount Amount shall be applied evenly between the Royalty and System Assessment Fee.

18.2.1  The Combined Fee shall be eight and three tenths percent (8.3%) of Gross Room Revenues accruing during the first and second Franchise Years; and

18.2.2  The Royalty and System Assessment Fees shall be computed and paid at the rates specified in Section 7.1 on Gross Room Revenues accruing after the second Franchise Year.

18.2.3   The rate changes set forth in this Section automatically terminate without notice or opportunity to cure, and the Royalty and System Assessment Fees shall reset to the rates specified in Section 7, if and as of the date (i) a Termination occurs, or we send you a notice of default and you fail to cure the default within the time specified, if any, in the notice of default, or (ii) after you satisfy the Improvement Obligation, the Facility receives a quality assurance inspection score of more than 200 (or its then equivalent) and the Facility fails to achieve a quality assurance inspection score of less than 200  in a re-inspection to be performed not less than 60 days after the initial inspection.

IN WITNESS WHEREOF, the parties have executed this Agreement on this ___ day of _____, 200__ and agree to be bound by the terms and conditions of this Agreement as of the Effective Date.

**WE:**
DAYS INNS WORLDWIDE, INC.

By: _____
        (Vice) President


**YOU**, as franchisee:
OCALA INN KASH, INC.

By: _____
        (Vice) President


25

# APPENDIX A

## DEFINITIONS

<u>Agreement</u> means this Franchise Agreement.

<u>Application Fee</u> means the fee you pay when you submit your Application under Section 6.

<u>Approved Plans</u> means your plans and specifications for constructing or improving the Facility initially or after opening, as approved by us under Schedule D.

<u>Casualty</u> means destruction or significant damage to the Facility by act of God or other event beyond your reasonable anticipation and control.

<u>Chain</u> means the network of Chain Facilities.

<u>Chain Facility</u> means a lodging facility we own, lease, manage, operate or authorize another party to operate using the System and identified by the Marks.

<u>Condemnation</u> means the taking of the Facility for public use by a government or public agency legally authorized to do so, permanently or temporarily, or the taking of such a substantial portion of the Facility that continued operation in accordance with the System Standards, or with adequate parking facilities, is commercially impractical, or if the Facility or a substantial portion is sold to the condemning authority in lieu of condemnation.

<u>Conference Fee</u> means the fee we charge for your attendance at a conference for Chain Facilities and their franchisees when and if held.

<u>Confidential Information</u> means any trade secrets we own or protect and other proprietary information not generally known to the lodging industry including confidential portions of the System Standards Manual or information we otherwise impart to you and your representatives in confidence. Confidential Information includes the "Rules of Operation Manual" and all other System Standards manuals and documentation, including those on the subjects of employee relations, finance and administration, field operation, purchasing and marketing, the Reservation System software and applications software.

<u>Design Standards</u> mean standards specified in the System Standards Manual from time to time for design, construction, renovation, modification and improvement of new or existing Chain Facilities, including all aspects of facility design, number of rooms, rooms mix and configuration, construction materials, workmanship, finishes, electrical, mechanical, structural, plumbing, HVAC, utilities, access, life safety, parking, systems, landscaping, amenities, interior design and decor and the like for a Chain Facility.

26

Directory means any general purpose directory we issue, whether printed, web-based, or issued in another medium, which may list the names and addresses of Chain Facilities in the United States, and at our discretion, other System facilities located outside the United States, Canada and Mexico.

Effective Date means the date we insert in the Preamble of this Agreement after we sign it.

Equity Interests shall include, without limitation, all forms of equity ownership of you, including voting stock interests, partnership interests, limited liability company membership or ownership interests, joint and tenancy interests, the proprietorship interest, trust beneficiary interests and all options, warrants, and instruments convertible into such other equity interests.

Equity Transfer means any transaction in which your owners or you sell, assign, transfer, convey, pledge, or suffer or permit the transfer or assignment of, any percentage of your Equity Interests that will result in a change in control of you to persons other than those owners disclosed on Schedule B, as in effect prior to the transaction. Unless there are contractual modifications to your owners' rights, an Equity Transfer of a corporation or limited liability company occurs when either majority voting rights or beneficial ownership of more than 50% of the Equity Interests changes. An Equity Transfer of a partnership occurs when a newly admitted partner will be the managing, sole or controlling general partner, directly or indirectly through a change in control of the Equity Interests of an entity general partner. An Equity Transfer of a trust occurs when either a new trustee with sole investment power is substituted for an existing trustee, or a majority of the beneficiaries convey their beneficial interests to persons other than the beneficiaries existing on the Effective Date. An Equity Transfer does not occur when the Equity Interest ownership among the owners of Equity Interests on the Effective Date changes without the admission of new Equity Interest owners. An Equity Transfer occurs when you merge, consolidate or issue additional Equity Interests in a transaction which would have the effect of diluting the voting rights or beneficial ownership of your owners' combined Equity Interests in the surviving entity to less than a majority.

Facility means the Location, together with all improvements, buildings, common areas, structures, appurtenances, facilities, entry/exit rights, parking, amenities, FF&E and related rights, privileges and properties existing or to be constructed at the Location on or after the Effective Date.

FF&E means furniture, fixtures and equipment.

FF&E Standards means standards specified in the System Standards Manual for FF&E and supplies to be utilized in a Chain Facility.

Food and Beverage means any restaurant, catering, bar/lounge, entertainment, room service, retail food or beverage operation, continental breakfast, food or beverage concessions and similar services offered at the Facility.

Franchise means the non-exclusive franchise to operate the type of Chain Facility described in Schedule B only at the Location, using the System and the Mark we designate in Section 1.

DAY
235104 Q1/09

Franchise Year means:

(i) *If the Opening Date occurs on the first day of a month*: the period beginning on the Opening Date and ending on the day immediately preceding the first anniversary of the Opening Date, and each subsequent one year period; or

(ii) *If the Opening Date does not occur on the first day of a month*: the period beginning on the Opening Date and ending on the first anniversary of the last day of the month in which the Opening Date occurs, and each subsequent one year period.

Gross Room Revenues means gross revenues attributable to or payable for rentals of guest rooms at the Facility, including all credit transactions, whether or not collected, but excluding separate charges to guests for Food and Beverage, room service, telephone charges, key forfeitures and entertainment; vending machine receipts; and federal, state and local sales, occupancy and use taxes.

Improvement Obligation means your obligation to either (i) renovate and upgrade the Facility, or (ii) construct and complete the Facility, in accordance with the Approved Plans and System Standards, as described in Schedule D.

Indemnitees means us, our direct and indirect parent, subsidiary and sister corporations, and the respective officers, directors, shareholders, employees, agents and contractors, and the successors, assigns, personal representatives, heirs and legatees of all such persons or entities.

Initial Entry Charge means the fee you are to pay for gaining access to the Reservation System when you sign this Agreement and on the first and second anniversaries of the Effective Date under Section 6.2.

Initial Fee means the fee you are to pay for signing this Agreement as stated in Section 6, if the Agreement is for a new construction or conversion franchise.

Liquidated Damages means the amounts payable under Section 12, set by the parties because actual damages will be difficult or impossible to ascertain on the Effective Date and the amount is a reasonable pre-estimate of the damages that will be incurred and is not a penalty.

Location means the parcel of land situated at 3620 W. Silversprings Blvd., Ocala, FL 34475, as more fully described in Schedule A.

Losses and Expenses means (x) all payments or obligations to make payments either (i) to or for third party claimants by any and all Indemnitees, including guest refunds, or (ii) incurred by any and all Indemnitees to investigate, respond to or defend a matter, including without limitation investigation and trial charges, costs and expenses, attorneys' fees, experts' fees, court costs, settlement amounts, judgments and costs of collection; and (y) the "Returned Check Fee" we then specify in the System Standards Manual ($20.00 on the Effective Date) if the drawee dishonors any check that you submit to us.

Maintenance Standards means the standards specified from time to time in the System Standards

28

Manual for repair, refurbishment and replacement of FF&E, finishes, decor, and other capital items and design materials in Chain Facilities.

Marks means, collectively (i) the service marks associated with the System published in the System Standards Manual from time to time including, but not limited to, the name, design and logo for "Days Inn" and other marks (U.S. Reg. Nos.: 1,160,430; 1,160,431; 1,420,612; 1,469,518; and 1,003,834) and (ii) trademarks, trade names, trade dress, logos and derivations, and associated good will and related intellectual property interests.

Marks Standards means standards specified in the System Standards Manual for interior and exterior Mark-bearing signage, advertising materials, china, linens, utensils, glassware, uniforms, stationery, supplies, and other items, and the use of such items at the Facility or elsewhere.

Minor Renovation means the repairs, refurbishing, repainting, and other redecorating of the interior, exterior, guest rooms, public areas and grounds of the Facility and replacements of FF&E we may require you to perform under Section 3.14.

Minor Renovation Ceiling Amount means $3,000.00 per guest room.

Minor Renovation Notice means the written notice from us to you specifying the Minor Renovation to be performed and the dates for commencement and completion given under Section 3.14.

Opening Date has the meaning specified in Schedule D.

Operations Standards means standards specified in the System Standards Manual for cleanliness, housekeeping, general maintenance, repairs, concession types, food and beverage service, vending machines, uniforms, staffing, employee training, guest services, guest comfort and other aspects of lodging operations.

Permitted Transferee means (i) any entity, natural person(s) or trust receiving from the personal representative of an owner any or all of the owner's Equity Interests upon the death of the owner, if no consideration is paid by the transferee or (ii) the spouse or adult issue of the transferor, if the Equity Interest transfer is accomplished without consideration or payment, or (iii) any natural person or trust receiving an Equity Interest if the transfer is from a guardian or conservator appointed for an incapacitated or incompetent transferor.

Prototype Plans has the meaning specified in Schedule D for New Construction Facilities.

Punch List means the list of upgrades and improvements attached as part of Schedule D, which you are required to complete under Section 3.1 and Schedule D.

Recurring Fees means fees paid to us on a periodic basis, including without limitation, Royalties, System Assessment Fees, and other reservation fees and charges as stated in Section 7.

Relicense Fee means the fee your transferee pays to us when a Transfer occurs or the fee you pay to us if you are renewing an existing franchise.

Reinspection Fee means the fee you must pay to us under Section 3.7 if you do not complete your Punch List on time, fail any inspection or do not cooperate with our inspector or inspection System Standards.

Reservation System or "Central Reservation System" means the system for offering to interested parties, booking and communicating guest room reservations for Chain Facilities described in Section 4.2.

Rooms Addition Fee means the fee we charge you for adding guest rooms to the Facility.

Royalty means the monthly fee you pay to us for use of the System under Section 7(a). "Royalties" means the aggregate of all amounts owed as a Royalty.

Service Interruption Fee means the fee you pay us when we suspend Central Reservation System service because you default under this Agreement, in the amount specified in Schedule C.

System means the comprehensive system for providing guest lodging facility services under the Marks as we specify which at present includes only the following: (a) the Marks; (b) other intellectual property, including Confidential Information, System Standards Manual and know-how; (c) marketing, advertising, publicity and other promotional materials and programs; (d) System Standards; (e) training programs and materials; (f) quality assurance inspection and scoring programs; and (g) the Reservation System.

System Assessment Fees means the fees you pay to us under Section 7 and Schedule C for marketing, advertising, training, the Reservation System and other services.

System Standards means the standards for participating in the System published in the System Standards Manual, including but not limited to Design Standards, FF&E Standards, Marks Standards, Operations Standards, Technology Standards and Maintenance Standards and any other standards, policies, rules and procedures we promulgate about System operation and usage.

System Standards Manual means the Operating Policies Manual, the Planning and Design Standards Manual and any other manual we publish or distribute specifying the System Standards.

Taxes means the amounts payable under Section 7.2 of this Agreement.

Technology Standards means standards specified in the System Standards Manual for local and long distance telephone communications services, telephone, telecopy and other communications systems, point of sale terminals and computer hardware and software for various applications, including, but not limited to, front desk, rooms management, records maintenance, marketing data, accounting, budgeting and interfaces with the Reservation System to be maintained at the Chain Facilities.

Term means the period of time during which this Agreement shall be in effect, as stated in Section 5.

Termination means a termination of this Agreement.

DAY
235104 Q1/09

Transfer means (1) an Equity Transfer, (2) you assign, pledge, transfer, delegate or grant a security interest in all or any of your rights, benefits and obligations under this Agreement, as security or otherwise without our consent as specified in Section 9, (3) you assign (other than as collateral security for financing the Facility) your leasehold interest in (if any), lease or sublease all or any part of the Facility to any third party, (4) you engage in the sale, conveyance, transfer, or donation of your right, title and interest in and to the Facility, (5) your lender or secured party forecloses on or takes possession of your interest in the Facility, directly or indirectly, or (6) a receiver or trustee is appointed for the Facility or your assets, including the Facility. A Transfer does not occur when you pledge or encumber the Facility to finance its acquisition or improvement, you refinance it, or you engage in a Permitted Transferee transaction.

"You" and "Your" means and refers to the party named as franchisee identified in the first paragraph of this Agreement and its Permitted Transferees.

"We", "Our" and "Us" means and refers to Days Inns Worldwide, Inc., a Delaware corporation, its successors and assigns.

## SCHEDULE A

(Legal Description of Facility)

DAY
235104 Q1/09

09-28-1994 05:12PM   FROM  PATTNI LODGING              TO            12014289677   P.06

## EXHIBIT "A"

A portion of the Southwest 1/4 of SECTION 14, TOWNSHIP 15 SOUTH, RANGE 21 EAST, Marion County, Florida, being more particularly described as follows:

Commence at the Northwest corner of the Southwest 1/4 of SECTION 14, TOWNSHIP 15 SOUTH, RANGE 21 EAST, Marion County, Florida; thence South 89°58'45" East along the North boundary of said Southwest 1/4, a distance of 191.82 feet; thence South 00°04'44" West along the centerline of U. S. Interstate Highway No. I-75, a distance of 16.94 feet to a point on the centerline of State Road No. 40; thence North 89°49'05" East along said centerline of State Road No. 40, a distance of 600.00 feet; thence South 00°10'55" East, a distance of 33.00 feet to a point on the South right-of-way line of said State Road No. 40; thence along said South right-of-way line North 89°49'05" East 20.00 feet to the Point of Beginning; from the Point of Beginning thus described continue along said South right-of-way line North 89°49'05" East 459.39 feet to a point for corner; thence South 00°10'05" East 618.33 feet to a point for corner; thence North 89°58'39" West 831.65 feet to a point on the East limited access right-of-way line of U. S. Interstate Highway No. I-75; thence along said limited access right-of-way line North 11°51'39" East 118.13 feet to a point; thence North 00°04'44" East 244.61 feet to a point for corner; thence South 89°58'39" East 348.00 feet to a point for corner; thence North 00°10'55" West 260.00 feet to the Point of Beginning.

LESS AND EXCEPT a portion of said land condemned and taken by the Florida State Highway Department for purposes of road right-of-way on State Road No. 40, said taking evidenced by Docket No. 14560, DONE AND ORDERED July 5, 1966 wherein the parcel is referred to as SRD 117.1, more particularly described as follows:

Commence at the Northwest corner of the Southwest 1/4 of SECTION 14, TOWNSHIP 15 SOUTH, RANGE 21 EAST, Marion County, Florida; thence South 89°58'45" East along the North boundary of said Southwest 1/4, a distance of 191.82 feet; thence South 00°04'44" West along the centerline of U. S. Interstate Highway No. I-75, a distance of 16.94 feet to a point on the centerline of State Road No. 40; thence North 89°49'05" East along said centerline of State Road No. 40, a distance of 600.00 feet; thence South 00°10'55" East, a distance of 33.00 feet to a point on the South right-of-way line of said State Road No. 40; thence along said South right-of-way line North 89°49'05" East 20.00 feet to the Point of Beginning; from the Point of Beginning thus described continue along said South right-of-way line North 89°49'05" East 459.39 feet to a point for corner; thence South 00°10'15" East 20.75 feet to a point for corner; thence South 89°49'05" West 459.38 feet to a point for corner; thence North 0°10'55" East 20 feet more or less to the Point of Beginning.

**SCHEDULE B**

PART I:    YOUR OWNERS:

| Name | Ownership Percentage | Type of Equity Interest | Office Held (Title) |
|------|---------------------|------------------------|---------------------|
| **Harish Pattni** | **100.00%** | **Common Stock** | |

PART II:    THE FACILITY:

Primary designation of Facility:  **Days Inn**

Number of approved guest rooms:  **100.**

Parking facilities (number of spaces, description):  **100.**

Other amenities, services and facilities:

Initial

33

## SCHEDULE C

### DAYS INNS WORLDWIDE, INC.
**March 2009**

### I.    System Assessment Fees

The System Assessment Fee is equal to 3.8% of Gross Room Revenues.  We reserve the right, in our sole discretion, to increase or modify the System Assessment Fees for all Chain Facilities from time to time to cover costs (including reasonable direct or indirect overhead costs) related to such services and programs but with at least 30 days prior written notice and after consultation with the Board of Directors of the Days Inns Franchisee Advisory Association.

### II.    Additional Fees

#### A.    Loyalty Program Charge

We charge a Loyalty Program Charge for your participation in the Wyndham Rewards or successor guest loyalty program.  The Loyalty Program Charge is up to 5% of the Gross Room Revenues accruing from each "qualifying stay" at the Facility as defined in the Front Desk Guide. We will proactively match and award members with points or other program currency they earn on qualified stays even if they do not present their Wyndham Rewards membership card upon check-in. You will be billed monthly in arrears for qualifying stays by program members during the preceding month.

#### B.    Guest Services Assessment

We will contact you if we receive any guest complaint about you or the Facility, and you will be responsible for resolving the complaint to the satisfaction of the guest.  If you do not resolve any complaint within 7 business days after we refer it to you and the guest contacts us again to seek resolution, we will charge you a "Guest Services Assessment" of $100.00, plus the costs we incur to settle the matter with the guest.  In addition, if the number of guest complaints per 1,000 occupied room nights about you or the Facility in a calendar year exceed the "Annual Facility Allotment" we establish with the approval of the Board of Directors of the Days Inn Franchise Advisory Association, Inc., we will charge you a "Processing Fee" of $60.00 for each additional complaint we receive during that year, regardless of whether you are able to resolve it to the guest's satisfaction.  The Guest Services Assessment and the Processing Fee are intended only to reimburse us for the costs of complaint handling and are not intended as penalties or liquidated damages.   All guest complaints remain subject to indemnification under this Agreement.

#### C.    Best Available Rate Program

You must (i) make available through the Central Reservation System and the Chain website room rates equivalent to those offered to the general public by third parties that you authorize to offer and sell reservations for the Facility's guest rooms and (ii) participate in the

34

Chain's Best Available Rate Guarantee Program according to its published requirements. If a guest finds a lower publicly available rate on the Internet than the "Best Available Rate" you offer through the Chain website or the Central Reservation System for the same date and accommodations and the guest meets all Program requirements, you must provide the applicable night(s) to the guest at 10% less than the lower rate offered on the Internet. You may collect standard incidental fees, charges and taxes. We will also charge you a Processing Fee of $60 to reimburse us for our administrative charges of handling the complaint.

D.   **Service Interruption Fee**

If we suspend Central Reservation System service because of your default under this Agreement, then you must pay us a Service Interruption Fee of $200 before we restore service. If we must reactivate your service three or more times in any 12 month period, the Service Interruption Fee will be increased to $500.

E.   **GDS and Internet Booking Fees**

We will charge you under our Central Commission Payment Program either a GDS Fee or an Internet Booking Fee, as applicable, for reservations processed through the global distribution systems ("GDS") or the Internet for your Facility. GDS Fees are assessed for reservations processed through any GDS or through any Internet website powered by a GDS. Internet Booking Fees are assessed for any other Internet-originated reservations. We do not currently charge any fees for reservations booked through our Chain website or through our direct connection to on-line travel agents. If a guest cancels a GDS or Internet-originated reservation using the same source as was used to originate the reservation, you will not be charged the applicable fee. GDS and Internet-originated reservations may also incur travel agent and similar commissions. We will establish the amount of the GDS and Internet Booking Fees from time to time based on a weighted average of the fees these distribution channels charge us plus a reasonable processing charge.

F.   **Travel Agent Commissions and Other Distribution Charges**

Travel agent and other commissions are typically 10% of the Gross Room Revenues generated by each reservation booked by an agent or other qualifying originator. Agencies which are part of a travel consortium or a travel management company may charge additional commissions and/or participation fees to be included in their programs. The general sales agent commission (also known as the international sales office commission) is 15% of the Gross Room Revenues generated by each reservation originated in an area served by a general sales agent/international sales office and includes the travel agent commission. The "property to property" incentive sales commission is 10% of the Gross Room Revenues generated from each reservation originated by another Chain Facility through the Central Reservation System.

We or an affiliate may charge you a sales commission of up to 10% of the Gross Room Revenues generated from consumed reservations booked by members of affinity groups and organizations participating in our Member Benefits sales program. We or our affiliate usually pays a portion of this commission to the affinity group or organization in exchange for

35

promoting the Member Benefits program to its members.

We will offer you the opportunity to participate in certain Internet distribution channel marketing and reservation activity with third parties. Under one type of arrangement, you will offer rooms for sale through an electronic distribution channel on which you will be paid a net, non-commissionable rate if and when the rooms are sold by the distribution channel at its marked-up rate. For providing and managing this activity we may receive commissions from the Internet distribution channels based upon the mark-up or room rates that they receive for renting your rooms. The net rate you receive, not the mark-up retained by the channel, should be included in Gross Room Revenues. We will allocate these commissions to Royalties and System Assessment Fees in equal proportions. Under another type of arrangement, you will offer rooms for sale through an electronic distribution channel at your best commissionable rate. The distribution channel will not mark-up these rates but will charge you a commission of up to 15% on consumed room nights.

We may change, modify or delete Additional Fees for existing services and programs and add new Additional Fees for new services and programs at any time upon not less than 30 days written notice.

DAY
235104 Q1/09

## SCHEDULE D

## ADDENDUM FOR RENEWAL FACILITIES

This Addendum applies if you are renewing an existing Days Inn Facility by entering into a new Franchise Agreement.

### 1. CONTINUING OBLIGATION:

This Addendum is for the renewal of the Franchise for an existing Chain Facility first granted to you in a Franchise Agreement dated July 19, 1995 (the "Prior Agreement"). You must perform any and all of your obligations (financial and otherwise) under the Prior Agreement remaining as of the date of this Agreement and correct any uncured defaults, other than as expressly superseded by this Agreement.

### 2. YOUR IMPROVEMENT OBLIGATION:

2.1 **Improvements.** You must renovate and improve the Facility in accordance with any Punch List attached to this Agreement, any Approved Plans and System Standards. You must commence and complete the improvements in accordance with the timeframes established in the Punch List. If you do not commence or complete the improvement of the Facility by the deadlines specified in the Punch List, then we may, in our sole discretion, terminate this Agreement by giving written notice to you. Time is of the essence for completion of the Punch List. We may, however, in our sole discretion, grant one or more extensions of time to perform any phase of the Punch List. You must also pay us the Reinspection Fee described in Section 3.7 if you fail to complete any Improvement Obligation by the deadline established in the Punch List and our representatives must return to the Facility to inspect it. We may grant you an extension of time to complete the items on your Punch List in our sole discretion. The grant of an extension to perform your Improvement Obligation will not waive any other default existing at the time the extension is granted.

2.2 **Improvement Plans.** You will create plans and specifications for the work described in Section 2.1 (based upon the System Standards and this Agreement) if we so request and submit them for our approval before starting improvement of the Location. We will not unreasonably withhold or delay our approval, which is intended only to test compliance with System Standards, and not to detect errors or omissions in the work of your architects, engineers, contractors or the like. Our review does not cover technical, architectural or engineering factors, or compliance with federal, state or local laws, regulations or code requirements. We will not be liable to your lenders, contractors, employees, guests, others or you on account of our review or approval of your plans, drawings or specifications, or our inspection of the Facility before, during or after renovation or construction. Any material variation from the Approved Plans requires our prior written approval. We may offer to provide you or your architect with interior design or other prototypes. If you decline to utilize such prototype(s) in developing the Facility, we may charge you a fee for reviewing your custom plans and designs. We may offer other optional architectural and design services for a separate fee. You will promptly provide us with copies of permits, job progress reports, and other information as we may reasonably request. We may inspect the work while in progress without prior notice.

2.3 **Identification of Facility during Renovation.** You may continue to identify the Facility as part of the System prior to completing the Punch List.

37

### 3. DEFINITIONS:

<u>Opening Date</u> has the same meaning as the Effective Date.

DAY
235104 Q1/09

## SCHEDULE D

## ADDENDUM FOR RENEWAL FACILITIES

[Punch List has been waived]

DAY
235104 Q1/09

# EXHIBIT "B"

Location: Ocala, FL
Site: 5311-88499-02

## CONNECTIVITY EQUIPMENT LEASE AND SERVICES ADDENDUM
## TRANSFERS AND RENEWAL FACILITIES
## WITHOUT UPGRADE (3 YEAR TERM)

This Connectivity Equipment Lease and Services Addendum (the "Addendum") by and between DAYS INNS WORLDWIDE, INC. ("we," "our," "us") and OCALA INN KASH, INC. ("you," "your") is dated NOV 1____, 200 9 (the "Addendum Effective Date"). This Addendum is part of the Franchise Agreement (the "Agreement") between you and us and involves the lease of certain communications "Equipment" to you. You will not own the Equipment and must return it to the "Supplier" at the end of the term of the lease. If you previously signed a Satellite Connectivity Services Addendum or a Connectivity Equipment Lease and Services Addendum as part of a prior franchise or license agreement with us ("Prior Addendum"), this Addendum supersedes and terminates the Prior Addendum.

Notwithstanding anything to the contrary set forth in the Agreement, the following provisions shall supersede and apply:

1. <u>Services</u>. Our affiliate has entered into an agreement with a broadband communications services supplier ("Supplier") under which we are authorized to provide our franchisees with broadband connectivity services. The specific broadband communications services ("Services") and related equipment necessary for the proper functioning of the Services ("Equipment") are listed in Schedule 1 of this Addendum. We and/or Supplier will lease to you the Equipment and furnish you the Services (the Equipment and Services are collectively referred to as the "Property Communications System") for the Facility. Once installed, you will access the Central Reservation System, the Enterprise Data Warehouse, the Email Network and the Brand Information Source (as those terms are defined in the Software and Services Agreement) using only the Property Communications System while this Addendum remains in effect. If your franchise involves the transfer or renewal of an existing Chain Facility in which the Equipment has previously been installed, Sections 2 and 3 below will not be applicable.

2. <u>Site Inspection</u>. You will reasonably cooperate with us and Supplier to determine how the Equipment will be installed. You will furnish us or Supplier with any information requested in order to complete the installation. We or Supplier, in our sole discretion, will determine the placement of the Equipment at the Facility, which is intended to ensure the optimal performance of the Services.

3. <u>Installation</u>.

(a) Supplier will schedule installation of the Equipment at the Facility during regular business hours, when possible. As a condition to the lease and installation of the Equipment at the Facility, you must follow any instructions we or Supplier provide you to prepare the Facility for installation and be ready to accept the Equipment on the

228496

scheduled installation date.

(b)  You will allow installation personnel reasonable access to all areas of the Facility necessary to perform the installation. You will obtain in advance, if necessary, any required permits, approvals or consents from any governmental authority, your landlord or mortgagee to install the Equipment at the Facility, including access to the premises of a third-party, if necessary, to complete the installation. You will permit the installation of certain Equipment on the roof or attached to the exterior walls of the Facility. You will furnish to the installation personnel, free of charge, adequate electrical power, local telephone service, water and other utilities necessary to perform the installation.

(c)  The Property Communication System includes a dial-backup feature. To support this capability, you must maintain either a dedicated telephone line as provisioned by your local telecommunications provider or a dedicated analog PBX extension configured with dial-out only services.

(d)  If you comply with the provisions of this Section 3 and our instructions for preparing the Facility for installation of the Equipment on your scheduled installation date, there will be no charge for a "Standard Installation" as defined in Schedule 1. If your installation involves equipment, cabling, hardware or labor, beyond what is included in the Standard Installation package, you must pay the additional fees and charges set forth in Schedule 3, plus an administrative charge of no more than $50.00.    If (i) you postpone a scheduled installation with less than seven (7) days prior written notice to us, or (ii) an installation is delayed or aborted because you did not comply with this Section 3 (collectively, a "Cancellation"), you will pay us an Installation Cancellation Charge of $1,000.00 within five (5) days after our written notice to you. If a second Cancellation occurs, you will be in default under this Addendum.

4.  Operations; Authorizations.

(a)  Once installed, you will not move the Equipment without our prior written consent. You will maintain the Equipment according to the environmental conditions we specify. Upon reasonable prior notice, you will give us or Supplier reasonable access to inspect the Equipment.

(b)  You will maintain, at your expense, any necessary permits and licenses required for your use of the Property Communications System.

(c)  During the "Term", as defined in Section 7 below, we will provide through Supplier the Services so long as you are not in default under this Addendum, the Agreement or any other agreement between you and us or our affiliates.

5.  Support and Maintenance.  During the Term we will provide you a toll-free number for reporting Property Communications System problems. You will contact the number promptly when and if you experience any problems with the Property Communications System, or if any casualty affects the Property Communications System. We or Supplier will work with you to

determine if the problem requires support or maintenance services.   The support and maintenance services we or Supplier will provide you are listed in Schedule 2 to this Addendum. You will allow maintenance personnel reasonable access to all areas of the Facility necessary to perform these support and maintenance services.

6.   Monthly Service Charges.   During the Term you will pay to us for the Property Communications System a "Monthly Service Charge" of $160 (or any lesser amount we establish when the Service commences).   Charges will begin to accrue on the Addendum Effective Date. We will invoice you for the Monthly Service Charge in advance each month. If your Franchise involves the transfer of an existing Chain Facility to you and the Addendum Effective Date is other than the first day of a month, we will charge you a pro-rated amount of the Monthly Service Charge for the first month of the Initial Term.   You will pay the invoice amount to us upon receipt. You will also pay any excise, sales, use, state personal property tax or other taxes assessed in connection with the Property Communications System.   We may apply any amounts received to any outstanding invoices in any order.   We may, after we give you at least 30 days advance written notice, increase the Monthly Service Charge during the term of this Addendum by an amount that reflects the actual price increase to us in the rates Supplier charges us for the Property Communications System and/or our increased costs of providing any related support or maintenance services.

7.   Term.   This Addendum will be effective from the Addendum Effective Date and shall continue in full force and effect for a period (the "Initial Term") ending on the last day of the thirty-sixth (36th) month, starting on the first day of the month following the Start Date, unless earlier terminated in accordance with the terms of this Addendum or the Agreement.   The "Start Date" is the date the Equipment is installed at the Facility and it begins operating, which may be before the Addendum Effective Date.   At the end of the Initial Term, this Addendum shall renew (a "Renewal Term") on a quarterly basis until either you or we give written notice of termination to the other party at least ninety (90) days before the end of the Initial Term or any subsequent Renewal Term.   The Initial and Renewal Term may collectively be referred to as the "Term".

8.   Software.

    (a)   We assign to you Supplier' non-exclusive licenses to use the operating systems in connection with the Property Communications System (the "Software"), subject to the conditions and limitations in this Addendum and the Software licenses.   The Software may be used only in conjunction with the Equipment at the Facility, at no other location, and for the sole purpose of obtaining the Services in connection with the operation of your franchise with us.   You may not disclose, reverse engineer, alter, add to, modify or copy the Software for any reason.   You may not, directly or indirectly, distribute, sell, assign, transfer, offer, disclose, lease or license the Software to a third party.

    (b)   Title to and ownership of the Software shall remain with us or those entities that have authorized us to sublicense and use them, free of any claim or right of yours or the holder of any security interest, lien or encumbrance on the Facility or any of your other property. If any person attempts to establish any legal right in the Software, you will promptly notify us in writing.

9.  Title to Equipment; Risk of Loss; Insurance.  You are leasing the Equipment and have no right, title, or interest in it other than as specified in this Addendum.  The Equipment is not intended to be a fixture or permanently attached to any real property.  You will not allow any security interest, landlord's lien, or any other lien or encumbrance to be placed on or attach to the Equipment.  If any person attempts to establish any legal right in or to the Equipment, you will promptly notify us in writing.  We or Supplier may at our or their option, mark, label or otherwise identify the Equipment.  You will not remove or deface such identification.  You bear the entire risk of loss, theft, damage or destruction of any installed Equipment from any causes whatsoever, unless we or Supplier directly caused the loss, damage or destruction.  You will promptly notify us if the Equipment is damaged for any reason.  You will maintain "all-risk" fire and extended casualty (including any acts of nature such as lightning, wind, rain, snow, flood, fire and hail) insurance for the Equipment during the Initial Term and any Renewal Term of at least $25,000, and you name us, Wyndham Worldwide Corporation, Wyndham Hotel Group, LLC, their successors and assigns as additional insureds and loss payees.  You will furnish us, prior to installation of the Equipment, with a certificate of insurance showing the insurance coverage is in effect, the named insured and additional insureds.  You must furnish us with an updated certificate of insurance each year when renewed and every time a change is made in your insurance policy or insurance carrier.

10.  Force Majeure.  If performance by you, Supplier or us is delayed or prevented because of strikes, inability to procure labor or materials, defaults of suppliers or subcontractors, delays or shortages of transportation, failure of power or telephone transmissions, restrictive governmental laws or regulations, weather conditions, or other reasons beyond the reasonable control of the party, then performance of such acts will be excused and the period for performance will be extended for a period equivalent to the period of such delay.  Delays or failures to pay resulting from lack of funds will not be deemed delays beyond your reasonable control.

11.  No Warranties; Security; Indemnity.

(a)  WE MAKE NO WARRANTY WHATSOEVER, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY ABOUT THE PROPERTY COMMUNICATIONS SYSTEM, ITS MERCHANTABILITY, AND ITS FITNESS FOR ANY PARTICULAR PURPOSE, OR ITS CONFORMANCE TO SPECIFICATIONS OF ANY ORDER OR DOCUMENTATION.

(b)  We do not warrant any connection to or transmission over the Property Communications System, other than as specified in this Addendum.  Your use of any information obtained through the Services is at your own risk.  We deny any responsibility for the accuracy or quality of the information obtained through the Services.  We do not warrant that the Property Communications System will operate uninterrupted or error-free.

(c)  You may not use the Property Communications System to take any actions or make any statements that (i) infringe on another party's copyright, patent, trademark, trade secret or other proprietary rights or rights of publicity or privacy; (ii) violate any

applicable law, statute, ordinance or regulation; (iii) are defamatory, trade libelous or threatening; (iv) are pornographic or obscene; (v) violate any laws regarding unfair competition, discrimination or false advertising; (vi) result in the distribution of viruses, Trojan horses, worms, time bombs, cancelbots, chain letters or other similar harmful or deleterious programming routines; or (vii) result in the unauthorized entry to any other network, machine or device accessible through the Services. You are responsible for all content transmitted from the Property Communications System using the Services.

(d)   You are responsible for user access security for the Property Communications System, and any unauthorized use of the Property Communications System. You must authorize and supervise the users of the Property Communications System.

(e)   We or Supplier may, at our sole discretion, institute security controls on the Services to protect the confidentiality, privacy, integrity and availability of your information and our information. These controls may include without limitation (i) requiring users to utilize unique identification and authorization; (ii) limiting certain levels of access to persons you authorize; (iii) implementing access controls on all data, software or other file-system objects to limit access to only authorized users; (iv) ensuring the integrity of all data stored or processed; and/or (v) preventing the loss of data processed or transferred.

(f)   You acknowledge that the Property Communications System is specifically authorized for the Facility's commercial use only, and is not intended for personal Internet use by your personnel or Chain guests. You further acknowledge that the primary function of the Property Communications System is to provide connectivity to and from the Central Reservation System, the Enterprise Data Warehouse, the Email Network and the Brand Information Sources. We or Supplier may, at our sole discretion, institute filters, screens, traps or other devices on the Services and block certain Internet content from being received at or transmitted from the Facility.

(g)   You will indemnify and hold harmless us, our affiliates, successors and assigns and each of the respective directors, officers and employees associated with them against all claims of employees, agents, guests, and all other persons and entities, arising out of or in connection with your operation, use or non-use of the Property Communications System, including any content disseminated from the Property Communications System at the Facility. We will not be liable to you or any other person or entity for personal injury, personal loss or property loss, including but not limited to, damage to the Facility, as a result of your operation, use or non-use of the Services and/or Equipment.

12. Default; Termination; Attorney's Fees.

(a) If you are in default under Section 11.1 of the Agreement, or any one of the events described in Section 11.2 of the Agreement that gives us the right to terminate occurs, or you are in default of this Addendum, or the Equipment becomes inoperable by your act or omission, or you assign or transfer, or attempt to assign or transfer the Services or Equipment without our consent, except as permitted under the Agreement, then to the extent

permitted by applicable law, we shall have the right to suspend the Service and use of the Equipment, while the default remains uncured. Additionally, we may, at our option, immediately terminate only this Addendum and not the Agreement, upon written notice to you, if (i) you commit a default under Section 11(c) of this Addendum above, (ii) you attempt to obtain an interest in, or assist another person or entity to obtain an interest in, the Hardware or the Software in violation of Section of 8(b) or 9 of this Addendum above; or (ii) you commit any other default of this Addendum and fail to cure such default within thirty (30) days after you receive notice of the default.

(b)  Upon the termination of this Addendum for any reason, you will permit us and/or Supplier reasonable access to Facility to remove the Equipment. YOU EXPRESSLY WAIVE ANY RIGHT TO NOTICE OF OR A HEARING WITH RESPECT TO REPOSSESSION AND CONSENT TO ENTRY INTO THE FACILITY BY US, SUPPLIER, OUR OR THEIR AGENTS OR REPRESENTATIVES TO REMOVE THE EQUIPMENT WITHOUT JUDICIAL PROCESS.  If you fail or refuse to permit the peaceable entry to take possession of any Equipment, you will be liable for rental of the Equipment at the rate of Five Hundred Dollars ($500.00) per week from the date that we first attempt to retake it.

(c)  If we terminate this Addendum under Section 12(a) above, or in the event of any other early termination of this Addendum, you will pay us "Addendum Liquidated Damages". In the event of a termination before the end of the Initial Term, Addendum Liquidated Damages shall be equal to the greater of the following amounts:  (i) Two Thousand Five Hundred Dollars ($2,500.00), or (ii) the product obtained by multiplying the number of full and partial months remaining in the Term of the Addendum by the Monthly Service Charge in effect on the termination date.  For an early termination during any Renewal Term, Addendum Liquidated Damages shall be equal to the product obtained by multiplying the number of full and partial months remaining in the Renewal Term by the Monthly Service Charge in effect on the termination date.  Addendum Liquidated Damages are in addition to (i) the stipulated loss value of the Equipment, as determined by Supplier, if you do not return the Equipment to us or Supplier upon termination of this Addendum, (ii) any accrued but unpaid fees or amounts due us, and (iii) any de-installation fees set forth in Schedule 3.  You and we acknowledge that actual damages are difficult or impossible to ascertain on the Addendum Effective Date, and the amount of the Addendum Liquidated Damages is a reasonable pre-estimate of the damages that will be incurred and is not a penalty. Our right to receive other amounts due under the Agreement and this Addendum is not affected by the payment to us of Addendum Liquidated Damages or vice versa.

(d)  The non-prevailing party will pay the costs and expenses, including reasonable attorneys' fees and the expenses, incurred by the prevailing party to enforce this Addendum.

IN WITNESS WHEREOF, the undersigned have executed this Addendum as of the date set forth above.

WE:
DAYS INNS WORLDWIDE, INC.

By: _____
        (Vice) President

YOU, as franchisee:
OCALA INN KASH, INC.

By: _____
        (Vice) President

228496

**SCHEDULE 1**
**SATELLITE SERVICES AND EQUIPMENT**

A.  The Services.  The Services are full duplex point-to-multipoint satellite communications between the shared hub (the "Hub") of Hughes Network Systems, Inc. ("HNS") and the Facility, providing network connectivity to support the following base services: property management system access to the Central Reservation System, the Electronic Data Warehouse, the Email Network and access to the Brand Information Source.  The Services include the following:

1)  Provision and operation of the Hub by HNS on a 24 hour per day, 365 day per year basis.

2)  Built-in redundancy to ensure a higher level of service availability via dial-backup capability in the event of satellite signal interruption. This is referred to as Virtual Automatic Dial Backup (VADB).  This does not include the local access line.

3)  Provision and operation of the space segment of HNS's satellite, including its satellite transponder capacity.

4)  Connectivity Service Level A (Optional Service Level plans are available.  See Schedule 3 or explanation).

B.  The Equipment.  The Equipment includes standard equipment and installation as described below. Standard installations cover Facilities 1 - 2 stories from the ground and include the following:

- Dual IFL (inter-facility link) antenna cable run up to 150 feet from antenna location to Indoor Unit location.
- Wall fish and wire mold as deemed necessary by the installer.
- The use of necessary tools, including laptop computer and appropriate commissioning software, to install, commission, test and cutover HNS and customer systems.
- Electrical grounding of antenna mount per HNS guidelines.
- Activation and commissioning of the satellite system.

The standard installation excludes efforts to structurally reinforce walls or roofs, landscaping, tree removal, excavation into pavement for cable conduit, roof penetrations, or restricted roof access requiring cranes or helicopters. It also excludes sites that have unusual characteristics or require special installation, handling or equipment.  (Additional costs may apply for non-standard or "exceptional Facilities".  See Schedule 3.)

Standard equipment consists of:

- HN7700-S indoor unit with two active 10/100BaseT ports, internal modem with RJ-11 interface (for Virtual Automatic Dial Backup)
- 2.0 Watt RF Outdoor Equipment
- .98m diameter antenna (larger sized reflectors may have been installed based on geographic location of Facility as determined by HNS.)
- antenna mount (non-penetrating roof mount, tri-mast wall mount, or ground mount)
- IFL (Inter-Facility Link) antenna cable
- 8-port Ethernet switch

228496    86

- two (2) 25-foot cables for connection of up to (2) devices
- Ethernet data cable to connect to the Indoor Unit.

- HNS may install, at its sole discretion anti-icing equipment to protect the equipment at the Facility at no additional cost if the Facility is located in a 10-day ice zone. This includes Facilities which require new outdoor equipment. Ice zone is determined by HNS. If anti-icing equipment is installed, you must provide at your expense and prior to the installation date, a source of 110V, GFCI 20 amp non-dedicated AC power that is readily available at the antenna site. If it is determined that anti-icing equipment is not necessary due to the location of the Facility, you may request to have it installed at your cost (see Schedule 3). That request must be made in advance of the installation so that final pricing can be quoted.

**SCHEDULE 2**
**SUPPORT AND MAINTENANCE**

You will receive the following maintenance and support services:

1) <u>Telephone Support</u>.  You may contact our Tech Support center 24 hours per day, 365 days per year by calling a toll-free telephone access to receive Service support.

2) <u>Corrective Maintenance</u>.  If Tech Support and HNS determine that the Equipment is not operating properly, Tech Support and/or HNS will restore the Equipment to good working condition by performing the following corrective maintenance as required:

    a)  Diagnostic testing to determine the existence and cause of the malfunction;
    b)  Removal and replacement of any malfunctioning field replaceable Equipment ;
    c)  Reorientation (repointing) of the antenna subsystem;
    d)  Repair or replacement of Equipment interconnecting cables;
    e)  Reloading initializing instructions and recommissioning;
    f)   Verification of proper operation and completion of service report; and
    g)  Notification to you and the control center that the Equipment has been restored to operational status.

3) <u>Limitations</u>.  Maintenance services do not include any of the following services:

    a)   Maintenance, repair or replacement of parts damaged or lost through catastrophe, accident, lightning, wind, theft, misuse, vandalism, fault or negligence of you, your employees or agents or causes external to the Equipment, including failure of, or faulty, electrical power or air conditioning, operator error, failure, or malfunction of data communication we or HNS did not provide you, or from any cause other than intended and ordinary use;

    b)  Changes, modifications, or alterations in or to the Equipment by anyone other than HNS or us other than HNS approved upgrades and configuration changes; or

    c)  Deinstallation, relocation, or removal of the Equipment or any accessories, attachments, or other devices.

4) <u>Software Maintenance</u>.  HNS will correct reported defects in the Software that cause it not to substantially perform in accordance with its applicable specifications, as promptly as commercially reasonable.

5) <u>Software Maintenance Service Limitations</u>.  We and HNS have no responsibility to correct any defects in any Software that are caused by (i) modification of the Software by any person other than us or HNS; (ii) failure to install an update provided by us or HNS within 60 days after we or HNS provide it to you; (iii) misuse or improper installation by you; or (iv) problems in third-party hardware, software, or networking equipment which is manipulated by, interoperates with, or operates in conjunction with the Software.

## SCHEDULE 3
## ADDITIONAL FEES AND OPTIONAL AND NON-STANDARD CHARGES

- Expedited Satellite Installation at Customer's request     $750 each
  - Requested with less than 15 business days notice
  - Charge is waived if HNS does not meet the requested date

- Aborted or Cancelled Installation     $1000 each
  - Charge will only apply in cases where the Installation has been cancelled or postponed by Customer within seven (7) days of the scheduled installation. (See Section 3(d) of Addendum above.)

- Deinstallation of nonpenetrating mount site (satellite)     $750 each

- HN7700 Site Relocation     $1500 each
  - Assumes same city deinstall/reinstall within 72 hours
  - If not, add $170 for storage and shipping

- Additional coaxial IFL cable for satellite antenna (150 feet included in standard installation)     $1.00 per foot

- Optional Anti-Icing antenna system (where Facilities are outside of 10-day ice zone and anti-icing equipment is requested)
  - o For .98m antenna with anti-icing     $1850
  - o For 1.2m antenna with anti-icing     $1900

- Satellite Service Plan. The standard connectivity service level as described in Schedule 1, Paragraph A(4) (Service Plan A) provides the initial bandwidth necessary to access the systems and services mentioned therein. Upgraded service plans are available to support a) a Facility request for additional bandwidth, or b) in the event that network monitoring audits indicate that Facility network usage requires a service plan upgrade, you will be advised to either upgrade to the next level plan at your cost or alter network usage habits. The costs for these optional service plans are:

  - o Incremental Charge for upgrade to Service Plan B     $15.00 per month
  - o Incremental Charge for upgrade to Service Plan C     $46.00 per month

- Demand Services Rate

  You shall be charged on a Time & Material (T&M) basis for out of scope Services which are not described elsewhere in this Schedule 3. This includes, but is not limited to, repairs required for the reasons set forth in Schedule 3, Section 3. The T & M charges are as follows:

  Hourly Rate
  - o Normal Hours (8am-5pm local time, Monday-Friday)     $125 per hour
  - o After Hours Weekday (5pm-8am, Monday-Thursday)     $150 per hour
  - o Weekend (5pm Friday-8am Monday)     $150 per hour

Travel Charge (flat rate per call)                    $225

- Special Equipment Charges

    In the event that special equipment is required for maintenance (including, but not limited to scaffolding and power lift trucks), it will be provided by HNS, if practical, and Customer will be billed for the actual cost to HNS plus 15%. At Facilities requiring special equipment for physical access, onsite repair time will be billed at prevailing rates for Demand Services specified above.

- Non-Standard/Exceptional Facility

    In the event that a Facility has unusual characteristics or HNS is requested to provide installation services that will require special handling or additional equipment, such as additional cabling, the Facility shall be subject to non-standard installation charges.

# EXHIBIT "C"

## GUARANTY

To induce Days Inns Worldwide, Inc., its successors and assigns ("you") to sign the Franchise Agreement (the "Agreement") with the party named as the "Franchisee," to which this Guaranty is attached, the undersigned, jointly and severally ("we," "our" or "us"), irrevocably and unconditionally (i) warrant to you that Franchisee's representations and warranties in the Agreement are true and correct as stated, and (ii) guaranty that Franchisee's obligations under the Agreement, including any amendments, will be punctually paid and performed.

Upon default by Franchisee and notice from you we will immediately make each payment and perform or cause Franchisee to perform, each unpaid or unperformed obligation of Franchisee under the Agreement. Without affecting our obligations under this Guaranty, you may without notice to us extend, modify or release any indebtedness or obligation of Franchisee, or settle, adjust or compromise any claims against Franchisee. We waive notice of amendment of the Agreement. We acknowledge that Section 17 of the Agreement, including Remedies, Venue and Dispute Resolution, and WAIVER OF JURY TRIAL, applies to this Guaranty.

Upon the death of an individual guarantor, the estate of the guarantor will be bound by this Guaranty for obligations of Franchisee to you existing at the time of death, and the obligations of all other guarantors will continue in full force and effect.

This Guaranty may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one in the same instrument.

IN WITNESS WHEREOF, each of us has signed this Guaranty effective as of the date of the Agreement.

GUARANTORS:

Name:          Harish Pattni
Address:       1447 NE Expressway, Atlanta, GA 30329

40

DAY
235104 Q1/09

# EXHIBIT "D"

293949v1



Wyndham Hotel Group
Contracts Administration
22 Sylvan Way
Parsippany, NJ 07054
973 753 8000 Phone
800 880 9445 Fax

May 23, 2011

**VIA 2 DAY DELIVERY METHOD**

Mr. Harish Pattni
OCALA INN KASH, INC.
1447 NE Expressway
Atlanta, GA 30329

RE:   **NOTICE OF MONETARY DEFAULT RELATING TO DAYS® UNIT #5311-88499-2 LOCATED IN OCALA, FL (THE "FACILITY")** .

Dear Mr. Pattni:

I write on behalf of DAYS INNS WORLDWIDE, INC. ("we," "us," or "our") regarding the License Agreement dated November 1, 2009 between OCALA INN KASH, INC. ( "you" or "your") and us (the "Agreement"). We write to give you formal notice that you are in default under the Agreement.

The Agreement requires you to timely pay us the Recurring Fees and other charges relating to your operation of the Facility under the System. Our Financial Services Department advises us that as of May 18, 2011 your account is past due in the amount of **$130,304.57.** We have enclosed an itemized statement detailing the fees past due. Under the Agreement, you have 10 days to pay this amount to us in order to cure your default. If you do not pay this amount within the time permitted, we reserve all rights under the terms of the Agreement including but not limited to termination of the Agreement and your right to operate in the Days System.

Additionally, we would like to take this time to advise you that the Facility has recently received two consecutive Quality Assurance ("QA") scores above 200. Specifically, the Facility received a score of 265 during the QA inspection conducted on June 30, 2010 and it received a score of 323 during the QA inspection conducted on February 17, 2011. These scores are above the maximum score necessary to retain your Combined Fees as set forth in Section 18.2 of the Agreement. Accordingly, your Combined Fees are automatically terminated.

     

    

Mr. Harish Pattni
May 23, 2011
Page 2

This Notice does not modify, replace, or affect any default under the Agreement, or any other default and termination notices, if any, from us or any of our affiliates regarding the Facility. We also reserve the right to take any interim steps permitted under the Agreement because of your default.

We hope you will take this opportunity to resolve your monetary default. If you have any questions regarding your default or how it can be timely cured, please contact Operations Support Desk at (800) 443-3009.

Sincerely yours,

Suzanne Fenimore
Director
Contracts Compliance, Legal

Enclosure

cc:     Clyde Guinn
        Dianna Bayas
        Valerie Capers Workman

(Page 3 of 14)

Page 1 of 11

Report Date : 18-MAY-11

ITEMIZED STATEMENT
------------------

As of Date (DD-MMM-YYYY):   18-MAY-2011
Customer No              :   05311-88499-02-DAY
Category Set             :
Category Group           :
Group No                 :
Bankruptcy               :   No Bankruptcy Sites
Disputed                 :   No
Finance Charges Included:    Yes

Page 1 of 9

Report Date : 18-MAY-11

ITEMIZED STATEMENT
------------------

Customer No :   05311-88499-02-DAY
Address :       3620 W. Silversprings Blvd.,Ocala,FL,34475,US
As of Date:     18-MAY-2011

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|-----------|----------------|-------|
| JUN-2009 | 2110273701 | 22-JUN-09 | WYNREWARDS CRDT | | (142.08) | 0.00 | 0.00 | (142.08) |
| | 2110259201 | 22-JUN-09 | WYNREWARDS 5% | | 2205.73 | 0.00 | 556.10 | 2761.83 |
| | 1009648011 | 25-JUN-09 | GDS & INTERNET | | 14.05 | 0.00 | 3.00 | 17.05 |
| | TA000964801 | 25-JUN-09 | T/A COMMISSIONS | | 23.82 | 0.00 | 5.08 | 28.90 |
| | 4102843601 | 30-JUN-09 | ROYALTY FEE : 1 | | 2967.80 | 0.00 | 1035.78 | 4003.58 |
| | 4101177001 | 30-JUN-09 | MSI SOFTWARE MA | | 293.32 | 19.07 | 109.03 | 421.42 |
| | 4102957201 | 30-JUN-09 | RESERVATION FEE | | 1365.19 | 0.00 | 476.46 | 1841.65 |
| | 4102953701 | 30-JUN-09 | MARKETING FEE : | | 890.34 | 0.00 | 310.76 | 1201.10 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | 41011065#1 | 30-JUN-09 | DIRECWAY:1:Fran | 150.00 | 9.75 | 55.83 | 215.58 |
| | | | Sub Total | 7768.17 | 28.82 | 2552.04 | 10349.03 |
| JUL-2009 | 2110727#1 | 22-JUL-09 | WYNREWARDS CRDT | (134.76) | 0.00 | 0.00 | (134.76) |
| | 21108095#1 | 22-JUL-09 | WYNREWARDS 5% | 1660.18 | 0.00 | 553.62 | 2213.80 |
| | TM0015516#1 | 23-JUL-09 | MEMBER BENEFIT | 11.52 | 0.00 | 3.84 | 15.36 |
| | 1015516#11 | 23-JUL-09 | GDS & INTERNET | 53.20 | 0.00 | 17.70 | 70.90 |
| | TR0015516#1 | 23-JUL-09 | TMC / CONSORTIA | 3.76 | 0.00 | 1.28 | 5.04 |
| | TA0015516#1 | 23-JUL-09 | T/A COMMISSIONS | 242.10 | 0.00 | 80.71 | 322.81 |
| | 41060876#1 | 31-JUL-09 | RESERVATION FEE | 1055.70 | 0.00 | 352.07 | 1407.77 |
| | 41061088#1 | 31-JUL-09 | MARKETING FEE : | 688.50 | 0.00 | 229.61 | 918.11 |
| | 41061932#1 | 31-JUL-09 | ROYALTY FEE : 1 | 2295.00 | 0.00 | 765.39 | 3060.39 |
| | 41045906#1 | 31-JUL-09 | DIRECWAY:1:Fran | 150.00 | 9.75 | 53.35 | 213.10 |
| | 41044812#1 | 31-JUL-09 | MSI SOFTWARE MA | 293.32 | 19.07 | 104.18 | 416.57 |
| | | | Sub Total | 6318.52 | 28.82 | 2161.75 | 8509.09 |
| AUG-2009 | 21109201#1 | 22-AUG-09 | WYNREWARDS CRDT | (239.19) | 0.00 | 0.00 | (239.19) |
| | 21110088#1 | 22-AUG-09 | WYNREWARDS 5% | 1202.78 | 0.00 | 382.45 | 1585.23 |
| | 1022565#11 | 24-AUG-09 | GDS & INTERNET | 30.45 | 0.00 | 9.70 | 40.15 |
| | TA0022565#1 | 24-AUG-09 | T/A COMMISSIONS | 70.69 | 0.00 | 22.52 | 93.21 |
| | TM0022565#1 | 24-AUG-09 | MEMBER BENEFIT | 19.18 | 0.00 | 6.14 | 25.32 |
| | 41096166#1 | 31-AUG-09 | MARKETING FEE : | 565.95 | 0.00 | 179.95 | 745.90 |
| | 41077612#1 | 31-AUG-09 | DIRECWAY:1:Fran | 150.00 | 9.75 | 50.87 | 210.62 |
| | 41079523#1 | 31-AUG-09 | MSI SOFTWARE MA | 293.32 | 19.07 | 99.34 | 411.73 |
| | 41096686#1 | 31-AUG-09 | ROYALTY FEE : 1 | 1886.49 | 0.00 | 599.92 | 2486.41 |

Page 2 of 9

Report Date : 18-MAY-11

ITEMIZED STATEMENT
-------------------

Customer No :  05311-88499-02-DAY
Address :      3620 W. Silversprings Blvd.,Ocala,FL,34475,US
As of Date:    18-MAY-2011

Page 3 of 11

| Mon-Year | Invoice No | Invoice Date | Description   Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|------------------------|---------|------------|----------------|-------|
| | 41097184#1 | 31-AUG-09 | RESERVATION FEE | 867.79 | 0.00 | 275.97 | 1143.76 |
| | | | Sub Total | 4847.46 | 28.82 | 1626.86 | 6503.14 |
| SEP-2009 | TA0029680#1 | 22-SEP-09 | T/A COMMISSIONS | 94.97 | 0.00 | 27.22 | 122.19 |
| | 1029680#11 | 22-SEP-09 | GDS & INTERNET | 32.45 | 0.00 | 9.29 | 41.74 |
| | 21115106#1 | 22-SEP-09 | WYNREWARDS CRDT | (284.83) | 0.00 | 0.00 | (284.83) |
| | 21113205#1 | 22-SEP-09 | WYNREWARDS 5% | 1142.91 | 0.00 | 328.04 | 1470.95 |
| | 41131877#1 | 28-SEP-09 | MARKETING FEE : | 559.87 | 0.00 | 160.72 | 720.59 |
| | 41129352#1 | 28-SEP-09 | ROYALTY FEE : 1 | 1866.25 | 0.00 | 535.63 | 2401.88 |
| | 41130274#1 | 28-SEP-09 | RESERVATION FEE | 858.47 | 0.00 | 246.43 | 1104.90 |
| | 41113185#1 | 30-SEP-09 | MSI SOFTWARE MA | 307.99 | 20.02 | 94.10 | 422.11 |
| | 41114604#1 | 30-SEP-09 | DIRECWAY:1:Fran | 150.00 | 9.75 | 45.91 | 205.66 |
| | | | Sub Total | 4728.08 | 29.77 | 1447.34 | 6205.19 |
| OCT-2009 | 21117583#1 | 22-OCT-09 | WYNREWARDS 5% | 1157.28 | 0.00 | 298.02 | 1455.30 |
| | 21115663#1 | 22-OCT-09 | WYNREWARDS CRDT | (64.99) | 0.00 | 0.00 | (64.99) |
| | TA0036860#1 | 26-OCT-09 | T/A COMMISSIONS | 75.31 | 0.00 | 19.41 | 94.72 |
| | 1036860#11 | 26-OCT-09 | GDS & INTERNET | 19.40 | 0.00 | 4.98 | 24.38 |
| | TM0036860#1 | 26-OCT-09 | MEMBER BENEFIT | 10.62 | 0.00 | 2.70 | 13.32 |
| | 41177191#1 | 31-OCT-09 | ROYALTY FEE:Fra | 1991.20 | 0.00 | 512.72 | 2503.92 |
| | 41146948#1 | 31-OCT-09 | MSI SOFTWARE MA | 307.99 | 20.02 | 84.42 | 412.43 |
| | 41178379#1 | 31-OCT-09 | MARKETING FEE:F | 597.36 | 0.00 | 153.82 | 751.18 |
| | 41178769#1 | 31-OCT-09 | RESERVATION FEE | 915.95 | 0.00 | 235.88 | 1151.83 |
| | 41149112#1 | 31-OCT-09 | DIRECWAY:1:Fran | 150.00 | 9.75 | 41.20 | 200.95 |
| | | | Sub Total | 5160.12 | 29.77 | 1353.15 | 6543.04 |
| NOV-2009 | 10423913#1 | 04-NOV-09 | GUEST SRVCS TRA | 100.00 | 0.00 | 25.75 | 125.75 |
| | 10424008#1 | 04-NOV-09 | GUEST SATISFACT | 23.50 | 0.00 | 6.00 | 29.50 |
| | 10425515#1 | 11-NOV-09 | GUEST SRVCS TRA | (100.00) | 0.00 | 0.00 | (100.00) |
| | 10427151#1 | 16-NOV-09 | GUEST SATISFACT | (23.50) | 0.00 | 0.00 | (23.50) |

Page 3 of 9

¡1

(Page 6 of 14)

Report Date : 18-MAY-11

ITEMIZED STATEMENT
-----------------

Customer No :  05311-88499-02-DAY
Address :      3620 W. Silversprings Blvd.,Ocala,FL,34475,US
As of Date:    18-MAY-2011

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|-----|----------------|-------|
| | TA0042422#1 | 22-NOV-09 | T/A COMMISSIONS | | 11.17 | 0.00 | 2.70 | 13.87 |
| | 1042422#11 | 22-NOV-09 | GDS & INTERNET | | 32.45 | 0.00 | 7.84 | 40.29 |
| | 21119806#1 | 22-NOV-09 | WYNREWARDS 5% | | 778.52 | 0.00 | 188.44 | 966.96 |
| | 41181835#1 | 30-NOV-09 | DIRECWAY:1:Fran | | 150.00 | 9.75 | 38.72 | 198.47 |
| | 41179972#1 | 30-NOV-09 | MSI SOFTWARE NA | | 307.99 | 20.02 | 79.34 | 407.35 |
| | | | Sub Total | | 1280.13 | 29.77 | 348.79 | 1658.69 |
| DEC-2009 | 30377724 | 22-DEC-09 | RNW 5157A FL OC | | 17500.00 | 0.00 | 3963.75 | 21463.75 |
| | 21121696 | 22-DEC-09 | WYNREWARDS 5% | | 591.47 | 0.00 | 133.97 | 725.44 |
| | 1100039#1 | 24-DEC-09 | GDS & INTERNET | | 5.35 | 0.00 | 1.18 | 6.53 |
| | TA0100039#1 | 24-DEC-09 | T/A COMMISSIONS | | 2.43 | 0.00 | 0.58 | 3.01 |
| | 30386558 | 31-DEC-09 | CK#1386 | | 20.00 | 0.00 | 4.53 | 24.53 |
| | 30383476#1 | 31-DEC-09 | DEC-09 PRORATE | | 154.84 | 10.06 | 37.37 | 202.27 |
| | 41217115 | 31-DEC-09 | 5032A-MSI SOFTW | | 307.98 | 20.02 | 74.26 | 402.26 |
| | 41233315 | 31-DEC-09 | Accrual-1800A-R | * | 449.54 | 0.00 | 101.82 | 551.36 |
| | 41232456 | 31-DEC-09 | Accrual-1000A-R | * | 1901.90 | 0.00 | 430.80 | 2332.70 |
| | 41231227 | 31-DEC-09 | Accrual-1210A-M | * | 518.70 | 0.00 | 117.48 | 636.18 |
| | | | Sub Total | | 21452.21 | 30.08 | 4865.74 | 26348.03 |
| JAN-2010 | 21125687#1 | 22-JAN-10 | WYNREWARDS 5% | | 4.80 | 0.00 | 0.98 | 5.78 |
| | 21125386 | 22-JAN-10 | WYNREWARDS 5% | | 529.87 | 0.00 | 112.59 | 642.46 |
| | 41265601 | 31-JAN-10 | Actual-1000A-RO | | 2512.73 | 0.00 | 533.97 | 3046.70 |
| | 30397096#1 | 31-JAN-10 | HARDWARE MAINT | | 8.90 | 0.53 | 2.02 | 11.45 |
| | 41248847 | 31-JAN-10 | 5032A-MSI SOFTW | | 307.98 | 18.48 | 69.39 | 395.85 |
| | 41267664 | 31-JAN-10 | Actual-1800A-RE | | 593.92 | 0.00 | 126.24 | 720.16 |
| | 41267504 | 31-JAN-10 | Actual-1210A-MA | | 685.29 | 0.00 | 145.61 | 830.90 |

Page 5 of 11

| | | | | | | |
|---|---|---|---|---|---|---|
| | 41249822 | 31-JAN-10 | 5715A-HughesNet | 160.00 | 9.60 | 36.02 | 205.62 |
| | | | Sub Total | 4803.49 | 28.61 | 1026.82 | 5858.92 |
| FEB-2010 | 21129108 | 22-FEB-10 | WYNREWARDS 5% | 882.54 | 0.00 | 173.88 | 1056.42 |

Page 4 of 9

Report Date : 18-MAY-11

### ITEMIZED STATEMENT

```
Customer No :   05311-88499-02-DAY
Address :       3620 W. Silversprings Blvd.,Ocala,FL,34475,US
As of Date:     18-MAY-2011
```

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|---|
| | 30404459 | 28-FEB-10 | HARDWARE MAINT | | 8.90 | 0.53 | 1.88 | 11.31 |
| | 41301610 | 28-FEB-10 | Actual-1800A-RE | | 724.36 | 0.00 | 142.73 | 867.09 |
| | 41296238 | 28-FEB-10 | 5032A-MSI SOFTW | | 307.98 | 18.48 | 64.32 | 390.78 |
| | 41300564 | 28-FEB-10 | Actual-1210A-MA | | 835.80 | 0.00 | 164.63 | 1000.43 |
| | 41300138 | 28-FEB-10 | Actual-1000A-RO | | 3064.58 | 0.00 | 603.72 | 3668.30 |
| | 41295429 | 28-FEB-10 | 5715A-HughesNet | | 160.00 | 9.60 | 33.40 | 203.00 |
| | | | Sub Total | | 5984.16 | 28.61 | 1184.56 | 7197.33 |
| MAR-2010 | 30413698 | 12-MAR-10 | '10 GLOBAL CONF | | 999.00 | 0.00 | 182.31 | 1181.31 |
| | 21131601 | 22-MAR-10 | WYNREWARDS 5% | | 814.19 | 0.00 | 148.17 | 962.36 |
| | 30420114 | 30-MAR-10 | Dash for Cash 5 | | (83.38) | 0.00 | 0.00 | (83.38) |
| | 41319458 | 31-MAR-10 | 5052A-HARDWARE | | 8.90 | 0.53 | 1.73 | 11.16 |
| | 41320084 | 31-MAR-10 | 5032A-MSI SOFTW | | 307.98 | 18.48 | 59.43 | 385.89 |
| | 41336092 | 31-MAR-10 | Actual-1800A-RE | | 834.33 | 0.00 | 151.81 | 986.14 |
| | 41320388 | 31-MAR-10 | 5715A-HughesNet | | 160.00 | 9.60 | 30.85 | 200.45 |
| | 41334528 | 31-MAR-10 | Actual-1000A-RO | | 3529.86 | 0.00 | 642.43 | 4172.29 |
| | 41334941 | 31-MAR-10 | Actual-1210A-MA | | 962.69 | 0.00 | 175.20 | 1137.89 |

| | | | | | Sub Total | 7533.57 | 28.61 | 1391.93 | 8954.11 |
|---|---|---|---|---|---|---|---|---|---|
| APR-2010 | 30426331 | 14-APR-10 | ONLINE LRNG LIB | | | 50.00 | 0.00 | 9.13 | 59.13 |
| | 1126147 | 18-APR-10 | GDS & INTERNET | | | 5.35 | 0.00 | 0.87 | 6.22 |
| | TA0126147 | 18-APR-10 | T/A COMMISSIONS | | | 5.31 | 0.00 | 0.87 | 6.18 |
| | 21135247 | 22-APR-10 | WYNREWARDS 5% | | | 1140.49 | 0.00 | 189.92 | 1330.41 |
| | 30432909 | 29-APR-10 | Dash for Cash 5 | | | (97.48) | 0.00 | 0.00 | (97.48) |
| | 41352171 | 30-APR-10 | 5715A-HughesNet | | | 160.00 | 9.60 | 28.23 | 197.83 |
| | 41353510 | 30-APR-10 | 5032A-MSI SOFTW | | | 307.98 | 18.48 | 54.36 | 380.82 |
| | 41371504 | 30-APR-10 | Actual-1800A-RE | | | 477.03 | 0.00 | 79.42 | 556.45 |
| | 41370729 | 30-APR-10 | Actual-1210A-MA | | | 550.42 | 0.00 | 91.65 | 642.07 |
| | 41353022 | 30-APR-10 | 5052A-HARDWARE | | | 8.90 | 0.53 | 1.59 | 11.02 |
| | 41369970 | 30-APR-10 | Actual-1000A-RO | | | 2018.20 | 0.00 | 336.00 | 2354.20 |

Report Date : 18-MAY-11

ITEMIZED STATEMENT
---------------------

Customer No : 05311-88499-02-DAY
Address : 3620 W. Silversprings Blvd.,Ocala,FL,34475,US
As of Date: 18-MAY-2011

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|---|
| | | | | | Sub Total | 4626.20 | 28.61 | 792.04 | 5446.85 |
| JUN-2010 | 30447195 | 04-JUN-10 | OTA Credit | | (262.70) | 0.00 | 0.00 | (262.70) |
| | 21140143 | 22-JUN-10 | WYNREWARDS 5% | | 996.93 | 0.00 | 135.56 | 1132.49 |
| | 30456520 | 30-JUN-10 | Dash for Cash 5 | | (86.03) | 0.00 | 0.00 | (86.03) |

(Page 9 of 14)

| | | | | | | |
|---|---|---|---|---|---|---|
| 41421788 | 30-JUN-10 | 5032A-MSI SOFTW | | 307.98 | 18.48 | 44.41 | 370.87 |
| 41439407 | 30-JUN-10 | Accrual-1800A-R | * | 487.47 | 0.00 | 66.30 | 553.77 |
| 41439130 | 30-JUN-10 | Accrual-1210A-M | * | 562.47 | 0.00 | 76.51 | 638.98 |
| 41437539 | 30-JUN-10 | Accrual-1000A-R | * | 2062.39 | 0.00 | 280.51 | 2342.90 |
| 41420356 | 30-JUN-10 | 5715A-HughesNet | | 160.00 | -9.60 | 23.05 | 192.65 |
| 41419655 | 30-JUN-10 | 5052A-HARDWARE | | 8.90 | 0.53 | 1.29 | 10.72 |

| | | | | | |
|---|---|---|---|---|---|
| Sub Total | 4237.41 | 28.61 | 627.63 | 4893.65 |

| | | | | | | |
|---|---|---|---|---|---|---|
| JUL-2010 | 21143098 | 22-JUL-10 | WYNREWARDS 5% | 393.57 | 0.00 | 47.42 | 440.99 |
| | 30468359 | 29-JUL-10 | Dash for Cash 5 | (84.63) | 0.00 | | (84.63) |
| | 41471558 | 31-JUL-10 | Actual-1800A-RE | 485.49 | 0.00 | 58.52 | 544.01 |
| | 41471323 | 31-JUL-10 | Actual-1210A-MA | 560.18 | 0.00 | 67.48 | 627.66 |
| | 41470337 | 31-JUL-10 | Actual-1000A-RO | 2054.00 | 0.00 | 247.52 | 2301.52 |
| | 41455050 | 31-JUL-10 | 5715A-HughesNet | 160.00 | 9.60 | 20.43 | 190.03 |
| | 30471816 | 31-JUL-10 | ACH072110 | 20.00 | 0.00 | 2.41 | 22.41 |
| | 41453727 | 31-JUL-10 | 5052A-HARDWARE | 8.90 | 0.53 | 1.15 | 10.58 |

| | | | | | |
|---|---|---|---|---|---|
| Sub Total | 3597.51 | 10.13 | 444.93 | 4052.57 |

| | | | | | | |
|---|---|---|---|---|---|---|
| AUG-2010 | 21144998 | 22-AUG-10 | WYNREWARDS 5% | 59.82 | 0.00 | 6.33 | 66.15 |
| | 41502048 | 31-AUG-10 | Actual-1000A-RO | 1149.76 | 0.00 | 121.31 | 1271.07 |
| | 41504962 | 31-AUG-10 | Actual-1210A-NA | 313.57 | 0.00 | 33.07 | 346.64 |
| | 41495301 | 31-AUG-10 | 5715A-HughesNet | 160.00 | 9.60 | 17.88 | 187.48 |
| | 41504232 | 31-AUG-10 | Actual-1800A-RE | 271.76 | 0.00 | 28.67 | 300.43 |
| | 41495931 | 31-AUG-10 | 5052A-HARDWARE | 8.90 | 0.53 | 1.00 | 10.43 |

Page 6 of 9

Report Date : 18-MAY-11

ITEMIZED STATEMENT
--------------------

Customer No : O5311-88499-02-DAY
Address :    3620 W. Silversprings Blvd.,Ocala,FL,34475,US
As of Date:  18-MAY-2011

Page 8 of 11

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| | | | | Sub Total | 1963.81 | 10.13 | 208.26 | 2182.20 |
| SEP-2010 | 21147101 | 22-SEP-10 | WYNREWARDS 5% | | 94.30 | 0.00 | 8.48 | 102.78 |
| | 41535783 | 30-SEP-10 | Actual-1800A-RE | | 301.45 | 0.00 | 27.12 | 328.57 |
| | 41534718 | 30-SEP-10 | Actual-1000A-RO | | 1275.36 | 0.00 | 114.79 | 1390.15 |
| | 41517773 | 30-SEP-10 | 5715A-HughesNet | | 160.00 | 9.60 | 15.26 | 184.86 |
| | 30495748 | 30-SEP-10 | ACH092010 | | 20.00 | 0.00 | 1.80 | 21.80 |
| | 41518652 | 30-SEP-10 | 5052A-HARDWARE | | 8.90 | 0.53 | 0.86 | 10.29 |
| | 41537477 | 30-SEP-10 | Actual-1210A-MA | | 347.83 | 0.00 | 31.30 | 379.13 |
| | 30491413 | 30-SEP-10 | REMEDIAL TRAINI | | 250.00 | 15.00 | 23.86 | 288.86 |
| | | | | Sub Total | 2457.84 | 25.13 | 223.47 | 2706.44 |
| OCT-2010 | 21150144 | 22-OCT-10 | WYNREWARDS 5% | | 118.81 | 0.00 | 8.90 | 127.71 |
| | 41568240 | 31-OCT-10 | Actual-1210A-MA | | 418.26 | 0.00 | 31.36 | 449.62 |
| | 41550490 | 31-OCT-10 | 5715A-HughesNet | | 160.00 | 9.60 | 12.71 | 182.31 |
| | 41553138 | 31-OCT-10 | 5052A-HARDWARE | | 8.90 | 0.53 | 0.71 | 10.14 |
| | 41568259 | 31-OCT-10 | Actual-1800A-RE | | 362.49 | 0.00 | 27.19 | 389.68 |
| | 30505407 | 31-OCT-10 | ACH102110 | | 20.00 | 0.00 | 1.50 | 21.50 |
| | 41569816 | 31-OCT-10 | Actual-1000A-RO | | 1533.61 | 0.00 | 115.01 | 1648.62 |
| | | | | Sub Total | 2622.07 | 10.13 | 197.38 | 2829.58 |
| NOV-2010 | 21154704 | 22-NOV-10 | WYNREWARDS 5% | | 92.42 | 0.00 | 5.50 | 97.92 |
| | 41602249 | 30-NOV-10 | Actual-1210A-MA | | 412.05 | 0.00 | 24.52 | 436.57 |
| | 41584316 | 30-NOV-10 | 5052A-HARDWARE | | 8.90 | 0.53 | 0.56 | 9.99 |
| | 41584914 | 30-NOV-10 | 5715A-HughesNet | | 160.00 | 9.60 | 10.08 | 179.68 |
| | 41602382 | 30-NOV-10 | Actual-1800A-RE | | 357.11 | 0.00 | 21.26 | 378.37 |
| | 41600578 | 30-NOV-10 | Actual-1000A-RO | | 1510.84 | 0.00 | 89.89 | 1600.73 |

(Page 11 of 14)

Report Date : 18-MAY-11

ITEMIZED STATEMENT
------------------

Customer No : 05311-88499-02-DAY
Address   : 3620 W. Silversprings Blvd.,Ocala,FL,34475,US
As of Date:   18-MAY-2011

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|-------------|-------------|---------|---------|-----------|---------------|-------|
| | | | | Sub Total | 2541.32 | 10.13 | 151.81 | 2703.26 |
| DEC-2010 | 21156631 | 22-DEC-10 | WYNREWARDS 5% | | 123.38 | 0.00 | 5.43 | 128.81 |
| | 41633979 | 31-DEC-10 | Actual-1800A-RE | | 289.09 | 0.00 | 12.72 | 301.81 |
| | 41634559 | 31-DEC-10 | Actual-1210A-MA | | 333.56 | 0.00 | 14.67 | 348.23 |
| | 41618353 | 31-DEC-10 | 5052A-HARDWARE | | 8.90 | 0.53 | 0.42 | 9.85 |
| | 41635909 | 31-DEC-10 | Actual-1000A-RO | | 1223.05 | 0.00 | 53.82 | 1276.87 |
| | 41617309 | 31-DEC-10 | 5715A-HughesNet | | 160.00 | 9.60 | 7.46 | 177.06 |
| | | | | Sub Total | 2137.98 | 10.13 | 94.52 | 2242.63 |
| JAN-2011 | 21158764 | 22-JAN-11 | WYNREWARDS 5% | | 252.56 | 0.00 | 10.48 | 263.04 |
| | 41666666 | 31-JAN-11 | Actual-1210A-MA | | 421.43 | 0.00 | 15.59 | 437.02 |
| | 41667995 | 31-JAN-11 | Actual-1000A-RO | | 1545.26 | 0.00 | 57.17 | 1602.43 |
| | 41648274 | 31-JAN-11 | 5715A-HughesNet | | 160.00 | 9.60 | 6.27 | 175.87 |
| | 41667945 | 31-JAN-11 | Actual-1800A-RE | | 365.24 | 0.00 | 13.51 | 378.75 |
| | | | | Sub Total | 2744.49 | 9.60 | 103.02 | 2857.11 |
| FEB-2011 | 30541433 | 14-FEB-11 | SUMMIT 2011 FEE | | 599.00 | 0.00 | 17.98 | 616.98 |
| | 21161162 | 22-FEB-11 | WYNREWARDS 5% | | 170.92 | 0.00 | 4.44 | 175.36 |
| | 41699211 | 28-FEB-11 | Actual-1800A-RE | | 498.33 | 0.00 | 11.46 | 509.79 |
| | 41699451 | 28-FEB-11 | Actual-1210A-MA | | 574.99 | 0.00 | 13.22 | 588.21 |
| | 41685521 | 28-FEB-11 | 5715A-HughesNet | | 160.00 | 9.60 | 3.90 | 173.50 |
| | 41700357 | 28-FEB-11 | Actual-1000A-RO | | 2108.30 | 0.00 | 48.49 | 2156.79 |

| | | | | | Sub Total | 4111.54 | 9.60 | 99.49 | 4220.63 |
|---|---|---|---|---|---|---|---|---|---|

| | | | | | Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|---|
| MAR-2011 | 21164667 | 22-MAR-11 | WYNREWARDS 5% | | 7.81 | 0.00 | 0.09 | 7.90 |
| | 41730025 | 31-MAR-11 | Actual-1000A-RO | | 3323.40 | 0.00 | 24.93 | 3348.33 |

Page 8 of 9

Report Date : 18-MAY-11

ITEMIZED STATEMENT
-------------------

Customer No :   05311-88499-02-DAY
Address   :     3620 W. Silversprings Blvd.,Ocala,FL,34475,US
As of Date:     18-MAY-2011

| Mon-Year | Invoice No | Invoice Date | Description   Accrued | Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|
| | 41732029 | 31-MAR-11 | Actual-1210A-MA | 906.38 | 0.00 | 6.80 | 913.18 |
| | 41716544 | 31-MAR-11 | 5715A-HughesNet | 160.00 | 9.60 | 1.27 | 170.87 |
| | 41731311 | 31-MAR-11 | Actual-1800A-RE | 785.53 | 0.00 | 5.89 | 791.42 |
| | | | Sub Total | 5183.12 | 9.60 | 38.98 | 5231.70 |
| APR-2011 | 41746753 | 30-APR-11 | 5715A-HughesNet | 160.00 | 9.60 | 0.00 | 169.60 |
| | 41767252 | 30-APR-11 | Actual-1210A-MA | 459.65 | 0.00 | 0.00 | 459.65 |
| | 41763570 | 30-APR-11 | Actual-1800A-RE | 398.36 | 0.00 | 0.00 | 398.36 |
| | 41749012 | 30-APR-11 | 5625A-PRM SUPPO | 98.40 | 0.00 | 0.00 | 98.40 |
| | 41765775 | 30-APR-11 | Actual-1000A-RO | 1685.37 | 0.00 | 0.00 | 1685.37 |
| | | | Sub Total | 2801.78 | 9.60 | 0.00 | 2811.38 |

Grand Total    108900.98        463.08      20940.51    130304.57

Requested By: Yelena Danishevsky

* Please note the accruals on your account are estimates.
  Make sure to promptly submit your actual gross room revenue and rooms sold.

******* END OF REPORT *******

Page 9 of 9

UPS CampusShip: Shipment Receipt                                                    Page 1 of 1

**Shipment Receipt**

Transaction Date:                                          23 May 2011
Tracking Number:                                          1Z22445X0294612935

---

**1  Address Information**

| Ship To: | Ship From: | Return Address: |
| --- | --- | --- |
| Ocala Inn Kash, Inc. | Wyndham Hotel Group – 22 Sylvan | Wyndham Hotel Group - 22 Sylvan |
| Harish Patni | Elena Danishevsky | Elena Danishevsky |
| Days Inn | 22 Sylvan Way | 22 Sylvan Way |
| 1447 Ne Expressway | Parsippany NJ 07054 | Parsippany NJ 07054 |
| ATLANTA GA 303292301 | Telephone:973-753-7236 | Telephone:973-753-7236 |
| Telephone:(404) 607-9071 | | |

---

**2  Package Information**

| | Weight | Dimensions / Packaging | Declared Value | Reference Numbers |
| --- | --- | --- | --- | --- |
| 1. | Letter | UPS Letter | | Reference # 1 -006-5072 |

---

**3  UPS Shipping Service and Shipping Options**

Service:
UPS 2nd Day Air

Guaranteed By: [1]
End of Day Wednesday, 5/25/2011

Shipping Fees Subtotal:                     14.55 USD

  Transportation                            12.65 USD
  Fuel Surcharge                             1.90 USD

---

**4  Payment Information**

Bill Shipping Charges to:                   Shipper's Account 22445X

Daily rates were applied to this shipment

Total Charged:                                                      14.55 USD

---

Note: Your invoice may vary from the displayed reference rates.

* For delivery and guarantee information, see the UPS Service Guide. To speak to a customer service representative, call 1-800-PICK-UPS for domestic services and 1-800-782-7892 for international services.

⌧ Close Window

# EXHIBIT "E"



# WYNDHAM
## HOTEL GROUP

Compliance Department
22 Sylvan Way
Parsippany, New Jersey 07054
Ph (973) 753-6000 ● fax (800) 880-9445
www.wyndhamworldwide.com

October 24, 2011

**VIA 2 DAY DELIVERY METHOD**

Mr. Harish Pattni
OCALA INN KASH, INC.
1447 NE Expressway
Atlanta, GA 30329

RE:   **NOTICE OF MONETARY DEFAULT RELATING TO DAYS® UNIT #5311-88499-2
LOCATED IN OCALA, FL (THE "FACILITY")**

Dear Mr. Pattni:

I write on behalf of DAYS INNS WORLDWIDE, INC. ("we," "us," or "our") regarding the License Agreement dated November 1, 2009 between OCALA INN KASH, INC. ("you" or "your") and us (the "Agreement"). We write to give you formal notice that you are in default under the Agreement.

The Agreement requires you to timely pay us the Recurring Fees and other charges relating to your operation of the Facility under the System. Our Financial Services Department advises us that as of October 20, 2011 your account is past due in the amount of **$175,493.58**. We have enclosed an itemized statement detailing the fees past due. Under the Agreement, you have 10 days to pay this amount to us in order to cure your default. If you do not pay this amount within the time permitted, we reserve all rights under the terms of the Agreement including but not limited to termination of the Agreement and your right to operate in the Days System.

This Notice does not modify, replace, or affect any default under the Agreement, or any other default and termination notices, if any, from us or any of our affiliates regarding the Facility. We also reserve the right to take any interim steps permitted under the Agreement because of your default.

We hope you will take this opportunity to resolve your monetary default. If you have any questions regarding your default or how it can be timely cured, please contact Operations Support Desk at (800) 443-3009.

Sincerely yours,

*Suzanne Fenimore*

Suzanne Fenimore
Director
Contracts Compliance, Legal

Enclosure

cc:   Clyde Guirin
Dianna Bayas
Valerie Capers Workman







Report Date : 20-OCT-11

ITEMIZED STATEMENT
------------------

As of Date (DD-MMM-YYYY):  20-OCT-2011
Customer No          :    05311-88499-02-DAY
Category Set         :
Category Group       :
Group No             :
Bankruptcy           :    No Bankruptcy Sites
Disputed             :    No
Finance Charges Included: Yes

Page 1 of 11

Report Date : 20-OCT-11

ITEMIZED STATEMENT
------------------

Customer No :   05311-88499-02-DAY
Address     :   3620 W. Silversprings Blvd.,Ocala,FL,34475,US
As of Date  :   20-OCT-2011

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| JUN-2009 | 2110273#1 | 22-JUN-09 | WYNREWARDS CRDT | | (142.08) | 0.00 | 0.00 | (142.08) |
| | 2110259#1 | 22-JUN-09 | WYNREWARDS 5% | | 2205.73 | 0.00 | 605.06 | 2810.79 |
| | 1009648#11 | 25-JUN-09 | GDS & INTERNET | | 14.05 | 0.00 | 3.00 | 17.05 |
| | TA009648#1 | 25-JUN-09 | T/A COMMISSIONS | | 23.82 | 0.00 | 5.08 | 28.90 |
| | 1028436#1 | 30-JUN-09 | ROYALTY FEE : 1 | | 2967.80 | 0.00 | 1262.82 | 4230.62 |
| | 1011770#1 | 30-JUN-09 | MSI SOFTWARE MA | | 293.32 | 19.07 | 132.93 | 445.32 |
| | 1029572#1 | 30-JUN-09 | RESERVATION FEE | | 1365.19 | 0.00 | 580.90 | 1946.09 |
| | 1029537#1. | 30-JUN-09 | MARKETING FEE : | | 890.34 | 0.00 | 378.88 | 1269.22 |

(Page 3 of 15)

Page 2 of 13

|  | 41011065#1 | 30-JUN-09 | DIRECWAY:1:Fran | 150.00 | 9.75 | 68.07 | 227.82 |
|---|---|---|---|---|---|---|---|
|  |  |  | Sub Total | 7768.17 | 28.82 | 3036.74 | 10833.73 |
| JUL-2009 | 2110727#1 | 22-JUL-09 | WYNREWARDS CRDT | (134.76) | 0.00 | 0.00 | (134.76) |
|  | 2110809#1 | 22-JUL-09 | WYNREWARDS 5% | 1660.18 | 0.00 | 680.61 | 2340.79 |
|  | TM0015516#1 | 23-JUL-09 | MEMBER BENEFIT | 11.52 | 0.00 | 4.72 | 16.24 |
|  | 015516#11 | 23-JUL-09 | GDS & INTERNET | 53.20 | 0.00 | 21.76 | 74.96 |
|  | TR0015516#1 | 23-JUL-09 | TMC / CONSORTIA | 3.76 | 0.00 | 1.58 | 5.34 |
|  | TA0015516#1 | 23-JUL-09 | T/A COMMISSIONS | 242.10 | 0.00 | 99.22 | 341.32 |
|  | 4106087#1 | 31-JUL-09 | RESERVATION FEE | 1055.70 | 0.00 | 432.83 | 1488.53 |
|  | 41061080#1 | 31-JUL-09 | MARKETING FEE : | 688.50 | 0.00 | 282.28 | 970.78 |
|  | 41061932#1 | 31-JUL-09 | ROYALTY FEE : 1 | 2295.00 | 0.00 | 940.96 | 3235.96 |
|  | 41045906#1 | 31-JUL-09 | DIRECWAY:1:Fran | 150.00 | 9.75 | 65.59 | 225.34 |
|  | 41044812#1 | 31-JUL-09 | MSI SOFTWARE MA | 293.32 | 19.07 | 128.08 | 440.47 |
|  |  |  | Sub Total | 6318.52 | 28.82 | 2657.63 | 9004.97 |
| AUG-2009 | 2110920#1 | 22-AUG-09 | WYNREWARDS CRDT | (239.19) | 0.00 | 0.00 | (239.19) |
|  | 2110808#1 | 22-AUG-09 | WYNREWARDS 5% | 1202.78 | 0.00 | 474.45 | 1677.23 |
|  | 1022565#11 | 24-AUG-09 | GDS & INTERNET | 30.45 | 0.00 | 12.03 | 42.48 |
|  | TA0022565#1 | 24-AUG-09 | T/A COMMISSIONS | 70.69 | 0.00 | 27.94 | 98.63 |
|  | TM0022565#1 | 24-AUG-09 | MEMBER BENEFIT | 19.18 | 0.00 | 7.62 | 26.80 |
|  | 41096166#1 | 31-AUG-09 | MARKETING FEE : | 565.95 | 0.00 | 223.24 | 789.19 |
|  | 41077612#1 | 31-AUG-09 | DIRECWAY:1:Fran | 150.00 | 9.75 | 63.11 | 222.86 |
|  | 1079523#1 | 31-AUG-09 | MSI SOFTWARE MA | 293.32 | 19.07 | 123.24 | 435.63 |
|  | 41096686#1 | 31-AUG-09 | ROYALTY FEE : 1 | 1886.49 | 0.00 | 744.24 | 2630.73 |

Page 2 of 11

Report Date : 20-OCT-11

ITEMIZED STATEMENT
-------------------

Customer No :  05311-88499-02-DAY
Address        3620 W. Silversprings Blvd.,Ocala,FL,34475,US
As of Date:    20-OCT-2011

(Page 4 of 15)

Page 3 of 13

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|-----------|----------------|-------|
|  | 109718401 | 31-AUG-09 | RESERVATION FEE |  | 867.79 | 0.00 | 342.36 | 1210.15 |
|  |  |  | Sub Total |  | 4847.46 | 28.82 | 2018.23 | 6894.51 |
| SEP-2009 | A00296801 | 22-SEP-09 | T/A COMMISSIONS |  | 94.97 | 0.00 | 34.47 | 129.44 |
|  | 029680411 | 22-SEP-09 | GDS & INTERNET |  | 32.45 | 0.00 | 11.77 | 44.22 |
|  | 11151064#1 | 22-SEP-09 | WYNREWARDS CRDT |  | (284.83) | 0.00 | 0.00 | (284.83) |
|  | 2111320541 | 22-SEP-09 | WYNREWARDS 5% |  | 1142.91 | 0.00 | 415.48 | 1558.39 |
|  | 1131877#1 | 28-SEP-09 | MARKETING FEE : |  | 559.87 | 0.00 | 203.56 | 763.43 |
|  | 1129352#1 | 28-SEP-09 | ROYALTY FEE : 1 |  | 1866.25 | 0.00 | 678.40 | 2544.65 |
|  | 1130274#1 | 28-SEP-09 | RESERVATION FEE |  | 858.47 | 0.00 | 312.12 | 1170.59 |
|  | 1113185#1 | 30-SEP-09 | MSI SOFTWARE MA |  | 307.99 | 20.02 | 119.18 | 447.19 |
|  | 1114604#1 | 30-SEP-09 | DIRECWAY:1:Fran |  | 150.00 | 9.75 | 58.15 | 217.90 |
|  |  |  | Sub Total |  | 4728.08 | 29.77 | 1833.13 | 6590.98 |
| OCT-2009 | 21117583#1 | 22-OCT-09 | WYNREWARDS 5% |  | 1157.28 | 0.00 | 386.56 | 1543.84 |
|  | 21115663#1 | 22-OCT-09 | WYNREWARDS CRDT |  | (64.99) | 0.00 | 0.00 | (64.99) |
|  | A00386601#1 | 26-OCT-09 | T/A COMMISSIONS |  | 75.31 | 0.00 | 25.18 | 100.49 |
|  | 036860411 | 26-OCT-09 | GDS & INTERNET |  | 19.40 | 0.00 | 6.46 | 25.86 |
|  | M00368604#1 | 26-OCT-09 | MEMBER BENEFIT |  | 10.62 | 0.00 | 3.50 | 14.12 |
|  | 1177191#1 | 31-OCT-09 | ROYALTY FEE:Fra |  | 1991.20 | 0.00 | 665.04 | 2656.24 |
|  | 1146940#1 | 31-OCT-09 | MSI SOFTWARE MA |  | 307.99 | 20.02 | 109.50 | 437.51 |
|  | 1178379#1 | 31-OCT-09 | MARKETING FEE:F |  | 597.36 | 0.00 | 199.52 | 796.88 |
|  | 1178769#1 | 31-OCT-09 | RESERVATION FEE |  | 915.95 | 0.00 | 305.96 | 1221.91 |
|  | 1149112#1 | 31-OCT-09 | DIRECWAY:1:Fran |  | 150.00 | 9.75 | 53.44 | 213.19 |
|  |  |  | Sub Total |  | 5160.12 | 29.77 | 1755.16 | 6945.05 |
| NOV-2009 | 1042391#1 | 04-NOV-09 | GUEST SRVCS TRA |  | 100.00 | 0.00 | 33.40 | 133.40 |
|  | 1042400#1 | 04-NOV-09 | GUEST SATISFACT |  | 23.50 | 0.00 | 7.78 | 31.28 |
|  | 1042551#1 | 11-NOV-09 | GUEST SRVCS TRA |  | (100.00) | 0.00 | 0.00 | (100.00) |
|  | 1042715#1 | 16-NOV-09 | GUEST SATISFACT |  | (23.50) | 0.00 | 0.00 | (23.50) |

Page 3 of 11

(Page 5 of 15)

Report Date : 20-OCT-11

ITEMIZED STATEMENT
-----------------

Customer No :   05311-88499-02-DAY
Address :     3620 W. Silversprings Blvd.,Ocala,FL,34475,US
As of Date:    20-OCT-2011

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
|          | TA004242241 | 22-NOV-09 | T/A COMMISSIONS |  | 11.17 | 0.00 | 3.55 | 14.72 |
|          | 042422411 | 22-NOV-09 | GDS & INTERNET |  | 32.45 | 0.00 | 10.32 | 42.77 |
|          | 2119806#1 | 22-NOV-09 | WYNREWARDS 5% |  | 778.52 | 0.00 | 248.01 | 1026.53 |
|          | 1181835#1 | 30-NOV-09 | DIRECWAY:1:Fran |  | 150.00 | 9.75 | 50.96 | 210.71 |
|          | 1179972#1 | 30-NOV-09 | MSI SOFTWARE MA |  | 307.99 | 20.02 | 104.42 | 432.43 |
|          |           |              | Sub Total |  | 1280.13 | 29.77 | 458.44 | 1768.34 |
| DEC-2009 | 30377724 | 22-DEC-09 | RNW 5157A FL OC |  | 17500.00 | 0.00 | 5302.50 | 22802.50 |
|          | 21121696 | 22-DEC-09 | WYNREWARDS 5% |  | 591.47 | 0.00 | 179.22 | 770.69 |
|          | 100039#1 | 24-DEC-09 | GDS & INTERNET |  | 5.35 | 0.00 | 1.58 | 6.93 |
|          | TA0100039#1 | 24-DEC-09 | T/A COMMISSIONS |  | 2.43 | 0.00 | 0.78 | 3.21 |
|          | 0386558 | 31-DEC-09 | CK#1386 |  | 20.00 | 0.00 | 6.06 | 26.06 |
|          | 0383476#1 | 31-DEC-09 | DEC-09 PRORATE |  | 154.84 | 10.06 | 49.99 | 214.89 |
|          | 1217115 | 31-DEC-09 | 5032A-MSI SOFTW |  | 307.98 | 20.02 | 99.34 | 427.34 |
|          | 1233315 | 31-DEC-09 | Accrual-1800A-R | * | 449.54 | 0.00 | 136.21 | 585.75 |
|          | 1232456 | 31-DEC-09 | Accrual-1000A-R | * | 1901.90 | 0.00 | 576.30 | 2478.20 |
|          | 1231227 | 31-DEC-09 | Accrual-1210A-M | * | 518.70 | 0.00 | 157.16 | 675.86 |
|          |           |              | Sub Total |  | 21452.21 | 30.08 | 6509.14 | 27991.43 |
| JAN-2010 | 2112568741 | 22-JAN-10 | WYNREWARDS 5% |  | 4.80 | 0.00 | 1.33 | 6.13 |
|          | 21125386 | 22-JAN-10 | WYNREWARDS 5% |  | 529.87 | 0.00 | 153.12 | 682.99 |
|          | 1265601 | 31-JAN-10 | Actual-1000A-RO |  | 2512.73 | 0.00 | 726.20 | 3238.93 |
|          | 0397096#1 | 31-JAN-10 | HARDWARE MAINT |  | 8.90 | 0.53 | 2.75 | 12.18 |
|          | 1249822 | 31-JAN-10 | 5715A-HughesNet |  | 160.00 | 9.60 | 48.99 | 218.59 |
|          | 1267664 | 31-JAN-10 | Actual-1800A-RE |  | 593.92 | 0.00 | 171.69 | 765.61 |
|          | 1267504 | 31-JAN-10 | Actual-1210A-MA |  | 685.29 | 0.00 | 198.03 | 883.32 |

(Page 6 of 15)

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | 41248847 | 31-JAN-10 | 5032A-MSI SOFTW | 307.98 | 18.48 | 94.37 | 420.83 |
| | | | Sub Total | 4803.49 | 28.61 | 1396.48 | 6228.58 |
| FEB-2010 | 21129108 | 22-FEB-10 | WYNREWARDS 5% | 882.54 | 0.00 | 241.40 | 1123.94 |

Page 4 of 11

Report Date : 20-OCT-11

### ITEMIZED STATEMENT
--------------------

Customer No : 05311-88499-02-DAY
Address    : 3620 W. Silversprings Blvd.,Ocala,FL,34475,US
As of Date : 20-OCT-2011

| Mon-Year | Invoice No | Invoice Date | Description   Accrued | Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|
| | 30404459 | 28-FEB-10 | HARDWARE MAINT | 8.90 | 0.53 | 2.61 | 12.04 |
| | 41301610 | 28-FEB-10 | Actual-1800A-RE | 724.36 | 0.00 | 198.16 | 922.52 |
| | 41296238 | 28-FEB-10 | 5032A-MSI SOFTW | 307.98 | 18.48 | 89.30 | 415.76 |
| | 41300564 | 28-FEB-10 | Actual-1210A-MA | 835.80 | 0.00 | 228.56 | 1064.36 |
| | 41300138 | 28-FEB-10 | Actual-1000A-RO | 3064.58 | 0.00 | 838.16 | 3902.74 |
| | 41295429 | 28-FEB-10 | 5715A-HughesNet | 160.00 | 9.60 | 46.37 | 215.97 |
| | | | Sub Total | 5984.16 | 28.61 | 1644.56 | 7657.33 |
| MAR-2010 | 30413698 | 12-MAR-10 | '10 GLOBAL CONF | 999.00 | 0.00 | 258.73 | 1257.73 |
| | 21131601 | 22-MAR-10 | WYNREWARDS 5% | 814.19 | 0.00 | 210.45 | 1024.64 |
| | 30420114 | 30-MAR-10 | Dash for Cash 5 | (83.38) | 0.00 | 0.00 | (83.38) |
| | 41319458 | 31-MAR-10 | 5052A-HARDWARE | 8.90 | 0.53 | 2.46 | 11.89 |
| | 41334941 | 31-MAR-10 | Actual-1210A-MA | 962.69 | 0.00 | 248.84 | 1211.53 |
| | 41336092 | 31-MAR-10 | Actual-1800A-RE | 834.33 | 0.00 | 215.62 | 1049.95 |
| | 41320084 | 31-MAR-10 | 5032A-MSI SOFTW | 307.98 | 18.48 | 84.41 | 410.87 |
| | 41334528 | 31-MAR-10 | Actual-1000A-RO | 3529.86 | 0.00 | 912.46 | 4442.32 |
| | 41320388 | 31-MAR-10 | 5715A-HughesNet | 160.00 | 9.60 | 43.82 | 213.42 |

| | | | | Sub Total | 7533.57 | 28.61 | 1976.79 | 9538.97 |
|---|---|---|---|---|---|---|---|---|
| APR-2010 | 30426331 | 14-APR-10 | ONLINE LANG LIB | | 50.00 | 0.00 | 12.97 | 62.97 |
| | TA0126147 | 18-APR-10 | T/A COMMISSIONS | | 5.31 | 0.00 | 1.27 | 6.58 |
| | 1126147 | 18-APR-10 | GDS & INTERNET | | 5.35 | 0.00 | 1.27 | 6.62 |
| | 21135247 | 22-APR-10 | WYNREWARDS 5% | | 1140.49 | 0.00 | 277.18 | 1417.67 |
| | 30432909 | 29-APR-10 | Dash for Cash 5 | | (97.48) | 0.00 | 0.00 | (97.48) |
| | 21352171 | 30-APR-10 | 5715A-HughesNet | | 160.00 | 9.60 | 41.20 | 210.80 |
| | 21371504 | 30-APR-10 | Actual-1800A-RE | | 477.03 | 0.00 | 115.91 | 592.94 |
| | 41353510 | 30-APR-10 | 5032A-HSI SOFTW | | 307.98 | 18.48 | 79.34 | 405.80 |
| | 41353022 | 30-APR-10 | 5052A-HARDWARE | | 8.90 | 0.53 | 2.32 | 11.75 |
| | 41369970 | 30-APR-10 | Actual-1000A-RO | | 2018.20 | 0.00 | 490.38 | 2508.58 |
| | 41370729 | 30-APR-10 | Actual-1210A-HA | | 550.42 | 0.00 | 133.76 | 684.18 |

Page 5 of 11

Report Date : 20-OCT-11

ITEMIZED STATEMENT
-----------------

Customer No :   05311-88499-02-DAY
Address :   3620 W. Silversprings Blvd.,Ocala,FL,34475,US
As of Date:   20-OCT-2011

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|---|
| | | | | Sub Total | 4626.20 | 28.61 | 1155.60 | 5810.41 |
| JUN-2010 | 30447195 | 04-JUN-10 | OTA Credit | | (262.70) | 0.00 | 0.00 | (262.70) |
| | 21140143 | 22-JUN-10 | WYNREWARDS 5% | | 996.93 | 0.00 | 211.81 | 1208.74 |
| | 30456520 | 30-JUN-10 | Dash for Cash 5 | | (86.03) | 0.00 | 0.00 | (86.03) |

Page 7 of 13

| | | | | | | |
|---|---|---|---|---|---|---|
| 41439407 | 30-JUN-10 | Actual-1800A-RE | 487.48 | 0.00 | 103.60 | 591.08 |
| 41439130 | 30-JUN-10 | Actual-1210A-MA | 562.48 | 0.00 | 119.55 | 682.03 |
| 41437539 | 30-JUN-10 | Actual-1000A-RO | 2062.41 | 0.00 | 438.30 | 2600.71 |
| 41421788 | 30-JUN-10 | 5032A-MSI SOFTW | 307.98 | 18.48 | 69.39 | 395.85 |
| 41420356 | 30-JUN-10 | 5715A-HughesNet | 160.00 | 9.60 | 36.02 | 205.62 |
| 41419655 | 30-JUN-10 | 5052A-HARDWARE | 8.90 | 0.53 | 2.02 | 11.45 |
| | | Sub Total | 4237.45 | 28.61 | 980.69 | 5246.75 |
| JUL-2010  21143098 | 22-JUL-10 | WYNREWARDS 5% | 393.57 | 0.00 | 77.52 | 471.09 |
| 30468359 | 29-JUL-10 | Dash for Cash 5 | (84.63) | 0.00 | 0.00 | (84.63) |
| 41455050 | 31-JUL-10 | 5715A-HughesNet | 160.00 | 9.60 | 33.40 | 203.00 |
| 41471323 | 31-JUL-10 | Actual-1210A-MA | 560.18 | 0.00 | 110.32 | 670.50 |
| 41470337 | 31-JUL-10 | Actual-1000A-RO | 2054.00 | 0.00 | 404.66 | 2458.66 |
| 41471558 | 31-JUL-10 | Actual-1800A-RE | 485.49 | 0.00 | 95.67 | 581.16 |
| 30471816 | 31-JUL-10 | ACH072110 | 20.00 | 0.00 | 3.94 | 23.94 |
| 41453727 | 31-JUL-10 | 5052A-HARDWARE | 8.90 | 0.53 | 1.88 | 11.31 |
| | | Sub Total | 3597.51 | 10.13 | 727.39 | 4335.03 |
| AUG-2010  21144998 | 22-AUG-10 | WYNREWARDS 5% | 59.82 | 0.00 | 10.92 | 70.74 |
| 41495301 | 31-AUG-10 | 5715A-HughesNet | 160.00 | 9.60 | 30.85 | 200.45 |
| 41504232 | 31-AUG-10 | Actual-1800A-RE | 271.76 | 0.00 | 49.46 | 321.22 |
| 41504962 | 31-AUG-10 | Actual-1210A-MA | 313.57 | 0.00 | 57.05 | 370.62 |
| 41502048 | 31-AUG-10 | Actual-1000A-RO | 1149.76 | 0.00 | 209.27 | 1359.03 |
| 41495931 | 31-AUG-10 | 5052A-HARDWARE | 8.90 | 0.53 | 1.73 | 11.16 |

Page 6 of 11

Report Date : 20-OCT-11

ITEMIZED STATEMENT
-----------------

Customer No : 05311-88499-02-DAY
Address : 3620 W. Silversprings. Blvd.,Ocala,FL,34475,US
As of Date : 20-OCT-2011

Page 8 of 13

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| | | | | Sub Total | 1963.81 | 10.13 | 359.28 | 2333.22 |
| SEP-2010 | 21147101 | 22-SEP-10 | WYNREWARDS 5% | | 94.30 | 0.00 | 15.68 | 109.98 |
| | 41535783 | 30-SEP-10 | Actual-1800A-RE | | 301.45 | 0.00 | 50.17 | 351.62 |
| | 30491413 | 30-SEP-10 | REMEDIAL TRAINI | | 250.00 | 15.00 | 44.15 | 309.15 |
| | 41518652 | 30-SEP-10 | 5052A-HARDWARE | | 8.90 | 0.53 | 1.59 | 11.02 |
| | 41537477 | 30-SEP-10 | Actual-1210A-MA | | 347.83 | 0.00 | 57.91 | 405.74 |
| | 41534718 | 30-SEP-10 | Actual-1000A-RO | | 1275.36 | 0.00 | 212.36 | 1487.72 |
| | 30495748 | 30-SEP-10 | ACH092010 | | 20.00 | 0.00 | 3.33 | 23.33 |
| | 41517773 | 30-SEP-10 | 5715A-HughesNet | | 160.00 | 9.60 | 28.23 | 197.83 |
| | | | | Sub Total | 2457.84 | 25.13 | 413.42 | 2896.39 |
| OCT-2010 | 21150144 | 22-OCT-10 | WYNREWARDS 5% | | 118.81 | 0.00 | 17.98 | 136.79 |
| | 30505407 | 31-OCT-10 | ACH102110 | | 20.00 | 0.00 | 3.03 | 23.03 |
| | 41568259 | 31-OCT-10 | Actual-1800A-RE | | 362.49 | 0.00 | 54.93 | 417.42 |
| | 41553138 | 31-OCT-10 | 5052A-HARDWARE | | 8.90 | 0.53 | 1.44 | 10.87 |
| | 41550490 | 31-OCT-10 | 5715A-HughesNet | | 160.00 | 9.60 | 25.68 | 195.28 |
| | 41569816 | 31-OCT-10 | Actual-1000A-RO | | 1533.61 | 0.00 | 232.32 | 1765.93 |
| | 41568240 | 31-OCT-10 | Actual-1210A-MA | | 418.26 | 0.00 | 63.34 | 481.60 |
| | | | | Sub Total | 2622.07 | 10.13 | 398.72 | 3030.92 |
| NOV-2010 | 21154704 | 22-NOV-10 | WYNREWARDS 5% | | 92.42 | 0.00 | 12.57 | 104.99 |
| | 41602249 | 30-NOV-10 | Actual-1210A-MA | | 412.05 | 0.00 | 56.05 | 468.10 |
| | 41584316 | 30-NOV-10 | 5052A-HARDWARE | | 8.90 | 0.53 | 1.29 | 10.72 |
| | 41602382 | 30-NOV-10 | Actual-1800A-RE | | 357.11 | 0.00 | 48.60 | 405.71 |
| | 41584914 | 30-NOV-10 | 5715A-HughesNet | | 160.00 | 9.60 | 23.05 | 192.65 |
| | 41600578 | 30-NOV-10 | Actual-1000A-RO | | 1510.84 | 0.00 | 205.47 | 1716.31 |

Page 7 of 11

Page 9 of 13

Report Date : 20-OCT-11

ITEMIZED STATEMENT
-----------------

Customer No : 05311-88499-02-DAY
Address : 3620 W. Silversprings Blvd.,Ocala,FL,34475,US
As of Date: 20-OCT-2011

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| | | | | Sub Total | 2541.32 | 10.13 | 347.03 | 2898.48 |
| DEC-2010 | 21156631 | 22-DEC-10 | WYNREWARDS 5% | | 123.38 | 0.00 | 14.86 | 138.24 |
| | 41617309 | 31-DEC-10 | 5715A-HughesNet | | 160.00 | 9.60 | 20.43 | 190.03 |
| | 41634559 | 31-DEC-10 | Actual-1210A-MA | | 333.56 | 0.00 | 40.18 | 373.74 |
| | 41633979 | 31-DEC-10 | Actual-1800A-RE | | 289.09 | 0.00 | 34.84 | 323.93 |
| | 41618353 | 31-DEC-10 | 5052A-HARDWARE | | 8.90 | 0.53 | 1.15 | 10.58 |
| | 41635909 | 31-DEC-10 | Actual-1000A-RO | | 1223.05 | 0.00 | 147.40 | 1370.45 |
| | | | | Sub Total | 2137.98 | 10.13 | 258.86 | 2406.97 |
| JAN-2011 | 21158764 | 22-JAN-11 | WYNREWARDS 5% | | 252.56 | 0.00 | 29.79 | 282.35 |
| | 41648274 | 31-JAN-11 | 5715A-HughesNet | | 160.00 | 9.60 | 19.24 | 188.84 |
| | 41666666 | 31-JAN-11 | Actual-1210A-MA | | 421.43 | 0.00 | 47.82 | 469.25 |
| | 41667945 | 31-JAN-11 | Actual-1800A-RE | | 365.24 | 0.00 | 41.45 | 406.69 |
| | 41667995 | 31-JAN-11 | Actual-1000A-RO | | 1545.26 | 0.00 | 175.38 | 1720.64 |
| | | | | Sub Total | 2744.49 | 9.60 | 313.68 | 3067.77 |
| FEB-2011 | 30541433 | 14-FEB-11 | SUMMIT 2011 FEE | | 599.00 | 0.00 | 63.80 | 662.80 |
| | 21161162 | 22-FEB-11 | WYNREWARDS 5% | | 170.92 | 0.00 | 17.51 | 188.43 |
| | 41685521 | 28-FEB-11 | 5715A-HughesNet | | 160.00 | 9.60 | 16.87 | 186.47 |
| | 41700357 | 28-FEB-11 | Actual-1000A-RO | | 2108.30 | 0.00 | 209.77 | 2318.07 |
| | 41699451 | 28-FEB-11 | Actual-1210A-MA | | 574.99 | 0.00 | 57.19 | 632.18 |
| | 41699211 | 28-FEB-11 | Actual-1800A-RE | | 498.33 | 0.00 | 49.56 | 547.89 |

| | | | | | Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|---|
| | | | Sub Total | | 4111.54 | 9.60 | 414.70 | 4535.84 |
| MAR-2011 | 21164667 | 22-MAR-11 | WYNREWARDS 5% | | 7.81 | 0.00 | 0.69 | 8.50 |
| | 41732029 | 31-MAR-11 | Actual-1210A-MA | | 906.38 | 0.00 | 76.15 | 982.53 |

Page 8 of 11

Report Date : 20-OCT-11

ITEMIZED STATEMENT
-----------------

Customer No : 05311-88499-02-DAY
Address :    3620 W. Silversprings Blvd.,Ocala,FL,34475,US
As of Date:  20-OCT-2011

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|---|
| | 41716544 | 31-MAR-11 | 5715A-HughesNet | | 160.00 | 9.60 | 14.24 | 183.84 |
| | 41730025 | 31-MAR-11 | Actual-1000A-RO | | 3323.40 | 0.00 | 279.16 | 3602.56 |
| | 41731311 | 31-MAR-11 | Actual-1800A-RE | | 785.53 | 0.00 | 65.99 | 851.52 |
| | | | Sub Total | | 5183.12 | 9.60 | 436.23 | 5628.95 |
| APR-2011 | 41765775 | 30-APR-11 | Actual-1000A-RO | | 1685.37 | 0.00 | 116.28 | 1801.65 |
| | 41749012 | 30-APR-11 | 5625A-PRM SUPPO | | 98.40 | 0.00 | 6.81 | 105.21 |
| | 41746753 | 30-APR-11 | 5715A-HughesNet | | 160.00 | 9.60 | 11.70 | 181.30 |
| | 41763570 | 30-APR-11 | Actual-1800A-RE | | 398.36 | 0.00 | 27.49 | 425.85 |
| | 41767252 | 30-APR-11 | Actual-1210A-MA | | 459.65 | 0.00 | 31.70 | 491.35 |
| | | | Sub Total | | 2801.78 | 9.60 | 193.98 | 3005.36 |
| MAY-2011 | 21169448 | 22-MAY-11 | WYNREWARDS 5% | | 23.45 | 0.00 | 1.35 | 24.80 |
| | 41794770 | 31-MAY-11 | Actual-1210A-MA | | 336.15 | 0.00 | 17.98 | 354.13 |

| | Invoice No | Date | Description | | Billing | Amount Tax | Finance Charges | Total |
|---|---|---|---|---|---|---|---|---|
| | 41794826 | 31-MAY-11 | Actual-1800A-RE | | 356.39 | 0.00 | 19.06 | 375.45 |
| | 41778332 | 31-MAY-11 | 5625A-PRM SUPPO | | 98.40 | 0.00 | 5.28 | 103.68 |
| | 41792932 | 31-MAY-11 | Actual-1000A-RO | | 1232.54 | 0.00 | 65.93 | 1298.47 |
| | 41778530 | 31-MAY-11 | 5715A-HughesNet | | 160.00 | 9.60 | 9.07 | 178.67 |
| | | | | Sub Total | 2206.93 | 9.60 | 118.67 | 2335.20 |
| JUN-2011 | 30594433 | 06-JUN-11 | PM SYSTEM TRAIN | | 12655.00 | 0.00 | 639.08 | 13294.08 |
| | 30594432 | 06-JUN-11 | PM SYSTEM SOFTW | | 5135.25 | 308.12 | 274.89 | 5718.26 |
| | 30594431 | 06-JUN-11 | SoftHotel Hardw | | 1015.93 | 60.96 | 54.38 | 1131.27 |
| | 30594430 | 06-JUN-11 | PM SYSTEM HW WR | | 303.19 | 0.00 | 15.31 | 318.50 |
| | 30594429 | 06-JUN-11 | EQUIP SHIPPING | | 79.06 | 0.00 | 4.01 | 83.07 |
| | 21174387 | 22-JUN-11 | WYNREWARDS 5% | | 43.19 | 0.00 | 1.84 | 45.03 |
| | 41826390 | 30-JUN-11 | Actual-1800A-RE | | 605.59 | 0.00 | 23.31 | 628.90 |
| | 41810334 | 30-JUN-11 | 5715A-HughesNet | | 160.00 | 9.60 | 6.53 | 176.13 |
| | 41824971 | 30-JUN-11 | Actual-1210A-MA | | 394.95 | 0.00 | 15.20 | 410.15 |
| | 41811927 | 30-JUN-11 | 5625A-PRM SUPPO | | 98.40 | 0.00 | 3.80 | 102.20 |

Page 9 of 11

Report Date : 20-OCT-11

### ITEMIZED STATEMENT

Customer No :   05311-88499-02-DAY
Address :       3620 W. Silversprings Blvd., Ocala, FL, 34475, US
As of Date:     20-OCT-2011

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | Finance Charges | Total |
|---|---|---|---|---|---|---|---|---|
| | 41824141 | 30-JUN-11 | Actual-1000A-RO | | 1448.16 | 0.00 | 55.76 | 1503.92 |
| | | | | Sub Total | 21938.72 | 378.68 | 1094.11 | 23411.51 |
| JUL-2011 | 41843339 | 31-JUL-11 | 5715A-HughesNet | | 160.00 | 9.60 | 3.90 | 173.50 |
| | 41861685 | 31-JUL-11 | Actual-1800A-RE | | 830.50 | 0.00 | 19.10 | 849.60 |

|  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|
|  | 41842437 | 31-JUL-11 | 5625A-PRM SUPPO | 98.40 | 0.00 | 2.27 | 100.67 |
|  | 41859938 | 31-JUL-11 | Actual-1210A-MA | 541.63 | 0.00 | 12.45 | 554.08 |
|  | 41859191 | 31-JUL-11 | Actual-1000A-RO | 1985.98 | 0.00 | 45.68 | 2031.66 |
|  |  |  | Sub Total | 3616.51 | 9.60 | 83.40 | 3709.51 |
| AUG-2011 | 41889818 | 31-AUG-11 | Actual-1000A-RO | 1348.73 | 0.00 | 10.12 | 1358.85 |
|  | 41888627 | 31-AUG-11 | Actual-1210A-MA | 367.84 | 0.00 | 2.76 | 370.60 |
|  | 41888357 | 31-AUG-11 | Actual-1800A-RE | 564.02 | 0.00 | 4.23 | 568.25 |
|  | 41875074 | 31-AUG-11 | 5625A-PRM SUPPO | 98.39 | 0.00 | 0.74 | 99.13 |
|  | 41874039 | 31-AUG-11 | 5715A-HughesNet | 160.00 | 9.60 | 1.27 | 170.87 |
|  |  |  | Sub Total | 2538.98 | 9.60 | 19.12 | 2567.70 |
| SEP-2011 | 30617968 | 13-SEP-11 | 2012 ALLIANCE D | 900.00 | 0.00 | 0.00 | 900.00 |
|  | 30622744 | 15-SEP-11 | ONLINE LRNG LIB | 50.00 | 0.00 | 0.00 | 50.00 |
|  | 30629276 | 28-SEP-11 | GLOBAL CONFEREN | 999.00 | 0.00 | 0.00 | 999.00 |
|  | 41923265 | 30-SEP-11 | Actual-1210A-MA | 418.99 | 0.00 | 0.00 | 418.99 |
|  | 41922227 | 30-SEP-11 | Actual-1000A-RO | 1536.31 | 0.00 | 0.00 | 1536.31 |
|  | 41923991 | 30-SEP-11 | Actual-1800A-RE | 642.46 | 0.00 | 0.00 | 642.46 |
|  | 41911542 | 30-SEP-11 | 5625A-PRM SUPPO | 103.32 | 0.00 | 0.00 | 103.32 |
|  | 41910384 | 30-SEP-11 | 5715A-HughesNet | 160.00 | 9.60 | 0.00 | 169.60 |
|  |  |  | Sub Total | 4810.08 | 9.60 | 0.00 | 4819.68 |

Page 10 of 11

Report Date : 20-OCT-11

ITEMIZED STATEMENT
--------------------

Customer No : 05311-88499-02-DAY
Address : 3620 W. Silversprings Blvd.,Ocala,FL,34475,US
As of Date: 20-OCT-2011

Page 13 of 13

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| | | | | Grand Total | 144012.24 | 880.16 | 30601.18 | 175493.58 |

Requested By: Yelena Danishevsky

\* Please note the accruals on your account are estimates.
Make sure to promptly submit your actual gross room revenue and rooms sold.

\*\*\*\*\*\*\* END OF REPORT \*\*\*\*\*\*\*

https://oracle.wyndhamworldwide.com:8005/OA_CGI/FNDWRR.exe?temp_id=3360128835          10/20/2011

UPS CampusShip: Shipment Receipt

Page 1 of 1

## Shipment Receipt

| Transaction Date: | 24 Oct 2011 |
|---|---|
| Tracking Number: | 1Z22445X0298737179 |

### 1 Address Information

| Ship To: | Ship From: | Return Address: |
|---|---|---|
| Ocala Inn Kash, Inc. | Wyndham Hotel Group - 22 Sylvan | Wyndham Hotel Group - 22 Sylvan |
| Harish Pattni | Elena Danishevsky | Elena Danishevsky |
| Days Inn | 22 Sylvan Way | 22 Sylvan Way |
| 1447 Ne Expressway | Parsippany NJ 07054 | Parsippany NJ 07054 |
| ATLANTA GA 303292301 | Telephone:973-753-7236 | Telephone:973-753-7236 |
| Telephone:(404) 607-9071 | | |

### 2 Package Information

| Weight | Dimensions / Packaging | Declared Value | Reference Numbers |
|---|---|---|---|
| 1. Letter | UPS Letter | | Reference # 1 - 006-5072 |

### 3 UPS Shipping Service and Shipping Options

**Service:**
UPS 2nd Day Air
**Guaranteed By:**
End of Day Wednesday, 10/26/11

| Shipping Fees Subtotal: | 14.42 USD |
|---|---|
| Transportation | 12.65 USD |
| Fuel Surcharge | 1.77 USD |

### 4 Payment Information

**Bill Shipping Charges to:**   Shipper's Account 22445X

A discount has been applied to the Daily rates for this shipment

| Total Charged: | 14.42 USD |
|---|---|
| Negotiated Total: | 5.45 USD |

Note: Your invoice may vary from the displayed reference rates.

\* For delivery and guarantee information, see the UPS Service Guide. To speak to a customer service representative, call 1-800-PICK-UPS for domestic services and 1-800-782-7892 for international services.

# EXHIBIT "F"



**WYNDHAM**

HOTEL GROUP

Compliance Department
22 Sylvan Way
Parsippany, New Jersey 07054
Ph (973) 753-6000 ● fax (800) 880-9445
www.wyndhamworldwide.com

March 15, 2012

<u>**VIA OVERNIGHT DELIVERY**</u>

Mr. Harish Pattni
OCALA INN KASH, INC.
1447 NE Expressway
Atlanta, GA 30329

RE:   **NOTICE OF CONTINUING MONETARY DEFAULT RELATING TO DAYS®
        UNIT #05311-88499-2 LOCATED IN OCALA, FL (THE "FACILITY")**

Dear Mr. Pattni:

I write on behalf of DAYS INNS WORLDWIDE, INC. ("we," "us," or "our") regarding the
License Agreement dated November 1, 2009 between OCALA INN KASH, INC. ("you" or
"your") and us (the "Agreement"). You will recall that, on October 24, 2011, we sent
you a default notice because of your failure to meet your financial obligations to us. That notice
required you to cure the default within 10 days. However, you did not cure your default within
the time permitted.

Your failure to cure your default within the time permitted also allows us to terminate the
Agreement (including your License to operate the Facility as a Days facility) immediately upon
written notice to you. We would prefer, however, to keep our affiliation with you. Accordingly,
we will allow you an additional period of ten (10) days from the date of this letter to cure your
default. Please be advised that as of March 15, 2012 your account is now past due in the amount
of **$201,592.79**. We have enclosed an itemized statement detailing the fees past due. Please
understand that we are not waiving this default or any other default under the Agreement by
extending your cure period. We are simply giving you a final opportunity to avoid termination.

**WYNDHAM**
HOTEL GROUP



       

       

(Page 2 of 18)

We hope you will take this opportunity to resolve your monetary default.  If you have any questions regarding your default or how it can be timely cured, please contact Operations Support Desk at (800) 443-3009.

Sincerely yours,

Suzanne Fenimore
Director
Contracts Compliance, Legal

Enclosure

cc:     Clyde Guinn
        Mona Christian
        Valerie Capers Workman

Report Date : 15-MAR-12

ITEMIZED STATEMENT
------------------

```
As of Date (DD-MMM-YYYY):  15-MAR-2012
Customer No               :  05311-88499-02-DAY
Category Set              :
Category Group            :
Group No                  :
Bankruptcy                :  No Bankruptcy Sites
Disputed                  :  No
Finance Charges Included:  Yes
```

Page 1 of 12

Report Date : 15-MAR-12

ITEMIZED STATEMENT
------------------

```
Customer No :  05311-88499-02-DAY
Address :      3620 W. Silversprings Blvd.,Ocala,FL,34475,US
As of Date:    15-MAR-2012
```

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|-----------|----------------|-------|
| JUN-2009 | 21102737#1 | 22-JUN-09 | WYNREWARDS CRDT | | (142.08) | 0.00 | 0.00 | (142.08) |
| | 21102592#1 | 22-JUN-09 | WYNREWARDS 5% | | 2205.73 | 0.00 | 644.42 | 2850.15 |
| | 1009648#11 | 25-JUN-09 | GDS & INTERNET | | 14.05 | 0.00 | 3.00 | 17.05 |
| | TA0009648#1 | 25-JUN-09 | T/A COMMISSIONS | | 23.82 | 0.00 | 5.08 | 28.90 |
| | 41028436#1 | 30-JUN-09 | ROYALTY FEE : 1 | | 2967.80 | 0.00 | 1445.34 | 4413.14 |
| | 41011770#1 | 30-JUN-09 | MSI SOFTWARE MA | | 293.32 | 19.07 | 152.14 | 464.53 |
| | 41029572#1 | 30-JUN-09 | RESERVATION FEE | | 1365.19 | 0.00 | 664.86 | 2030.05 |
| | 41029537#1 | 30-JUN-09 | MARKETING FEE : | | 890.34 | 0.00 | 433.64 | 1323.98 |

|  | 41011065#1 | 30-JUN-09 | DIRECWAY:1:Fran | 150.00 | 9.75 | 77.91 | 237.66 |
|---|---|---|---|---|---|---|---|
|  |  |  | Sub Total | 7768.17 | 28.82 | 3426.39 | 11223.38 |
| JUL-2009 | 21107277#1 | 22-JUL-09 | WYNREWARDS CRDT | (134.76) | 0.00 | 0.00 | (134.76) |
|  | 21108095#1 | 22-JUL-09 | WYNREWARDS 5% | 1660.18 | 0.00 | 782.70 | 2442.88 |
|  | TM0015516#1 | 23-JUL-09 | MEMBER BENEFIT | 11.52 | 0.00 | 5.43 | 16.95 |
|  | 1015516#11 | 23-JUL-09 | GDS & INTERNET | 53.20 | 0.00 | 25.02 | 78.22 |
|  | TR0015516#1 | 23-JUL-09 | TMC / CONSORTIA | 3.76 | 0.00 | 1.82 | 5.58 |
|  | TA0015516#1 | 23-JUL-09 | T/A COMMISSIONS | 242.10 | 0.00 | 114.10 | 356.20 |
|  | 41060876#1 | 31-JUL-09 | RESERVATION FEE | 1055.70 | 0.00 | 497.75 | 1553.45 |
|  | 41061088#1 | 31-JUL-09 | MARKETING FEE : | 688.50 | 0.00 | 324.62 | 1013.12 |
|  | 41061932#1 | 31-JUL-09 | ROYALTY FEE : 1 | 2295.00 | 0.00 | 1082.10 | 3377.10 |
|  | 41045906#1 | 31-JUL-09 | DIRECWAY:1:Fran | 150.00 | 9.75 | 75.43 | 235.18 |
|  | 41044812#1 | 31-JUL-09 | MSI SOFTWARE MA | 293.32 | 19.07 | 147.29 | 459.68 |
|  |  |  | Sub Total | 6318.52 | 28.82 | 3056.26 | 9403.60 |
| AUG-2009 | 21109201#1 | 22-AUG-09 | WYNREWARDS CRDT | (239.19) | 0.00 | 0.00 | (239.19) |
|  | 21110088#1 | 22-AUG-09 | WYNREWARDS 5% | 1202.78 | 0.00 | 548.41 | 1751.19 |
|  | 1022565#11 | 24-AUG-09 | GDS & INTERNET | 30.45 | 0.00 | 13.90 | 44.35 |
|  | TA0022565#1 | 24-AUG-09 | T/A COMMISSIONS | 70.69 | 0.00 | 32.30 | 102.99 |
|  | TM0022565#1 | 24-AUG-09 | MEMBER BENEFIT | 19.18 | 0.00 | 8.81 | 27.99 |
|  | 41096166#1 | 31-AUG-09 | MARKETING FEE : | 565.95 | 0.00 | 258.04 | 823.99 |
|  | 41077612#1 | 31-AUG-09 | DIRECWAY:1:Fran | 150.00 | 9.75 | 72.95 | 232.70 |
|  | 41079523#1 | 31-AUG-09 | MSI SOFTWARE MA | 293.32 | 19.07 | 142.45 | 454.84 |
|  | 41096686#1 | 31-AUG-09 | ROYALTY FEE : 1 | 1886.49 | 0.00 | 860.26 | 2746.75 |

Page 2 of 12

Report Date : 15-MAR-12

ITEMIZED STATEMENT
--------------------

Customer No :   05311-88499-02-DAY
Address :       3620 W. Silversprings Blvd.,Ocala,FL,34475,US
As of Date:     15-MAR-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|-----------|----------------|-------|
|          | 41097184#1 | 31-AUG-09   | RESERVATION FEE |     | 867.79  | 0.00      | 395.73         | 1263.52 |
|          |           |              | Sub Total    |        | 4847.46 | 28.82     | 2332.85        | 7209.13 |
| SEP-2009 | TA0029680#1 | 22-SEP-09  | T/A COMMISSIONS |     | 94.97   | 0.00      | 40.30          | 135.27 |
|          | 1029680#11 | 22-SEP-09   | GDS & INTERNET |      | 32.45   | 0.00      | 13.76          | 46.21 |
|          | 21115106#1 | 22-SEP-09   | WYNREWARDS CRDT |     | (284.83)| 0.00      | 0.00           | (284.83) |
|          | 21113205#1 | 22-SEP-09   | WYNREWARDS 5%   |     | 1142.91 | 0.00      | 485.78         | 1628.69 |
|          | 41131877#1 | 28-SEP-09   | MARKETING FEE : |     | 559.87  | 0.00      | 238.00         | 797.87 |
|          | 41129352#1 | 28-SEP-09   | ROYALTY FEE : 1 |     | 1866.25 | 0.00      | 793.18         | 2659.43 |
|          | 41130274#1 | 28-SEP-09   | RESERVATION FEE |     | 858.47  | 0.00      | 364.93         | 1223.40 |
|          | 41113185#1 | 30-SEP-09   | MSI SOFTWARE MA |     | 307.99  | 20.02     | 139.34         | 467.35 |
|          | 41114604#1 | 30-SEP-09   | DIRECWAY:1:Fran |     | 150.00  | 9.75      | 67.99          | 227.74 |
|          |           |              | Sub Total    |        | 4728.08 | 29.77     | 2143.28        | 6901.13 |
| OCT-2009 | 21117583#1 | 22-OCT-09   | WYNREWARDS 5%   |     | 1157.28 | 0.00      | 457.74         | 1615.02 |
|          | 21115663#1 | 22-OCT-09   | WYNREWARDS CRDT |     | (64.99) | 0.00      | 0.00           | (64.99) |
|          | TA0036860#1 | 26-OCT-09  | T/A COMMISSIONS |     | 75.31   | 0.00      | 29.82          | 105.13 |
|          | 1036860#11 | 26-OCT-09   | GDS & INTERNET |      | 19.40   | 0.00      | 7.65           | 27.05 |
|          | TM0036860#1 | 26-OCT-09  | MEMBER BENEFIT  |     | 10.62   | 0.00      | 4.14           | 14.76 |
|          | 41177191#1 | 31-OCT-09   | ROYALTY FEE:Fra |     | 1991.20 | 0.00      | 787.49         | 2778.69 |
|          | 41146948#1 | 31-OCT-09   | MSI SOFTWARE MA |     | 307.99  | 20.02     | 129.66         | 457.67 |
|          | 41178379#1 | 31-OCT-09   | MARKETING FEE:F |     | 597.36  | 0.00      | 236.26         | 833.62 |
|          | 41178769#1 | 31-OCT-09   | RESERVATION FEE |     | 915.95  | 0.00      | 362.30         | 1278.25 |
|          | 41149112#1 | 31-OCT-09   | DIRECWAY:1:Fran |     | 150.00  | 9.75      | 63.28          | 223.03 |
|          |           |              | Sub Total    |        | 5160.12 | 29.77     | 2078.34        | 7268.23 |
| NOV-2009 | 10423913#1 | 04-NOV-09   | GUEST SRVCS TRA |     | 100.00  | 0.00      | 39.55          | 139.55 |
|          | 10424008#1 | 04-NOV-09   | GUEST SATISFACT |     | 23.50   | 0.00      | 9.21           | 32.71 |
|          | 10425515#1 | 11-NOV-09   | GUEST SRVCS TRA |     | (100.00)| 0.00      | 0.00           | (100.00) |
|          | 10427151#1 | 16-NOV-09   | GUEST SATISPACT |     | (23.50) | 0.00      | 0.00           | (23.50) |

(Page 6 of 18)

Page 4 of 15

Report Date : 15-MAR-12

ITEMIZED STATEMENT
-------------------

```
Customer No :  05311-88499-02-DAY
Address :      3620 W. Silversprings Blvd.,Ocala,FL,34475,US
As of Date:    15-MAR-2012
```

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| | TA0042422#1 | 22-NOV-09 | T/A COMMISSIONS | | 11.17 | 0.00 | 4.23 | 15.40 |
| | 1042422#11 | 22-NOV-09 | GDS & INTERNET | | 32.45 | 0.00 | 12.31 | 44.76 |
| | 21119806#1 | 22-NOV-09 | WYNREWARDS 5% | | 778.52 | 0.00 | 295.90 | 1074.42 |
| | 41181835#1 | 30-NOV-09 | DIRECWAY:1:Fran | | 150.00 | 9.75 | 60.80 | 220.55 |
| | 41179972#1 | 30-NOV-09 | MSI SOFTWARE MA | | 307.99 | 20.02 | 124.58 | 452.59 |
| | | | Sub Total | | 1280.13 | 29.77 | 546.58 | 1856.48 |
| DEC-2009 | 30377724 | 22-DEC-09 | RNW 5157A FL OC | | 17500.00 | 0.00 | 6378.75 | 23878.75 |
| | 21121696 | 22-DEC-09 | WYNREWARDS 5% | | 591.47 | 0.00 | 215.60 | 807.07 |
| | 1100039#1 | 24-DEC-09 | GDS & INTERNET | | 5.35 | 0.00 | 1.90 | 7.25 |
| | TA0100039#1 | 24-DEC-09 | T/A COMMISSIONS | | 2.43 | 0.00 | 0.94 | 3.37 |
| | 30386558 | 31-DEC-09 | CK#1386 | | 20.00 | 0.00 | 7.29 | 27.29 |
| | 30383476#1 | 31-DEC-09 | DEC-09 PRORATE | | 154.84 | 10.06 | 60.14 | 225.04 |
| | 41217115 | 31-DEC-09 | 5032A-MSI SOFTW | | 307.98 | 20.02 | 119.50 | 447.50 |
| | 41233315 | 31-DEC-09 | Accrual-1800A-R | * | 449.54 | 0.00 | 163.86 | 613.40 |
| | 41232456 | 31-DEC-09 | Accrual-1000A-R | * | 1901.90 | 0.00 | 693.27 | 2595.17 |
| | 41231227 | 31-DEC-09 | Accrual-1210A-M | * | 518.70 | 0.00 | 189.06 | 707.76 |
| | | | Sub Total | | 21452.21 | 30.08 | 7830.31 | 29312.60 |
| JAN-2010 | 21125386 | 22-JAN-10 | WYNREWARDS 5% | | 529.87 | 0.00 | 185.70 | 715.57 |
| | 21125687#1 | 22-JAN-10 | WYNREWARDS 5% | | 4.80 | 0.00 | 1.61 | 6.41 |
| | 41265601 | 31-JAN-10 | Actual-1000A-RO | | 2512.73 | 0.00 | 880.74 | 3393.47 |
| | 41267504 | 31-JAN-10 | Actual-1210A-MA | | 685.29 | 0.00 | 240.17 | 925.46 |
| | 30397096#1 | 31-JAN-10 | HARDWARE MAINT | | 8.90 | 0.53 | 3.34 | 12.77 |
| | 41249822 | 31-JAN-10 | 5715A-HughesNet | | 160.00 | 9.60 | 59.42 | 229.02 |
| | 41248847 | 31-JAN-10 | 5032A-MSI SOFTW | | 307.98 | 18.48 | 114.45 | 440.91 |

| | 41267664 | 31-JAN-10 | Actual-1800A-RE | 593.92 | 0.00 | 208.23 | 802.15 |
| | | | Sub Total | 4803.49 | 28.61 | 1693.66 | 6525.76 |
| FEB-2010 | 21129108 | 22-FEB-10 | WYNREWARDS 5% | 882.54 | 0.00 | 295.68 | 1178.22 |

Page 4 of 12

Report Date : 15-MAR-12

### ITEMIZED STATEMENT

Customer No :  05311-88499-02-DAY
Address :     3620 W. Silversprings Blvd.,Ocala,FL,34475,US
As of Date:   15-MAR-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|-----|----------------|-------|
| | 41301610 | 28-FEB-10 | Actual-1800A-RE | | 724.36 | 0.00 | 242.72 | 967.08 |
| | 41295429 | 28-FEB-10 | 5715A-HughesNet | | 160.00 | 9.60 | 56.80 | 226.40 |
| | 41300138 | 28-FEB-10 | Actual-1000A-RO | | 3064.58 | 0.00 | 1026.63 | 4091.21 |
| | 41300564 | 28-FEB-10 | Actual-1210A-MA | | 835.80 | 0.00 | 279.95 | 1115.75 |
| | 41296238 | 28-FEB-10 | 5032A-MST SOFTW | | 307.98 | 18.48 | 109.38 | 435.84 |
| | 30404459 | 28-FEB-10 | HARDWARE MAINT | | 8.90 | 0.53 | 3.20 | 12.63 |
| | | | Sub Total | | 5984.16 | 28.61 | 2014.36 | 8027.13 |
| MAR-2010 | 30413698 | 12-MAR-10 | '10 GLOBAL CONF | | 999.00 | 0.00 | 320.16 | 1319.16 |
| | 21131601 | 22-MAR-10 | WYNREWARDS 5% | | 814.19 | 0.00 | 260.52 | 1074.71 |
| | 30420114 | 30-MAR-10 | Dash for Cash 5 | | (83.38) | 0.00 | 0.00 | (83.38) |
| | 41319458 | 31-MAR-10 | 5052A-HARDWARE | | 8.90 | 0.53 | 3.05 | 12.48 |
| | 41320084 | 31-MAR-10 | 5032A-MST SOFTW | | 307.98 | 18.48 | 104.49 | 430.95 |
| | 41334941 | 31-MAR-10 | Actual-1210A-MA | | 962.69 | 0.00 | 308.04 | 1270.73 |
| | 41336092 | 31-MAR-10 | Actual-1800A-RE | | 834.33 | 0.00 | 266.92 | 1101.25 |
| | 41320388 | 31-MAR-10 | 5715A-HughesNet | | 160.00 | 9.60 | 54.25 | 223.85 |
| | 41334528 | 31-MAR-10 | Actual-1000A-RO | | 3529.86 | 0.00 | 1129.54 | 4659.40 |

| | | | | | Sub Total | 7533.57 | 28.61 | 2446.97 | 10009.15 |
|---|---|---|---|---|---|---|---|---|---|

| Mon-Year | Invoice No | Invoice Date | Description | Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|
| APR-2010 | 30426331 | 14-APR-10 | ONLINE LRNG LIB | 50.00 | 0.00 | 16.06 | 66.06 |
| | TA0126147 | 18-APR-10 | T/A COMMISSIONS | 5.31 | 0.00 | 1.59 | 6.90 |
| | 1126147 | 18-APR-10 | GDS & INTERNET | 5.35 | 0.00 | 1.59 | 6.94 |
| | 21135247 | 22-APR-10 | WYNREWARDS 5% | 1140.49 | 0.00 | 347.33 | 1487.82 |
| | 30432909 | 29-APR-10 | Dash for Cash 5 | (97.48) | 0.00 | 0.00 | (97.48) |
| | 41353022 | 30-APR-10 | 5052A-HARDWARE | 8.90 | 0.53 | 2.91 | 12.34 |
| | 41371504 | 30-APR-10 | Actual-1800A-RE | 477.03 | 0.00 | 145.24 | 622.27 |
| | 41353510 | 30-APR-10 | 5032A-MSI SOFTW | 307.98 | 18.48 | 99.42 | 425.88 |
| | 41352171 | 30-APR-10 | 5715A-HughesNet | 160.00 | 9.60 | 51.63 | 221.23 |
| | 41370729 | 30-APR-10 | Actual-1210A-MA | 550.42 | 0.00 | 167.61 | 718.03 |
| | 41369970 | 30-APR-10 | Actual-1000A-RO | 2018.20 | 0.00 | 614.49 | 2632.69 |

Report Date : 15-MAR-12

ITEMIZED STATEMENT
--------------------

Customer No :  05311-88499-02-DAY
Address :      3620 W. Silversprings Blvd.,Ocala,FL,34475,US
As of Date:    15-MAR-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|---|---|---|---|---|---|---|---|---|
| | | | | | Sub Total | 4626.20 | 28.61 | 1447.87 | 6102.68 |
| JUN-2010 | 30447195 | 04-JUN-10 | OTA Credit | | (262.70) | 0.00 | 0.00 | (262.70) |
| | 21140143 | 22-JUN-10 | WYNREWARDS 5% | | 996.93 | 0.00 | 273.11 | 1270.04 |
| | 41439130 | 30-JUN-10 | Actual-1210A-MA | | 562.48 | 0.00 | 154.15 | 716.63 |

https://oracle.wyndhamworldwide.com:8005/OA_CGI/FNDWRR.exe?temp_id=2091484812                    3/15/2012

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | 41421788 | 30-JUN-10 | 5032A-MSI SOFTW | 307.98 | 18.48 | 89.47 | 415.93 |
| | 41439407 | 30-JUN-10 | Actual-1800A-RE | 487.48 | 0.00 | 133.59 | 621.07 |
| | 41437539 | 30-JUN-10 | Actual-1000A-RO | 2062.41 | 0.00 | 565.15 | 2627.56 |
| | 41420356 | 30-JUN-10 | 5715A-HughesNet | 160.00 | 9.60 | 46.45 | 216.05 |
| | 41419655 | 30-JUN-10 | 5052A-HARDWARE | 8.90 | 0.53 | 2.61 | 12.04 |
| | 30456520 | 30-JUN-10 | Dash for Cash 5 | (86.03) | 0.00 | 0.00 | (86.03) |
| | | | Sub Total | 4237.45 | 28.61 | 1264.53 | 5530.59 |
| JUL-2010 | 21143098 | 22-JUL-10 | WYNREWARDS 5% | 393.57 | 0.00 | 101.72 | 495.29 |
| | 30468359 | 29-JUL-10 | Dash for Cash 5 | (84.63) | 0.00 | 0.00 | (84.63) |
| | 41471323 | 31-JUL-10 | Actual-1210A-MA | 560.18 | 0.00 | 144.76 | 704.94 |
| | 41471558 | 31-JUL-10 | Actual-1800A-RE | 485.49 | 0.00 | 125.54 | 611.03 |
| | 41470337 | 31-JUL-10 | Actual-1000A-RO | 2054.00 | 0.00 | 530.99 | 2584.99 |
| | 41453727 | 31-JUL-10 | 5052A-HARDWARE | 8.90 | 0.53 | 2.47 | 11.90 |
| | 41455050 | 31-JUL-10 | 5715A-HughesNet | 160.00 | 9.60 | 43.83 | 213.43 |
| | 30471816 | 31-JUL-10 | ACK072110 | 20.00 | 0.00 | 5.17 | 25.17 |
| | | | Sub Total | 3597.51 | 10.13 | 954.48 | 4562.12 |
| AUG-2010 | 21144998 | 22-AUG-10 | WYNREWARDS 5% | 59.82 | 0.00 | 14.61 | 74.43 |
| | 41502048 | 31-AUG-10 | Actual-1000A-RO | 1149.76 | 0.00 | 279.98 | 1429.74 |
| | 41495931 | 31-AUG-10 | 5052A-HARDWARE | 8.90 | 0.53 | 2.32 | 11.75 |
| | 41495301 | 31-AUG-10 | 5715A-HughesNet | 160.00 | 9.60 | 41.28 | 210.88 |
| | 41504962 | 31-AUG-10 | Actual-1210A-MA | 313.57 | 0.00 | 76.33 | 389.90 |
| | 41504232 | 31-AUG-10 | Actual-1800A-RE | 271.76 | 0.00 | 66.17 | 337.93 |

Page 6 of 12

Report Date : 15-MAR-12

ITEMIZED STATEMENT
-------------------

Customer No :   05311-88499-02-DAY
Address :       3620 W. Silversprings Blvd.,Ocala,FL,34475,US
As of Date:     15-MAR-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| | | | | Sub Total | 1963.81 | 10.13 | 480.69 | 2454.63 |
| SEP-2010 | 21147101 | 22-SEP-10 | WYNREWARDS 5% | | 94.30 | 0.00 | 21.47 | 115.77 |
| | 41534718 | 30-SEP-10 | Actual-1000A-RO | | 1275.36 | 0.00 | 290.80 | 1566.16 |
| | 30491413 | 30-SEP-10 | REMEDIAL TRAINI | | 250.00 | 15.00 | 60.46 | 325.46 |
| | 41535783 | 30-SEP-10 | Actual-1800A-RE | | 301.45 | 0.00 | 68.70 | 370.15 |
| | 41537477 | 30-SEP-10 | Actual-1210A-MA | | 347.83 | 0.00 | 79.30 | 427.13 |
| | 41518652 | 30-SEP-10 | 5052A-HARDWARE | | 8.90 | 0.53 | 2.18 | 11.61 |
| | 30495748 | 30-SEP-10 | ACH092010 | | 20.00 | 0.00 | 4.56 | 24.56 |
| | 41517773 | 30-SEP-10 | 5715A-HughesNet | | 160.00 | 9.60 | 38.66 | 208.26 |
| | | | | Sub Total | 2457.84 | 25.13 | 566.13 | 3049.10 |
| OCT-2010 | 21150144 | 22-OCT-10 | WYNREWARDS 5% | | 118.81 | 0.00 | 25.28 | 144.09 |
| | 41550490 | 31-OCT-10 | 5715A-HughesNet | | 160.00 | 9.60 | 36.11 | 205.71 |
| | 30505407 | 31-OCT-10 | ACH102110 | | 20.00 | 0.00 | 4.26 | 24.26 |
| | 41568259 | 31-OCT-10 | Actual-1800A-RE | | 362.49 | 0.00 | 77.23 | 439.72 |
| | 41553138 | 31-OCT-10 | 5052A-HARDWARE | | 8.90 | 0.53 | 2.03 | 11.46 |
| | 41569816 | 31-OCT-10 | Actual-1000A-RO | | 1533.61 | 0.00 | 326.63 | 1860.24 |
| | 41568240 | 31-OCT-10 | Actual-1210A-MA | | 418.26 | 0.00 | 89.05 | 507.31 |
| | | | | Sub Total | 2622.07 | 10.13 | 560.59 | 3192.79 |
| NOV-2010 | 21154704 | 22-NOV-10 | WYNREWARDS 5% | | 92.42 | 0.00 | 18.25 | 110.67 |
| | 41584914 | 30-NOV-10 | 5715A-HughesNet | | 160.00 | 9.60 | 33.48 | 203.08 |
| | 41584316 | 30-NOV-10 | 5052A-HARDWARE | | 8.90 | 0.53 | 1.88 | 11.31 |
| | 41602382 | 30-NOV-10 | Actual-1800A-RE | | 357.11 | 0.00 | 70.58 | 427.69 |
| | 41602249 | 30-NOV-10 | Actual-1210A-MA | | 412.05 | 0.00 | 81.40 | 493.45 |
| | 41600578 | 30-NOV-10 | Actual-1000A-RO | | 1510.84 | 0.00 | 298.39 | 1809.23 |

Report Date : 15-MAR-12

ITEMIZED STATEMENT
-------------------

Customer No :  OS311-88499-02-DAY
Address    :   3620 W. Silversprings Blvd.,Ocala,FL,34475,US
As of Date:    15-MAR-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|-----------|----------------|-------|
| | | | | Sub Total | 2541.32 | 10.13 | 503.98 | 3055.43 |
| DEC-2010 | 21156631 | 22-DEC-10 | WYNREWARDS 5% | | 123.38 | 0.00 | 22.44 | 145.82 |
| | 41634559 | 31-DEC-10 | Actual-1210A-MA | | 333.56 | 0.00 | 60.69 | 394.25 |
| | 41618353 | 31-DEC-10 | 5052A-HARDWARE | | 8.90 | 0.53 | 1.74 | 11.17 |
| | 41635909 | 31-DEC-10 | Actual-1000A-RO | | 1223.05 | 0.00 | 222.63 | 1445.68 |
| | 41617309 | 31-DEC-10 | 5715A-HughesNet | | 160.00 | 9.60 | 30.86 | 200.46 |
| | 41633979 | 31-DEC-10 | Actual-1800A-RE | | 289.09 | 0.00 | 52.62 | 341.71 |
| | | | | Sub Total | 2137.98 | 10.13 | 390.98 | 2539.09 |
| JAN-2011 | 21158764 | 22-JAN-11 | WYNREWARDS 5% | | 252.56 | 0.00 | 45.31 | 297.87 |
| | 41667995 | 31-JAN-11 | Actual-1000A-RO | | 1545.26 | 0.00 | 270.41 | 1815.67 |
| | 41648274 | 31-JAN-11 | 5715A-HughesNet | | 160.00 | 9.60 | 29.67 | 199.27 |
| | 41667945 | 31-JAN-11 | Actual-1800A-RE | | 365.24 | 0.00 | 63.91 | 429.15 |
| | 41666666 | 31-JAN-11 | Actual-1210A-MA | | 421.43 | 0.00 | 73.73 | 495.16 |
| | | | | Sub Total | 2744.49 | 9.60 | 483.03 | 3237.12 |
| FEB-2011 | 30541433 | 14-FEB-11 | SUMMIT 2011 FEE | | 599.00 | 0.00 | 100.63 | 699.63 |
| | 21161162 | 22-FEB-11 | WYNREWARDS 5% | | 170.92 | 0.00 | 28.02 | 198.94 |
| | 41700357 | 28-FEB-11 | Actual-1000A-RO | | 2108.30 | 0.00 | 339.43 | 2447.73 |
| | 41685521 | 28-FEB-11 | 5715A-HughesNet | | 160.00 | 9.60 | 27.30 | 196.90 |
| | 41699451 | 28-FEB-11 | Actual-1210A-MA | | 574.99 | 0.00 | 92.54 | 667.53 |
| | 41699211 | 28-FEB-11 | Actual-1800A-RE | | 498.33 | 0.00 | 80.19 | 578.52 |

```
                                          Sub Total    ============  ============  ============  ============
                                                           4111.54          9.60        668.11       4789.25
                                                        ============  ============  ============  ============

        MAR-2011  21164667      22-MAR-11    WYNREWARDS 5%       7.81          0.00          1.17          8.98
                  41716544      31-MAR-11    5715A-HughesNet   160.00          9.60         24.67        194.27

                                          Page 8 of 12
```

Report Date : 15-MAR-12

ITEMIZED STATEMENT
--------------------

Customer No :  05311-88499-02-DAY
Address :      3620 W. Silversprings Blvd.,Ocala,FL,34475,US
As of Date:    15-MAR-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| | 41730025 | 31-MAR-11 | Actual-1000A-RO | | 3323.40 | 0.00 | 483.54 | 3806.94 |
| | 41731311 | 31-MAR-11 | Actual-1800A-RE | | 785.53 | 0.00 | 114.31 | 899.84 |
| | 41732029 | 31-MAR-11 | Actual-1210A-MA | | 906.38 | 0.00 | 131.90 | 1038.28 |
| | | | Sub Total | | 5183.12 | 9.60 | 755.59 | 5948.31 |
| APR-2011 | 41767252 | 30-APR-11 | Actual-1210A-MA | | 459.65 | 0.00 | 59.95 | 519.60 |
| | 41749012 | 30-APR-11 | 5625A-PRM SUPPO | | 98.40 | 0.00 | 12.88 | 111.28 |
| | 41765775 | 30-APR-11 | Actual-1000A-RO | | 1685.37 | 0.00 | 219.92 | 1905.29 |
| | 41746753 | 30-APR-11 | 5715A-HughesNet | | 160.00 | 9.60 | 22.13 | 191.73 |
| | 41763570 | 30-APR-11 | Actual-1800A-RE | | 398.36 | 0.00 | 51.98 | 450.34 |
| | | | Sub Total | | 2801.78 | 9.60 | 366.86 | 3178.24 |
| MAY-2011 | 21169448 | 22-MAY-11 | WYNREWARDS 5% | | 23.45 | 0.00 | 2.78 | 26.23 |
| | 41792932 | 31-MAY-11 | Actual-1000A-RO | | 1232.54 | 0.00 | 141.72 | 1374.26 |

```
        41794770   31-MAY-11   Actual-1210A-MA     336.15      0.00     38.65     374.80
        41778530   31-MAY-11   5715A-HughesNet     160.00      9.60     19.50     189.10
        41778332   31-MAY-11   5625A-PRM SUPPO      98.40      0.00     11.35     109.75
        41794826   31-MAY-11   Actual-1800A-RE     356.39      0.00     40.97     397.36
                                              ============  ========  ========  ========
                               Sub Total        2206.93      9.60    254.97    2471.50
                                              ============  ========  ========  ========
JUN-2011 30594433   06-JUN-11   PM SYSTEM TRAIN   12655.00      0.00   1417.36   14072.36
        30594429   06-JUN-11   EQUIP SHIPPING       79.06      0.00      8.89      87.95
        30594430   06-JUN-11   PM SYSTEM HW WR     303.19      0.00     33.96     337.15
        30594431   06-JUN-11   SoftHotel Hardw    1015.93     60.96    120.60    1197.49
        30594432   06-JUN-11   PM SYSTEM SOFTW    5135.25    308.12    609.65    6053.02
        21174387   22-JUN-11   WYNREWARDS 5%        43.19      0.00      4.50      47.69
        41824141   30-JUN-11   Actual-1000A-RO    1448.16      0.00    144.83    1592.99
        41826390   30-JUN-11   Actual-1800A-RE     605.59      0.00     60.56     666.15
        41824971   30-JUN-11   Actual-1210A-MA     394.95      0.00     39.48     434.43
        41811927   30-JUN-11   5625A-PRM SUPPO      98.40      0.00      9.87     108.27
```

Page 9 of 12

Report Date : 15-MAR-12

ITEMIZED STATEMENT
-----------------

Customer No :  05311-88499-02-DAY
Address :   3620 W. Silversprings Blvd.,Ocala,FL.34475,US
As of Date:  15-MAR-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
|          | 41810334  | 30-JUN-11    | 5715A-HughesNet | | 160.00 | 9.60 | 16.96 | 186.56 |
|          |           |              |             | Sub Total | 21938.72 | 378.68 | 2466.66 | 24784.06 |
| JUL-2011 | 41861685  | 31-JUL-11    | Actual-1800A-RE | | 830.50 | 0.00 | 70.17 | 900.67 |
|          | 41859191  | 31-JUL-11    | Actual-1000A-RO | | 1985.98 | 0.00 | 167.81 | 2153.79 |

|  | 41843339 | 31-JUL-11 | 5715A-HughesNet | 160.00 | 9.60 | 14.33 | 183.93 |
|  | 41842437 | 31-JUL-11 | 5625A-PRM SUPPO | 98.40 | 0.00 | 8.34 | 106.74 |
|  | 41859938 | 31-JUL-11 | Actual-1210A-MA | 541.63 | 0.00 | 45.77 | 587.40 |
|  |  |  | Sub Total | 3616.51 | 9.60 | 306.42 | 3932.53 |
| AUG-2011 | 41874039 | 31-AUG-11 | 5715A-HughesNet | 160.00 | 9.60 | 11.70 | 181.30 |
|  | 41886627 | 31-AUG-11 | Actual-1210A-MA | 367.84 | 0.00 | 25.38 | 393.22 |
|  | 41888357 | 31-AUG-11 | Actual-1800A-RE | 564.02 | 0.00 | 38.91 | 602.93 |
|  | 41875074 | 31-AUG-11 | 5625A-PRM SUPPO | 98.39 | 0.00 | 6.81 | 105.20 |
|  | 41889818 | 31-AUG-11 | Actual-1000A-RO | 1348.73 | 0.00 | 93.08 | 1441.81 |
|  |  |  | Sub Total | 2538.98 | 9.60 | 175.88 | 2724.46 |
| SEP-2011 | 30622744 | 15-SEP-11 | ONLINE LRNG LIB | 50.00 | 0.00 | 3.09 | 53.09 |
|  | 30629276 | 28-SEP-11 | GLOBAL CONFEREN | 999.00 | 0.00 | 0.00 | 999.00 |
|  | 41911542 | 30-SEP-11 | 5625A-PRM SUPPO | 103.32 | 0.00 | 5.58 | 108.90 |
|  | 41923265 | 30-SEP-11 | Actual-1210A-MA | 418.99 | 0.00 | 22.61 | 441.60 |
|  | 41922227 | 30-SEP-11 | Actual-1000A-RO | 1536.31 | 0.00 | 82.95 | 1619.26 |
|  | 41923991 | 30-SEP-11 | Actual-1800A-RE | 642.46 | 0.00 | 34.70 | 677.16 |
|  | 41910384 | 30-SEP-11 | 5715A-HughesNet | 160.00 | 9.60 | 9.16 | 178.76 |
|  |  |  | Sub Total | 3910.08 | 9.60 | 158.09 | 4077.77 |
| OCT-2011 | 41939490 | 31-OCT-11 | 5715A-HughesNet | 160.00 | 9.60 | 6.53 | 176.13 |

Report Date : 15-MAR-12

ITEMIZED STATEMENT
------------------

Customer No :   05311-88499-02-DAY
Address :       3620 W. Silversprings Blvd.,Ocala,FL.34475.US
As of Date:     15-MAR-2012

https://oracle.wyndhamworldwide.com:8005/OA_CGI/FNDWRR.exe?temp_id=2091484812                3/15/2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|-----------|----------------|-------|
| | 41955676 | 31-OCT-11 | Accrual-1800A-R | * | 654.37 | 0.00 | 25.19 | 679.56 |
| | 41953894 | 31-OCT-11 | Accrual-1210A-M | * | 426.77 | 0.00 | 16.42 | 443.19 |
| | 41940263 | 31-OCT-11 | 5625A-PRM SUPPO | | 103.32 | 0.00 | 3.97 | 107.29 |
| | 41953808 | 31-OCT-11 | Accrual-1000A-R | * | 1564.81 | 0.00 | 60.24 | 1625.05 |
| | | | Sub Total | | 2909.27 | 9.60 | 112.35 | 3031.22 |
| NOV-2011 | 21189868 | 22-NOV-11 | WYNREWARDS 5% | | 223.48 | 0.00 | 6.14 | 229.62 |
| | 41969821 | 30-NOV-11 | 5625A-PRM SUPPO | | 103.32 | 0.00 | 2.43 | 105.75 |
| | 41986282 | 30-NOV-11 | Accrual-1210A-M | * | 431.36 | 0.00 | 10.14 | 441.50 |
| | 30648009 | 30-NOV-11 | ACH111711 | | 20.00 | 0.00 | 0.47 | 20.47 |
| | 41969062 | 30-NOV-11 | 5715A-HughesNet | | 160.00 | 9.60 | 3.99 | 173.59 |
| | 41984868 | 30-NOV-11 | Accrual-1000A-R | * | 1581.64 | 0.00 | 37.17 | 1618.81 |
| | 41985447 | 30-NOV-11 | Accrual-1800A-R | * | 661.41 | 0.00 | 15.54 | 676.95 |
| | | | Sub Total | | 3181.21 | 9.60 | 75.88 | 3266.69 |
| DEC-2011 | 21191625 | 22-DEC-11 | WYNREWARDS 5% | | 160.14 | 0.00 | 2.00 | 162.14 |
| | 30653350 | 30-DEC-11 | P.Pencek | | 1500.00 | 0.00 | 12.75 | 1512.75 |
| | 42017365 | 31-DEC-11 | Accrual-1210A-M | * | 342.12 | 0.00 | 2.74 | 344.86 |
| | 42016307 | 31-DEC-11 | Accrual-1000A-R | * | 1254.44 | 0.00 | 10.04 | 1264.48 |
| | 42018444 | 31-DEC-11 | Accrual-1800A-R | * | 524.58 | 0.00 | 4.20 | 528.78 |
| | 42000991 | 31-DEC-11 | 5715A-HughesNet | | 160.00 | 9.60 | 1.36 | 170.96 |
| | 42000560 | 31-DEC-11 | 5625A-PRM SUPPO | | 103.32 | 0.00 | 0.83 | 104.15 |
| | | | Sub Total | | 4044.60 | 9.60 | 33.92 | 4088.12 |
| JAN-2012 | 21194763 | 22-JAN-12 | WYNREWARDS 5% | | 156.92 | 0.00 | 0.00 | 156.92 |
| | 42032194 | 31-JAN-12 | 5715A-HughesNet | | 160.00 | 9.60 | 0.00 | 169.60 |
| | 42031937 | 31-JAN-12 | 5625A-PRM SUPPO | | 103.32 | 0.00 | 0.00 | 103.32 |
| | 42047711 | 31-JAN-12 | Accrual-1000A-R | * | 1598.14 | 0.00 | 0.00 | 1598.14 |
| | 42048313 | 31-JAN-12 | Accrual-1210A-M | * | 435.86 | 0.00 | 0.00 | 435.86 |
| | 42048477 | 31-JAN-12 | Accrual-1800A-R | * | 668.31 | 0.00 | 0.00 | 668.31 |

Page 11 of 12

Report Date : 15-MAR-12

ITEMIZED STATEMENT
-----------------

Customer No : 05311-88499-02-DAY
Address   : 3620 W. Silversprings Blvd.,Ocala,FL,34475.US
As of Date:   15-MAR-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| | | | | | | | | |
| | | | | Sub Total | 3122.55 | 9.60 | 0.00 | 3132.15 |
| | | | | | | | | |
| FEB-2012 | 21196590 | 22-FEB-12 | WYNREWARDS 5% | | 309.33 | 0.00 | 0.00 | 309.33 |
| | 42061068 | 29-FEB-12 | 5715A-HughesNet | | 160.00 | 9.60 | 0.00 | 169.60 |
| | 42077934 | 29-FEB-12 | Accrual-1800A-R | | 945.00 | 0.00 | 0.00 | 945.00 |
| | 42075672 | 29-FEB-12 | Accrual-1000A-R | * | 2259.79 | 0.00 | 0.00 | 2259.79 |
| | 42063539 | 29-FEB-12 | 5625A-PRM SUPPO | | 103.32 | 0.00 | 0.00 | 103.32 |
| | 42077174 | 29-FEB-12 | Accrual-1210A-M | * | 616.31 | 0.00 | 0.00 | 616.31 |
| | | | | | | | | |
| | | | | Sub Total | 4393.75 | 9.60 | 0.00 | 4403.35 |
| | | | | | | | | |
| MAR-2012 | 10595507 | 08-MAR-12 | GUEST SATISFACT | | 45.00 | 0.00 | 0.00 | 45.00 |
| | 10595346 | 08-MAR-12 | GUEST SRVCS TRA | | 160.00 | 0.00 | 0.00 | 160.00 |
| | 30673328 | 15-MAR-12 | GLOBAL CONFEREN | | 100.00 | 0.00 | 0.00 | 100.00 |
| | | | | | | | | |
| | | | | Sub Total | 305.00 | 0.00 | 0.00 | 305.00 |
| | | | | | | | | |
| | | | | Grand Total | 161068.62 | 928.16 | 39596.01 | 201592.79 |

Requested By: Jerilyn Marino

* Please note the accruals on your account are estimates.
  Make sure to promptly submit your actual gross room revenue and rooms sold.

******* END OF REPORT *******

Page 12 of 12

UPS CampusShip: Shipment Receipt                                    Page 1 of 1

 **Shipment Receipt**

**Transaction Date:** 15 Mar 2012              **Tracking Number:**    1Z22445X1391939283

| 1 | Address Information |

| Ship To: | Ship From: | Return Address: |
|---|---|---|
| Ocala Inn Kash, Inc. | Wyndham Hotel Group – 22 Sylvan | Wyndham Hotel Group – 22 Sylvan |
| Harish Patni | Jerilyn Marino | Jerilyn Marino |
| Days Inn | 22 Sylvan Way | 22 Sylvan Way |
| 1447 Ne Expressway | Parsippany NJ 07054 | Parsippany NJ 07054 |
| ATLANTA GA 303292301 | Telephone:(973) 753-7253 | Telephone:(973) 753-7253 |
| Telephone:(404) 607-9071 | | |

| 2 | Package Information |

| Weight | Dimensions / Packaging | Declared Value | Reference Numbers |
|---|---|---|---|
| 1.  Letter | UPS Letter | | Reference # 1 - 006-1696 |

| 3 | UPS Shipping Service and Shipping Options |

| | |
|---|---|
| **Service:** | UPS Next Day Air Saver |
| **Guaranteed By:** | 3:00 PM Friday, Mar 16, 2012 |
| **Shipping Fees Subtotal:** | 28.70 USD |
| Transportation | 25.40 USD |
| Fuel Surcharge | 3.30 USD |

| 4 | Payment Information |

Bill Shipping Charges to:                    Shipper's Account 22445X

**A discount has been applied to the Daily rates for this shipment**

Total Charged:                                                    28.70 USD
Negotiated Total:                                                 6.30 USD

Note: Your invoice may vary from the displayed reference rates.
* For delivery and guarantee information, see the UPS Service Guide. To speak to a customer service representative, call 1-800-PICK-UPS for domestic services and 1-800-782-7892 for international services.

# EXHIBIT "G"

# WYNDHAM

## HOTEL GROUP

Compliance Department
22 Sylvan Way
Parsippany, New Jersey 07054
Ph (973) 753-6000 □fax (800) 880-9445
www.wyndhamworldwide.com

March 28, 2012          <u>**VIA 2 DAY DELIVERY METHOD**</u>

Mr. Harish Pattni
Ocala Inn Kash, Inc.
1447 NE Expressway
Atlanta, GA 30329

RE:     **NOTICE OF TERMINATION of License Agreement, dated November 1, 2009, (the "Agreement") between Ocala Inn Kash, Inc. ("you" or "your") and Days Inns Worldwide, Inc. ("we", "our" or "us") for the Days® lodging facility located at Ocala, FL #5311-88499-02 (the "Facility")**

Dear Mr. Pattni:

We write to give you formal notice of the termination of the License granted under the Agreement to operate the Facility as part of the Days System (the "Notice"). This termination is a result of your failure to cure your default under the Agreement, due to your failure to meet your financial obligations. The termination of your Agreement is effective as of the date of this Notice (the "Termination Date").

Because your License is terminated, you must now perform your post-termination obligations such as removal of all items that display or refer to the Days Inn brand at the Facility. The de-identification procedures are specified in the attachment to this letter. These de-identification procedures must be completed within 10 days after the date of this Notice.

You must also immediately pay us the full amount of all Recurring Fees and other charges due under the Agreement through the date you complete the de-identification process. We estimate that, as of March 24, 2012, you owe us $203,836.35 in Recurring Fees. This amount is described in more detail in the attached itemized statement. Additionally, you must pay us Liquidated Damages of $200,000.00 as specified in the Agreement. You must also pay Damages of $2,500.00 for early termination of the Addendum to the Agreement for Satellite Connectivity Services (the "Addendum"), plus any additional fees and charges as per Schedule 3 of the Addendum. The Addendum also terminated on the Termination Date.

# WYNDHAM

## HOTEL GROUP

       

       

Mr. Harish Pattni
March 28, 2012
Page Two

Please know that, because your license has terminated, you also have lost your right to continue to use the seamless interface version of your property management system. You must now make your own arrangements with the software vendor for a new license. If the Facility has WynGuest system installed, please be advised that due to the termination you will have limited functionality from the system. Should you wish to continue using an independent version of the software and are interested in a minimum continuation agreement of 24 months, please contact Innlink Central Reservation Systems at 800-525-4658, an authorized reseller of the WynGuest product. If your property is planning to migrate to another property management system in less than 24 months, please contact your provider to expedite the installation. If you would like to inquire about the data maintained in the system, please contact Scott Robertson at 506-631-2104 to obtain reporting of that data.

If within the 10 day period described above, you do not timely remove the exterior signage which bears the Days Inn name and marks, we may exercise our rights under the Agreement and send an independent contractor to the Facility to remove all such signage at and around the Facility. The cost of sign removal will be added to your final invoice from us. If you object to the removal of the signage by our independent contractor, you must notify us within 10 days of the date of this letter.

If you do not timely complete each of these post-termination obligations, we will refer this matter to our legal department to ensure that we recover from you all amounts owed and that all of your post-termination obligations to us are performed.

This Notice does not modify, replace or affect any default under the Agreement, or any other default and termination notices, if any, from us or any of our affiliates regarding the Facility.

If you have any questions regarding your obligations under this letter, Larry Geer, Senior Director of Settlements at (973) 731-7131.

Sincerely,

Valerie Capers Workman
Vice President
Compliance & Government Relations

Enclosures

cc: Clyde Guinn
    Larry Geer

(Page 4 of 38)

```
                              ITEMIZED STATEMENT
                              ------------------


       As of Date (DD-MMM-YYYY):  24-MAR-2012
       Customer No             :  05311-88499-02-DAY
       Category Set            :
       Category Group          :
       Group No                :
       Bankruptcy              :  No Bankruptcy Sites
       Disputed                :  No
       Finance Charges Included:  Yes


                              Page 1 of 12
```

(Page 5 of 38)

## ITEMIZED STATEMENT
------------------------

Customer No : 05311-88499-02-DAY
Address :    3620 W. Silversprings Blvd.,Ocala,FL,34475,US
As of Date:   24-MAR-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|------------|--------------|-------------|---------|---------|-----------|----------------|-------|
| JUN-2009 | 2110273781 | 22-JUN-09 | WYNREWARDS CRDT | | (142.08) | 0.00 | 0.00 | (142.08) |
| | 2110259281 | 22-JUN-09 | WYNREWARDS 5% | | 2205.73 | 0.00 | 653.70 | 2859.43 |
| | 1009648811 | 25-JUN-09 | GDS & INTERNET | | 14.05 | 0.00 | 3.00 | 17.05 |
| | TA000964881 | 25-JUN-09 | T/A COMMISSIONS | | 23.82 | 0.00 | 5.08 | 28.90 |
| | 4102843681 | 30-JUN-09 | ROYALTY FEE : 1 | | 2967.80 | 0.00 | 1488.37 | 4456.17 |
| | 4101177081 | 30-JUN-09 | MSI SOFTWARE MA | | 293.32 | 19.07 | 156.67 | 469.06 |
| | 4102957281 | 30-JUN-09 | RESERVATION FEE | | 1365.19 | 0.00 | 684.66 | 2049.85 |
| | 4102953781 | 30-JUN-09 | MARKETING FEE : | | 890.34 | 0.00 | 446.55 | 1336.89 |
| | 4101106581 | 30-JUN-09 | DIRECWAY:1:Fran | | 150.00 | 9.75 | 80.23 | 239.98 |
| | | | Sub Total | | 7768.17 | 28.82 | 3518.26 | 11315.25 |
| JUL-2009 | 2110727781 | 22-JUL-09 | WYNREWARDS CRDT | | (134.76) | 0.00 | 0.00 | (134.76) |
| | 2110809581 | 22-JUL-09 | WYNREWARDS 5% | | 1660.18 | 0.00 | 806.77 | 2466.95 |
| | TM001551681 | 23-JUL-09 | MEMBER BENEFIT | | 11.52 | 0.00 | 5.60 | 17.12 |
| | 1015516811 | 23-JUL-09 | GDS & INTERNET | | 53.20 | 0.00 | 25.79 | 78.99 |
| | TR001551681 | 23-JUL-09 | TMC / CONSORTIA | | 3.76 | 0.00 | 1.87 | 5.63 |
| | TA001551681 | 23-JUL-09 | T/A COMMISSIONS | | 242.10 | 0.00 | 117.61 | 359.71 |
| | 4106087681 | 31-JUL-09 | RESERVATION FEE | | 1055.70 | 0.00 | 513.06 | 1568.76 |
| | 4106108881 | 31-JUL-09 | MARKETING FEE : | | 688.50 | 0.00 | 334.60 | 1023.10 |
| | 4106193281 | 31-JUL-09 | ROYALTY FEE : 1 | | 2295.00 | 0.00 | 1115.38 | 3410.38 |
| | 4104590681 | 31-JUL-09 | DIRECWAY:1:Fran | | 150.00 | 9.75 | 77.75 | 237.50 |
| | 4104481281 | 31-JUL-09 | MSI SOFTWARE MA | | 293.32 | 19.07 | 151.82 | 464.21 |
| | | | Sub Total | | 6318.52 | 28.82 | 3150.25 | 9497.59 |
| AUG-2009 | 2110920181 | 22-AUG-09 | WYNREWARDS CRDT | | (239.19) | 0.00 | 0.00 | (239.19) |
| | 2111008881 | 22-AUG-09 | WYNREWARDS 5% | | 1202.78 | 0.00 | 565.85 | 1768.63 |
| | 1022565811 | 24-AUG-09 | GDS & INTERNET | | 30.45 | 0.00 | 14.34 | 44.79 |
| | TA002256581 | 24-AUG-09 | T/A COMMISSIONS | | 70.69 | 0.00 | 33.33 | 104.02 |
| | TM002256581 | 24-AUG-09 | MEMBER BENEFIT | | 19.18 | 0.00 | 9.09 | 28.27 |
| | 4109616681 | 31-AUG-09 | MARKETING FEE : | | 565.95 | 0.00 | 266.25 | 832.20 |
| | 4107761281 | 31-AUG-09 | DIRECWAY:1:Fran | | 150.00 | 9.75 | 75.27 | 235.02 |
| | 4107952381 | 31-AUG-09 | MSI SOFTWARE MA | | 293.32 | 19.07 | 146.98 | 459.37 |
| | 4109668681 | 31-AUG-09 | ROYALTY FEE : 1 | | 1886.49 | 0.00 | 887.61 | 2774.10 |

(Page 6 of 38)

ITEMIZED STATEMENT
------------------

```
Customer No :   05311-88499-02-DAY
Address :       3620 W. Silversprings Blvd.,Ocala,FL,34475,US
As of Date:     24-MAR-2012
```

| Mon-Year | Invoice No | Invoice Date | Description   Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|------------------------|---------|------------|----------------|-------|
|          | 4109718401 | 31-AUG-09 | RESERVATION FEE | 867.79 | 0.00 | 408.31 | 1276.10 |
|          |            |           | **Sub Total** | 4847.46 | 28.82 | 2407.03 | 7283.31 |
| SEP-2009 | TA0029680#1 | 22-SEP-09 | T/A COMMISSIONS | 94.97 | 0.00 | 41.68 | 136.65 |
|          | 10296800#1 | 22-SEP-09 | GDS & INTERNET | 32.45 | 0.00 | 14.23 | 46.68 |
|          | 2111510601 | 22-SEP-09 | WYNREWARDS CRDT | (284.83) | 0.00 | 0.00 | (284.83) |
|          | 2111320501 | 22-SEP-09 | WYNREWARDS 5% | 1142.91 | 0.00 | 502.35 | 1645.26 |
|          | 4113187701 | 28-SEP-09 | MARKETING FEE : | 559.87 | 0.00 | 246.12 | 805.99 |
|          | 4112935201 | 28-SEP-09 | ROYALTY FEE : 1 | 1866.25 | 0.00 | 820.24 | 2686.49 |
|          | 4113027401 | 28-SEP-09 | RESERVATION FEE | 858.47 | 0.00 | 377.38 | 1235.85 |
|          | 4113318501 | 30-SEP-09 | MSI SOFTWARE MA | 307.99 | 20.02 | 144.10 | 472.11 |
|          | 4111460401 | 30-SEP-09 | DIRECWAY:1:Fran | 150.00 | 9.75 | 70.31 | 230.06 |
|          |            |           | **Sub Total** | 4728.08 | 29.77 | 2216.41 | 6974.26 |
| OCT-2009 | 2111758301 | 22-OCT-09 | WYNREWARDS 5% | 1157.28 | 0.00 | 474.52 | 1631.80 |
|          | 2111566301 | 22-OCT-09 | WYNREWARDS CRDT | (64.99) | 0.00 | 30.91 | 106.22 |
|          | TA0036860#1 | 26-OCT-09 | T/A COMMISSIONS | 75.31 | 0.00 | 7.93 | 27.33 |
|          | 10368600#1 | 26-OCT-09 | GDS & INTERNET | 19.40 | 0.00 | 4.29 | 14.91 |
|          | TW0036860#1 | 26-OCT-09 | MEMBER BENEFIT | 10.62 | 0.00 | 816.36 | 2807.56 |
|          | 4117719101 | 31-OCT-09 | ROYALTY FEE:Fra | 1991.20 | 0.00 | 134.42 | 462.43 |
|          | 4114694801 | 31-OCT-09 | MSI SOFTWARE MA | 307.99 | 20.02 | 244.92 | 842.28 |
|          | 4117837901 | 31-OCT-09 | MARKETING FEE:F | 597.36 | 0.00 | 375.58 | 1291.53 |
|          | 4117876901 | 31-OCT-09 | RESERVATION FEE | 915.95 | 0.00 | 65.60 | 225.35 |
|          | 4114911201 | 31-OCT-09 | DIRECWAY:1:Fran | 150.00 | 9.75 | | |
|          |            |           | **Sub Total** | 5160.12 | 29.77 | 2154.53 | 7344.42 |
| NOV-2009 | 1042391301 | 04-NOV-09 | GUEST SRVCS TRA | 100.00 | 0.00 | 41.00 | 141.00 |
|          | 1042400801 | 04-NOV-09 | GUEST SATISFACT | 23.50 | 0.00 | 9.55 | 33.05 |
|          | 1042551501 | 11-NOV-09 | GUEST SRVCS TRA | (100.00) | 0.00 | 0.00 | (100.00) |
|          | 1042715101 | 16-NOV-09 | GUEST SATISFACT | (23.50) | 0.00 | 0.00 | (23.50) |

(Page 7 of 38)

## ITEMIZED STATEMENT

Customer No : 05311-88499-02-DAY
Address :    3620 W. Silversprings Blvd.,Ocala,FL,34475,US
As of Date:  24-MAR-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|-----|----------------|-------|
| | TA004242281 | 22-NOV-09 | T/A COMMISSIONS | | 11.17 | 0.00 | 4.39 | 15.56 |
| | 1042422811 | 22-NOV-09 | GDS & INTERNET | | 32.45 | 0.00 | 12.78 | 45.23 |
| | 2111980681 | 22-NOV-09 | WYNREWARDS 5% | | 778.52 | 0.00 | 307.19 | 1085.71 |
| | 4118183581 | 30-NOV-09 | DIRECWAY:1:Fran | | 150.00 | 9.75 | 63.12 | 222.87 |
| | 4117997281 | 30-NOV-09 | MSI SOFTWARE MA | | 307.99 | 20.02 | 129.34 | 457.35 |
| | | | Sub Total | | 1280.13 | 29.77 | 567.37 | 1877.27 |
| DEC-2009 | 30377724 | 22-DEC-09 | RNW 5157A FL OC | | 17500.00 | 0.00 | 6632.50 | 24132.50 |
| | 21121696. | 22-DEC-09 | WYNREWARDS 5% | | 591.47 | 0.00 | 224.18 | 815.65 |
| | 110003981 | 24-DEC-09 | GDS & INTERNET | | 5.35 | 0.00 | 1.98 | 7.33 |
| | TA010003981 | 24-DEC-09 | T/A COMMISSIONS | | 2.43 | 0.00 | 0.98 | 3.41 |
| | 30386558 | 31-DEC-09 | CK#1386 | | 20.00 | 0.00 | 7.58 | 27.58 |
| | 3038347681 | 31-DEC-09 | DEC-09 PRORATE | | 154.84 | 10.06 | 62.53 | 227.43 |
| | 41217115 | 31-DEC-09 | 5032A-MSI SOFTW | | 307.98 | 20.02 | 124.26 | 452.26 |
| | 41233315 | 31-DEC-09 | Accrual-1800A-R | * | 449.54 | 0.00 | 170.38 | 619.92 |
| | 41232456 | 31-DEC-09 | Accrual-1000A-R | * | 1901.90 | 0.00 | 720.85 | 2622.75 |
| | 41231227 | 31-DEC-09 | Accrual-1210A-M | * | 518.70 | 0.00 | 196.58 | 715.28 |
| | | | Sub Total | | 21452.21 | 30.08 | 8141.82 | 29624.11 |
| JAN-2010 | 21125386 | 22-JAN-10 | WYNREWARDS 5% | | 529.87 | 0.00 | 193.38 | 723.25 |
| | 2112568781 | 22-JAN-10 | WYNREWARDS 5% | | 4.80 | 0.00 | 1.68 | 6.48 |
| | 41265601 | 31-JAN-10 | Actual-1000A-RO | | 2512.73 | 0.00 | 917.17 | 3429.90 |
| | 41267504 | 31-JAN-10 | Actual-1210A-MA | | 685.29 | 0.00 | 250.11 | 935.40 |
| | 30397096#1 | 31-JAN-10 | HARDWARE MAINT | | 8.90 | 0.53 | 3.48 | 12.91 |
| | 41249822 | 31-JAN-10 | 5715A-HughesNet | | 160.00 | 9.60 | 61.88 | 231.48 |
| | 41248847 | 31-JAN-10 | 5032A-MSI SOFTW | | 307.98 | 18.48 | 119.18 | 445.64 |
| | 41267664 | 31-JAN-10 | Actual-1800A-RE | | 593.92 | 0.00 | 216.84 | 810.76 |
| | | | Sub Total | | 4803.49 | 28.61 | 1763.72 | 6595.82 |
| FEB-2010 | 21129108 | 22-FEB-10 | WYNREWARDS 5% | | 882.54 | 0.00 | 308.48 | 1191.02 |

(Page 8 of 38)

ITEMIZED STATEMENT
-------------------

Customer No :   05311-88499-02-DAY
Address :       3620 W. Silversprings Blvd.,Ocala,FL,34475,US
As of Date:     24-MAR-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|-----|-----|-------|
| | 41301610 | 28-FEB-10 | Actual-1800A-RE | | 724.36 | 0.00 | 253.22 | 977.58 |
| | 41295429 | 28-FEB-10 | 5715A-HughesNet | | 160.00 | 9.60 | 59.26 | 228.86 |
| | 41300138 | 28-FEB-10 | Actual-1000A-RO | | 3064.58 | 0.00 | 1071.07 | 4135.65 |
| | 41300564 | 28-FEB-10 | Actual-1210A-MA | | 835.80 | 0.00 | 292.07 | 1127.87 |
| | 41296238 | 28-FEB-10 | 5032A-MSI SOFTW | | 307.98 | 18.48 | 114.11 | 440.57 |
| | 30404459 | 28-FEB-10 | HARDWARE MAINT | | 8.90 | 0.53 | 3.34 | 12.77 |
| | | | Sub Total | | 5984.16 | 28.61 | 2101.55 | 8114.32 |
| MAR-2010 | 30413698 | 12-MAR-10 | '10 GLOBAL CONF | | 999.00 | 0.00 | 334.65 | 1333.65 |
| | 21131601 | 22-MAR-10 | WYNREWARDS 5% | | 814.19 | 0.00 | 272.33 | 1086.52 |
| | 30420114 | 30-MAR-10 | Dash for Cash 5 | | (83.38) | 0.00 | 0.00 | (83.38) |
| | 41319458 | 31-MAR-10 | 5052A-HARDWARE | | 8.90 | 0.53 | 3.19 | 12.62 |
| | 41320084 | 31-MAR-10 | 5032A-MSI SOFTW | | 307.98 | 18.48 | 109.22 | 435.68 |
| | 41334941 | 31-MAR-10 | Actual-1210A-MA | | 962.69 | 0.00 | 322.00 | 1284.69 |
| | 41336092 | 31-MAR-10 | Actual-1800A-RE | | 834.33 | 0.00 | 279.02 | 1113.35 |
| | 41320388 | 31-MAR-10 | 5715A-HughesNet | | 160.00 | 9.60 | 56.71 | 226.31 |
| | 41334528 | 31-MAR-10 | Actual-1000A-RO | | 3529.86 | 0.00 | 1180.72 | 4710.58 |
| | | | Sub Total | | 7533.57 | 28.61 | 2557.84 | 10120.02 |
| APR-2010 | 30426331 | 14-APR-10 | ONLINE LANG LIB | | 50.00 | 0.00 | 16.79 | 66.79 |
| | TAO126147 | 18-APR-10 | T/A COMMISSIONS | | 5.31 | 0.00 | 1.67 | 6.98 |
| | 1126147 | 18-APR-10 | GDS & INTERNET | | 5.35 | 0.00 | 1.67 | 7.02 |
| | 21135247 | 22-APR-10 | WYNREWARDS 5% | | 1140.49 | 0.00 | 363.87 | 1504.36 |
| | 30432909 | 29-APR-10 | Dash for Cash 5 | | (97.48) | 0.00 | 0.00 | (97.48) |
| | 41353022 | 30-APR-10 | 5052A-HARDWARE | | 8.90 | 0.53 | 3.05 | 12.48 |
| | 41371504 | 30-APR-10 | Actual-1800A-RE | | 477.03 | 0.00 | 152.16 | 629.19 |
| | 41353510 | 30-APR-10 | 5032A-MSI SOFTW | | 307.98 | 18.48 | 104.15 | 430.61 |
| | 41352171 | 30-APR-10 | 5715A-HughesNet | | 160.00 | 9.60 | 54.09 | 223.69 |
| | 41370729 | 30-APR-10 | Actual-1210A-MA | | 550.42 | 0.00 | 175.59 | 726.01 |
| | 41369970 | 30-APR-10 | Actual-1000A-RO | | 2018.20 | 0.00 | 643.75 | 2661.95 |

(Page 9 of 38)

Customer No : 05311-88499-02-DAY
Address :    3620 W. Silversprings Blvd.,Ocala,FL,34475,US
As of Date:  24-MAR-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|-----|----------------|-------|
| | | | | Sub Total | 4626.20 | 28.61 | 1516.79 | 6171.60 |
| | | | | | | | | |
| JUN-2010 | 30447195 | 04-JUN-10 | OTA Credit | | (262.70) | 0.00 | 0.00 | (262.70) |
| | 21140143 | 22-JUN-10 | WYNREWARDS 5% | | 996.93 | 0.00 | 287.57 | 1284.50 |
| | 41439130 | 30-JUN-10 | Actual-1210A-MA | | 562.48 | 0.00 | 162.31 | 724.79 |
| | 41421788 | 30-JUN-10 | 5032A-MSI SOFTW | | 307.98 | 18.48 | 94.20 | 420.66 |
| | 41439407 | 30-JUN-10 | Actual-1800A-RE | | 487.48 | 0.00 | 140.66 | 628.14 |
| | 41437539 | 30-JUN-10 | Actual-1000A-RO | | 2062.41 | 0.00 | 595.05 | 2657.46 |
| | 41420356 | 30-JUN-10 | 5715A-HughesNet | | 160.00 | 9.60 | 48.91 | 218.51 |
| | 41419655 | 30-JUN-10 | 5052A-HARDWARE | | 8.90 | 0.53 | 2.75 | 12.18 |
| | 30456520 | 30-JUN-10 | Dash for Cash 5 | | (86.03) | 0.00 | 0.00 | (86.03) |
| | | | | Sub Total | 4237.45 | 28.61 | 1331.45 | 5597.51 |
| | | | | | | | | |
| JUL-2010 | 21143098 | 22-JUL-10 | WYNREWARDS 5% | | 393.57 | 0.00 | 107.43 | 501.00 |
| | 30468359 | 29-JUL-10 | Dash for Cash 5 | | (84.63) | 0.00 | 0.00 | (84.63) |
| | 41471323 | 31-JUL-10 | Actual-1210A-MA | | 560.18 | 0.00 | 152.88 | 713.06 |
| | 41471558 | 31-JUL-10 | Actual-1800A-RE | | 485.49 | 0.00 | 132.58 | 618.07 |
| | 41470337 | 31-JUL-10 | Actual-1000A-RO | | 2054.00 | 0.00 | 560.77 | 2614.77 |
| | 41453727 | 31-JUL-10 | 5052A-HARDWARE | | 8.90 | 0.53 | 2.61 | 12.04 |
| | 41455050 | 31-JUL-10 | 5715A-HughesNet | | 160.00 | 9.60 | 46.29 | 215.89 |
| | 30471816 | 31-JUL-10 | ACH072110 | | 20.00 | 0.00 | 5.46 | 25.46 |
| | | | | Sub Total | 3597.51 | 10.13 | 1008.02 | 4615.66 |
| | | | | | | | | |
| AUG-2010 | 21144998 | 22-AUG-10 | WYNREWARDS 5% | | 59.82 | 0.00 | 15.48 | 75.30 |
| | 41502048 | 31-AUG-10 | Actual-1000A-RO | | 1149.76 | 0.00 | 296.65 | 1446.41 |
| | 41495931 | 31-AUG-10 | 5052A-HARDWARE | | 8.90 | 0.53 | 2.46 | 11.89 |
| | 41495301 | 31-AUG-10 | 5715A-HughesNet | | 160.00 | 9.60 | 43.74 | 213.34 |
| | 41504962 | 31-AUG-10 | Actual-1210A-MA | | 313.57 | 0.00 | 80.88 | 394.45 |
| | 41504232 | 31-AUG-10 | Actual-180DA-RE | | 271.76 | 0.00 | 70.11 | 341.87 |

(Page 10 of 38)

## ITEMIZED STATEMENT

Customer No :  05311-88499-02-DAY
Address :      3620 W. Silversprings Blvd.,Ocala,FL,34475,US
As of Date:    24-MAR-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| | | | | Sub Total | 1963.81 | 10.13 | 509.32 | 2483.26 |
| SEP-2010 | 21147101 | 22-SEP-10 | WYNREWARDS 5% | | 94.30 | 0.00 | 22.84 | 117.14 |
| | 41534718 | 30-SEP-10 | Actual-1000A-RO | | 1275.36 | 0.00 | 309.29 | 1584.65 |
| | 30491413 | 30-SEP-10 | REMEDIAL TRAINI | | 250.00 | 15.00 | 64.30 | 329.30 |
| | 41535783 | 30-SEP-10 | Actual-1800A-RE | | 301.45 | 0.00 | 73.07 | 374.52 |
| | 41537477 | 30-SEP-10 | Actual-1210A-MA | | 347.83 | 0.00 | 84.34 | 432.17 |
| | 41518652 | 30-SEP-10 | 5052A-HARDWARE | | 8.90 | 0.53 | 2.32 | 11.75 |
| | 30495748 | 30-SEP-10 | ACH092010 | | 20.00 | 0.00 | 4.85 | 24.85 |
| | 41517773 | 30-SEP-10 | 5715A-HughesNet | | 160.00 | 9.60 | 41.12 | 210.72 |
| | | | | Sub Total | 2457.84 | 25.13 | 602.13 | 3085.10 |
| OCT-2010 | 21150144 | 22-OCT-10 | WYNREWARDS 5% | | 118.81 | 0.00 | 27.00 | 145.81 |
| | 41550490 | 31-OCT-10 | 5715A-HughesNet | | 160.00 | 9.60 | 38.57 | 208.17 |
| | 30505407 | 31-OCT-10 | ACH102110 | | 20.00 | 0.00 | 4.55 | 24.55 |
| | 41568259 | 31-OCT-10 | Actual-1800A-RE | | 362.49 | 0.00 | 82.49 | 444.98 |
| | 41553138 | 31-OCT-10 | 5052A-HARDWARE | | 8.90 | 0.53 | 2.17 | 11.60 |
| | 41569816 | 31-OCT-10 | Actual-1000A-RO | | 1533.61 | 0.00 | 348.87 | 1882.48 |
| | 41568240 | 31-OCT-10 | Actual-1210A-MA | | 418.26 | 0.00 | 95.11 | 513.37 |
| | | | | Sub Total | 2622.07 | 10.13 | 598.76 | 3230.96 |
| NOV-2010 | 21154704 | 22-NOV-10 | WYNREWARDS 5% | | 92.42 | 0.00 | 19.59 | 112.01 |
| | 41584914 | 30-NOV-10 | 5715A-HughesNet | | 160.00 | 9.60 | 35.94 | 205.54 |
| | 41584316 | 30-NOV-10 | 5052A-HARDWARE | | 8.90 | 0.53 | 2.02 | 11.45 |
| | 41602382 | 30-NOV-10 | Actual-1800A-RE | | 357.11 | 0.00 | 75.76 | 432.87 |
| | 41602249 | 30-NOV-10 | Actual-1210A-MA | | 412.05 | 0.00 | 87.37 | 499.42 |
| | 41600578 | 30-NOV-10 | Actual-1000A-RO | | 1510.84 | 0.00 | 320.30 | 1831.14 |

(Page 11 of 38)

ITEMIZED STATEMENT
--------------------

Customer No :   05311-88499-02-DAY
Address :       3620 W. Silversprings Blvd.,Ocala,FL,34475,US
As of Date:     24-MAR-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| | | | | Sub Total | 2541.32 | 10.13 | 540.98 | 3092.43 |
| DEC-2010 | 21156631 | 22-DEC-10 | WYNREWARDS 5% | | 123.38 | 0.00 | 24.23 | 147.61 |
| | 41634559 | 31-DEC-10 | Actual-1210A-MA | | 333.56 | 0.00 | 65.53 | 399.09 |
| | 41618353 | 31-DEC-10 | 5052A-HARDWARE | | 8.90 | 0.53 | 1.88 | 11.31 |
| | 41635908 | 31-DEC-10 | Actual-1000A-RO | | 1223.05 | 0.00 | 240.36 | 1463.41 |
| | 41617309 | 31-DEC-10 | 5715A-HughesNet | | 160.00 | 9.60 | 33.32 | 202.92 |
| | 41633979 | 31-DEC-10 | Actual-1800A-RE | | 289.09 | 0.00 | 56.81 | 345.90 |
| | | | | Sub Total | 2137.98 | 10.13 | 422.13 | 2570.24 |
| JAN-2011 | 21158764 | 22-JAN-11 | WYNREWARDS 5% | | 252.56 | 0.00 | 48.97 | 301.53 |
| | 41667995 | 31-JAN-11 | Actual-1000A-RO | | 1545.26 | 0.00 | 292.82 | 1838.08 |
| | 41648274 | 31-JAN-11 | 5715A-HughesNet | | 160.00 | 9.60 | 32.13 | 201.73 |
| | 41667945 | 31-JAN-11 | Actual-1800A-RE | | 365.24 | 0.00 | 69.21 | 434.45 |
| | 41666666 | 31-JAN-11 | Actual-1210A-MA | | 421.43 | 0.00 | 79.84 | 501.27 |
| | | | | Sub Total | 2744.49 | 9.60 | 522.97 | 3277.06 |
| FEB-2011 | 30541433 | 14-FEB-11 | SUMMIT 2011 FEE | | 599.00 | 0.00 | 109.32 | 708.32 |
| | 21161162 | 22-FEB-11 | WYNREWARDS 5% | | 170.92 | 0.00 | 30.50 | 201.42 |
| | 41700357 | 28-FEB-11 | Actual-1000A-RO | | 2108.30 | 0.00 | 370.00 | 2478.30 |
| | 41685521 | 28-FEB-11 | 5715A-HughesNet | | 160.00 | 9.60 | 29.76 | 199.36 |
| | 41699451 | 28-FEB-11 | Actual-1210A-MA | | 574.99 | 0.00 | 100.88 | 675.87 |
| | 41699211 | 28-FEB-11 | Actual-1800A-RE | | 498.33 | 0.00 | 87.42 | 585.75 |
| | | | | Sub Total | 4111.54 | 9.60 | 727.88 | 4849.02 |
| MAR-2011 | 21164667 | 22-MAR-11 | WYNREWARDS 5% | | 7.81 | 0.00 | 1.28 | 9.09 |
| | 41716544 | 31-MAR-11 | 5715A-HughesNet | | 160.00 | 9.60 | 27.13 | 196.73 |

Page 8 of 12

(Page 12 of 38)

ITEMIZED STATEMENT
-------------------

Customer No : 05311-88499-02-DAY
Address :    3620 W. Silversprings Blvd.,Ocala,FL,34475,US
As of Date:  24-MAR-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
|          | 41730025  | 31-MAR-11    | Actual-1000A-RO | | 3323.40 | 0.00 | 531.73 | 3855.13 |
|          | 41731311  | 31-MAR-11    | Actual-1800A-RE | | 785.53  | 0.00 | 125.70 | 911.23  |
|          | 41732029  | 31-MAR-11    | Actual-1210A-MA | | 906.38  | 0.00 | 145.04 | 1051.42 |
|          |           |              | Sub Total | | 5183.12 | 9.60 | 830.88 | 6023.60 |
| APR-2011 | 41767252  | 30-APR-11    | Actual-1210A-MA | | 459.65  | 0.00  | 66.61  | 526.26  |
|          | 41749012  | 30-APR-11    | 5625A-PRM SUPPO | | 98.40   | 0.00  | 14.31  | 112.71  |
|          | 41765775  | 30-APR-11    | Actual-1000A-RO | | 1685.37 | 0.00  | 244.36 | 1929.73 |
|          | 41746753  | 30-APR-11    | 5715A-HughesNet | | 160.00  | 9.60  | 24.59  | 194.19  |
|          | 41763570  | 30-APR-11    | Actual-1800A-RE | | 398.36  | 0.00  | 57.76  | 456.12  |
|          |           |              | Sub Total | | 2801.78 | 9.60 | 407.63 | 3219.01 |
| MAY-2011 | 21169448  | 22-MAY-11    | WYNREWARDS 5%   | | 23.45   | 0.00 | 3.12   | 26.57   |
|          | 41792932  | 31-MAY-11    | Actual-1000A-RO | | 1232.54 | 0.00 | 159.59 | 1392.13 |
|          | 41794770  | 31-MAY-11    | Actual-1210A-MA | | 336.15  | 0.00 | 43.52  | 379.67  |
|          | 41778530  | 31-MAY-11    | 5715A-HughesNet | | 160.00  | 9.60 | 21.96  | 191.56  |
|          | 41778332  | 31-MAY-11    | 5625A-PRM SUPPO | | 98.40   | 0.00 | 12.78  | 111.18  |
|          | 41794826  | 31-MAY-11    | Actual-1800A-RE | | 356.39  | 0.00 | 46.14  | 402.53  |
|          |           |              | Sub Total | | 2206.93 | 9.60 | 287.11 | 2503.64 |
| JUN-2011 | 30594433  | 06-JUN-11    | PM SYSTEM TRAIN | | 12655.00 | 0.00  | 1600.86 | 14255.86 |
|          | 30594429  | 06-JUN-11    | EQUIP SHIPPING  | | 79.06    | 0.00  | 10.04   | 89.10    |
|          | 30594430  | 06-JUN-11    | PM SYSTEM HW WR | | 303.19   | 0.00  | 38.36   | 341.55   |
|          | 30594431  | 06-JUN-11    | SoftHotel Hardw | | 1015.93  | 60.96 | 136.21  | 1213.10  |
|          | 30594432  | 06-JUN-11    | PM SYSTEM SOFTW | | 5135.25  | 308.12 | 688.58 | 6131.95  |
|          | 21174387  | 22-JUN-11    | WYNREWARDS 5%   | | 43.19    | 0.00  | 5.13    | 48.32    |
|          | 41824141  | 30-JUN-11    | Actual-1000A-RO | | 1448.16  | 0.00  | 165.83  | 1613.99  |
|          | 41826390  | 30-JUN-11    | Actual-1800A-RE | | 605.59   | 0.00  | 69.34   | 674.93   |
|          | 41824971  | 30-JUN-11    | Actual-1210A-MA | | 394.95   | 0.00  | 45.21   | 440.16   |
|          | 41811927  | 30-JUN-11    | 5625A-PRM SUPPO | | 98.40    | 0.00  | 11.30   | 109.70   |

Page 9 of 12

(Page 13 of 38)

ITEMIZED STATEMENT
-------------------

Customer No :   05311-88499-02-0AY
Address :       3620 W. Silversprings Blvd.,Ocala,FL,34475,US
As of Date:     24-MAR-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|-----------|----------------|-------|
|          | 41810334  | 30-JUN-11    | 5715A-HughesNet |      | 160.00 | 9.60 | 19.42 | 189.02 |
|          |           |              |             | Sub Total | 21938.72 | 378.68 | 2790.28 | 25107.68 |
| JUL-2011 | 41861685  | 31-JUL-11    | Actual-1800A-RE |      | 830.50 | 0.00 | 82.21 | 912.71 |
|          | 41859191  | 31-JUL-11    | Actual-1000A-RO |      | 1985.98 | 196.61 | 196.61 | 2182.59 |
|          | 41843339  | 31-JUL-11    | 5715A-HughesNet |      | 160.00 | 9.60 | 16.79 | 186.39 |
|          | 41842437  | 31-JUL-11    | 5625A-PRM SUPPO |      | 98.40 | 0.00 | 9.77 | 108.17 |
|          | 41859938  | 31-JUL-11    | Actual-1210A-MA |      | 541.63 | 0.00 | 53.62 | 595.25 |
|          |           |              |             | Sub Total | 3616.51 | 9.60 | 359.00 | 3985.11 |
| AUG-2011 | 41874039  | 31-AUG-11    | 5715A-HughesNet |      | 160.00 | 9.60 | 14.16 | 183.76 |
|          | 41888627  | 31-AUG-11    | Actual-1210A-MA |      | 367.84 | 0.00 | 30.71 | 398.55 |
|          | 41888357  | 31-AUG-11    | Actual-1800A-RE |      | 564.02 | 0.00 | 47.09 | 611.11 |
|          | 41875074  | 31-AUG-11    | 5625A-PRM SUPPO |      | 98.39 | 0.00 | 8.24 | 106.63 |
|          | 41889818  | 31-AUG-11    | Actual-1000A-RO |      | 1348.73 | 0.00 | 112.64 | 1461.37 |
|          |           |              |             | Sub Total | 2538.98 | 9.60 | 212.84 | 2761.42 |
| SEP-2011 | 30622744  | 15-SEP-11    | ONLINE LRNG LIB |      | 50.00 | 0.00 | 3.82 | 53.82 |
|          | 30629276  | 28-SEP-11    | GLOBAL CONFEREN |      | 999.00 | 0.00 | 0.00 | 999.00 |
|          | 41911542  | 30-SEP-11    | 5625A-PRM SUPPO |      | 103.32 | 0.00 | 7.08 | 110.40 |
|          | 41923265  | 30-SEP-11    | Actual-1210A-MA |      | 418.99 | 0.00 | 28.69 | 447.68 |
|          | 41922227  | 30-SEP-11    | Actual-1000A-RO |      | 1536.31 | 0.00 | 105.23 | 1641.54 |
|          | 41923991  | 30-SEP-11    | Actual-1800A-RE |      | 642.46 | 0.00 | 44.02 | 686.48 |
|          | 41910384  | 30-SEP-11    | 5715A-HughesNet |      | 160.00 | 9.60 | 11.62 | 181.22 |
|          |           |              |             | Sub Total | 3910.08 | 9.60 | 200.46 | 4120.14 |
| OCT-2011 | 41939490  | 31-OCT-11    | 5715A-HughesNet |      | 160.00 | 9.60 | 8.99 | 178.59 |

(Page 14 of 38)

ITEMIZED STATEMENT
-------------------

Customer No :   05311-88499-02-DAY
Address :       3620 W. Silversprings Blvd.,Ocala,FL,34475,US
As of Date:     24-MAR-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
|          | 41955676  | 31-OCT-11    | Accrual-1800A-R | * | 654.37  | 0.00 | 34.68 | 689.05 |
|          | 41953894  | 31-OCT-11    | Accrual-1210A-M | * | 426.77  | 0.00 | 22.61 | 449.38 |
|          | 41940263  | 31-OCT-11    | 5625A-PRM SUPPO |   | 103.32  | 0.00 | 5.47  | 108.79 |
|          | 41953808  | 31-OCT-11    | Accrual-1000A-R | * | 1564.81 | 0.00 | 82.93 | 1647.74 |
|          |           |              | Sub Total    |   | 2909.27 | 9.60 | 154.68 | 3073.55 |
| NOV-2011 | 21189868  | 22-NOV-11    | WYNREWARDS 5%   |   | 223.48  | 0.00 | 9.38  | 232.86 |
|          | 41969821  | 30-NOV-11    | 5625A-PRM SUPPO |   | 103.32  | 0.00 | 3.93  | 107.25 |
|          | 41986282  | 30-NOV-11    | Accrual-1210A-M | * | 431.36  | 0.00 | 16.39 | 447.75 |
|          | 30648009  | 30-NOV-11    | ACH11711        |   | 20.00   | 0.00 | 0.76  | 20.76 |
|          | 41969062  | 30-NOV-11    | 5715A-HughesNet |   | 160.00  | 9.60 | 6.45  | 176.05 |
|          | 41984868  | 30-NOV-11    | Accrual-1000A-R | * | 1581.64 | 0.00 | 60.10 | 1641.74 |
|          | 41985447  | 30-NOV-11    | Accrual-1800A-R | * | 661.41  | 0.00 | 25.13 | 686.54 |
|          |           |              | Sub Total    |   | 3181.21 | 9.60 | 122.14 | 3312.95 |
| DEC-2011 | 21191625  | 22-DEC-11    | WYNREWARDS 5%   |   | 160.14  | 0.00 | 4.32  | 164.46 |
|          | 30653350  | 30-DEC-11    | P.Pencek        |   | 1500.00 | 0.00 | 34.50 | 1534.50 |
|          | 42017365  | 31-DEC-11    | Accrual-1210A-M | * | 342.12  | 0.00 | 7.70  | 349.82 |
|          | 42016307  | 31-DEC-11    | Accrual-1000A-R | * | 1254.44 | 0.00 | 28.23 | 1282.67 |
|          | 42018444  | 31-DEC-11    | Accrual-1800A-R | * | 524.58  | 0.00 | 11.81 | 536.39 |
|          | 42000991  | 31-DEC-11    | 5715A-HughesNet |   | 160.00  | 9.60 | 3.82  | 173.42 |
|          | 42000560  | 31-DEC-11    | 5625A-PRM SUPPO |   | 103.32  | 0.00 | 2.33  | 105.65 |
|          |           |              | Sub Total    |   | 4044.60 | 9.60 | 92.71 | 4146.91 |
| JAN-2012 | 21194763  | 22-JAN-12    | WYNREWARDS 5%   |   | 156.92  | 0.00 | 1.80  | 158.72 |
|          | 42032194  | 31-JAN-12    | 5715A-HughesNet |   | 160.00  | 9.60 | 1.19  | 170.79 |
|          | 42031937  | 31-JAN-12    | 5625A-PRM SUPPO |   | 103.32  | 0.00 | 0.72  | 104.04 |
|          | 42047711  | 31-JAN-12    | Accrual-1000A-R | * | 1598.14 | 0.00 | 11.19 | 1609.33 |
|          | 42048313  | 31-JAN-12    | Accrual-1210A-M | * | 435.86  | 0.00 | 3.05  | 438.91 |
|          | 42048477  | 31-JAN-12    | Accrual-1800A-R | * | 668.31  | 0.00 | 4.68  | 672.99 |

(Page 15 of 38)

ITEMIZED STATEMENT
-------------------

Customer No : 05311-88499-02-DAY
Address :    3620 W. Silversprings Blvd.,Ocala,FL,34475,US
As of Date:  24-MAR-2012

| Mon-Year | Invoice No | Invoice Date | Description | Accrued | Billing | Amount Tax | FinanceCharges | Total |
|----------|-----------|--------------|-------------|---------|---------|------------|----------------|-------|
| | | | | Sub Total | 3122.55 | 9.60 | 22.63 | 3154.78 |
| FEB-2012 | 21196590 | 22-FEB-12 | WYNREWARDS 5% | | 309.33 | 0.00 | 0.00 | 309.33 |
| | 42061068 | 29-FEB-12 | 5715A-HughesNet | | 160.00 | 9.60 | 0.00 | 169.60 |
| | 42077934 | 29-FEB-12 | Accrual-1800A-R | * | 945.00 | 0.00 | 0.00 | 945.00 |
| | 42075672 | 29-FEB-12 | Accrual-1000A-R | * | 2259.79 | 0.00 | 0.00 | 2259.79 |
| | 42063539 | 29-FEB-12 | 5625A-PRM SUPPO | | 103.32 | 0.00 | 0.00 | 103.32 |
| | 42077174 | 29-FEB-12 | Accrual-1210A-M | * | 616.31 | 0.00 | 0.00 | 616.31 |
| | | | | Sub Total | 4393.75 | 9.60 | 0.00 | 4403.35 |
| MAR-2012 | 10595507 | 08-MAR-12 | GUEST SATISFACT | | 45.00 | 0.00 | 0.00 | 45.00 |
| | 10595346 | 08-MAR-12 | GUEST SRVCS TRA | | 160.00 | 0.00 | 0.00 | 160.00 |
| | 30673328 | 15-MAR-12 | GLOBAL CONFEREN | | 100.00 | 0.00 | 0.00 | 100.00 |
| | | | | Sub Total | 305.00 | 0.00 | 0.00 | 305.00 |
| | | | | Grand Total | 161068.62 | 928.16 | 41839.57 | 203836.35 |

Requested By: Brenda Melendez

* Please note the accruals on your account are estimates.
  Make sure to promptly submit your actual gross room revenue and rooms sold.

******* END OF REPORT *******

Page 12 of 12

# DE-IDENTIFICATION PROCEDURES

You must complete each of the following within 10 days after the Termination Date:

1.  Remove, replace or cover with an opaque cover the primary Facility signage.

2.  Remove all interior signage that contains Days Marks.

3.  Change advertising billboards to remove Days Marks.

4.  Stop answering Facility telephone as Days guest lodging facility.

5.  Remove Days name and Marks from any domain name, advertising and brochures.

6.  Return to us all confidential operations and training manuals.

7.  Remove the Days name and Marks from the following items:

    | | |
    |---|---|
    | Stationery, pads and pens | Soap/shampoo |
    | Directories and brochures | Key tags |
    | Business cards | Credit card imprinter |
    | Folios and registration cards | Laundry bags |
    | Do-not-disturb cards | Name tags/uniforms |
    | Comment cards | Ice buckets/trays |
    | Telephone plates | Ashtrays/matches |
    | Telephone dialing instructions | Plaques |
    | TV channel ID plates | Guest checks/receipts |
    | Rate/law cards | Menus |
    | Door signage | |

8.  Paint over or remove any distinctive Days trade dress, paint schemes or architectural features.

9.  It is prohibited to re-name the Facility with a confusingly similar name or color scheme as a Days facility.

10. Our quality assurance inspectors will visit the Facility at any time after 10 days after the Termination Date to verify that you have performed these de-identification obligations.

# EXHIBIT "H"

293949v1

(Page 1 of 3)

 

HOTEL GROUP

**Larry Geer**
Senior Director
Settlements

May 9, 2012

_**VIA 2-DAY UPS**_
Mr. Harish Pattni
Ocala Inn Kash, Inc.
1447 NE Expressway
Atlanta, GA 30329

     Re:   **Termination of Days® System Unit #05311-88499-02
              Located in Ocala, FL ("Facility")**

Dear Mr. Pattni:

    I serve as Senior Director of Settlements for Days Inns Worldwide, Inc. ("we", "us" "our"). As you are aware, the November 1, 2009 License Agreement ("Agreement") between Ocala Inn Kash, Inc. ("you" or "your") and us for the operation of the Facility referenced above as a Days guest lodging facility was terminated on or about March 28, 2012, because you failed to meet your financial obligations.

    The termination of the Agreement requires you to fulfill certain post termination obligations, including complete de-identification of the Facility and payment of all outstanding fees, charges and liquidated damages.

    Accordingly, we request that you make prompt payment of all post-termination financial obligations including:

- Liquidated Damages of $200,000.00 as specified in the Agreement;
- Damages of $2,500.00 for the early termination of the Addendum to the Agreement for Satellite Connectivity Services;
- The balance of your Recurring Fees and other charges, which as of May 9, 2012 are $211,223.06.

    Please submit payment within ten days from the date of this letter. We are offering you an opportunity to resolve this dispute without resorting to litigation. However, if you do not contact me to resolve this matter before May 19, 2012, we will have no other choice but to refer this matter to our outside litigation counsel.

**Wyndham Hotel Group**
22 Sylvan Way, Parsippany, NJ 07054
larry.geer@wyn.com



Mr. Harish Pattni                    May 9, 2012                              Page 2

_____

        I urge you to take this opportunity to resolve this matter now, before the parties are forced to spend time and money pursuing a matter that could have been resolved amicably.   Please do not hesitate to contact my associate, Charlene Martin, directly at 973-753-7602 with any questions.

                                            Very truly yours,

                                            Larry Geer
                                            Senior Director of Settlements

(Page 3 of 3)

## UPS CampusShip: Shipment Label

**UPS CampusShip: View/Print Label**

1. Ensure there are no other shipping or tracking labels attached to your package.  Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. Fold the printed sheet containing the label at the line so that the entire shipping label is visible. Place the label on a single side of the package and cover it completely with clear plastic shipping tape. Do not cover any seams or closures on the package with the label.  Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. GETTING YOUR SHIPMENT TO UPS
   UPS locations include the UPS Store®, UPS drop boxes, UPS customer centers, authorized retail outlets and UPS drivers.
   Find your closest UPS location at: www.ups.com/dropoff
   Take your package to any location of The UPS Store®, UPS Drop Box, UPS Customer Center, UPS Alliances (Office Depot® or Staples®) or Authorized Shipping Outlet near you. Items sent via UPS Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.

   Customers with a Daily Pickup
   Your driver will pickup your shipment(s) as usual.

FOLD HERE

